AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the

Eastern District of California

<table>
<tr><td>In the Matter of the Search of</td><td rowspan="2"></td></tr>
</table>

| | | |
|---|---|---|
| A BLACK MOTOROLA SMARTPHONE LOCATED DURING THE SEARCH OF JOSE GARCIA-AVALOS' PERSON (**SUBJECT TELEPHONE 1**) A BLACK TCL FLIP PHONE LOCATED DURING THE SEARCH OF JOSE GARCIA-AVALOS' PERSON (**SUBJECT TELEPHONE 2**) A BLACK APPLE IPHONE SMARTPHONE LOCATED DURING THE SEARCH OF 345 OREGON STREET, GRIDLEY, CA (**SUBJECT TELEPHONE 3**) A BLACK SAMSUNG GALAXY S9 SMARTPHONE LOCATED DURING THE SEARCH OF 345 OREGON STREET, GRIDLEY, CA (**SUBJECT TELEPHONE 4**) | Case No. | 2:25-sw-1016 CSK |

**FILED**

**Dec 10, 2025**

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENTS A-1, A-2, A-3, and A-4, attached hereto and incorporated by reference.**

located in the _____ Eastern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B and ATTACHMENT C, attached hereto and incorporated by reference.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. §§ 841, 846 | Distribution and conspiracy to distribute controlled substances |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

/s/
_____
*Applicant's signature*

Alexander Malik, DEA Special Agent
*Printed name and title*

Sworn to me and signed telephonically.

Date: December 10, 2025

City and state: Sacramento, California

Judge's signature
Chi Soo Kim, U.S. Magistrate Judge

ERIC GRANT
United States Attorney
ROBERT ABENDROTH
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| In the Matter of the Search of: | CASE NO. |
|---|---|
| A BLACK MOTOROLA SMARTPHONE LOCATED DURING THE SEARCH OF JOSE GARCIA-AVALOS' PERSON (SUBJECT TELEPHONE 1)<br><br>A BLACK TCL FLIP PHONE LOCATED DURING THE SEARCH OF JOSE GARCIA-AVALOS' PERSON (SUBJECT TELEPHONE 2)<br><br>A BLACK APPLE IPHONE SMARTPHONE LOCATED DURING THE SEARCH OF 345 OREGON STREET, GRIDLEY, CA (SUBJECT TELEPHONE 3)<br><br>A BLACK SAMSUNG GALAXY S9 SMARTPHONE LOCATED DURING THE SEARCH OF 345 OREGON STREET, GRIDLEY, CA (SUBJECT TELEPHONE 4) | AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT<br><br>**UNDER SEAL** |

I, Alexander Malik, being first duly sworn, hereby depose and state as follows:

1.      I write this affidavit in support of an application for a warrant to search electronic devices further described in Attachments A-1 through A-4. The items to be searched are as follows:

- A Black Motorola smartphone seized from Jose GARCIA-AVALOS on October 20, 2025, during the execution of a federal search warrant on 1735 Oleander Drive, Yuba City, CA

AFFIDAVIT                                                                1

(hereafter referred to as "Subject Telephone 1");

- A black TCL flip phone seized from Jose GARCIA-AVALOS on October 20, 2025, in Yuba City, CA (hereafter referred to as "Subject Telephone 2");

- A black Apple iPhone smartphone seized subsequent to the execution of a federal search warrant of 345 Oregon Street, Gridley, CA, on October 20, 2025 (hereafter referred to as "Subject Telephone 3"); and

- A black Samsung Galaxy S9 smartphone seized subsequent to the execution of a federal search warrant of 345 Oregon Street, Gridley, CA, on October 20, 2025 (hereafter referred to as "Subject Telephone 4").

These searches would aim to identify electronically-stored data more specifically described in Attachment B. Subject Telephone 1 and Subject Telephone 2 were located during the authorized search of Jose GARCIA-AVALOS' person during the execution of a federal search warrant on 1735 Oleander Drive, Yuba City, CA, GARCIA-AVALOS' residence. Subject Telephone 3 and Subject Telephone 4 were located within the residence of 345 Oregon Street, Gridley, CA, during the execution of a federal search warrant of the residence. The Affidavit in support of these search warrants is attached to this Affidavit as Attachment C. Subject Telephone 1, Subject Telephone 2, Subject Telephone 3, and Subject Telephone 4 are labeled as such solely in this affidavit and are not necessarily related to "target" or "subject" telephones in other affidavits written during the course of this investigation. Furthermore, Subject Telephone 1, Subject Telephone 2, Subject Telephone 3, and Subject Telephone 4 will hereafter be referred to as The Subject Telephones in this affidavit.

2.     The Subject Telephones are currently in the lawful possession of the Drug Enforcement Administration.  Although the DEA might already have all necessary authority to examine them, I seek this additional warrant out of an abundance of caution.

## I.     INTRODUCTION AND AGENT BACKGROUND

3.     I am a Special Agent (SA) with the U.S. Drug Enforcement Administration ("DEA") and have been so employed since February 2022.  I am an "investigative or law enforcement officer" within the meaning of Section 2510(7) of Title 18 of the United States Code, that is, an officer of the United

AFFIDAVIT

2

States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18 and Title 21 of the United States Code.  I am also a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C).

4.    I completed DEA Basic Agent training at the DEA's Training Academy in Quantico, Virginia, where I received specialized training in narcotics investigations, to include training in the Controlled Substance Act, as set out in Title 21, United States Code, including but not limited to Sections 841 and 846, Controlled Substance Violations and Conspiracy to Commit Controlled Substance Violations, respectively.  Further, I received training in search and seizure law, drug identification, drug-trafficking trends and methods, evidence gathering, undercover operations, physical and electronic surveillance, and many other facets of narcotics investigations.  After completing Basic Agent training, I was assigned to the DEA's Sacramento District Office Task Force Group.

5.    The DEA Task Force Group is a collaborative group of officers and agents from the DEA and state and local law enforcement agencies such as the Yuba County Sheriff's Department, Sacramento Sheriff's Department, Folsom Police Department, California Highway Patrol, Sacramento Police Department, El Dorado County District Attorney's Office, and California Department of Corrections and Rehabilitation.  The goal of the DEA Task Force Group is to investigate and disrupt illicit drug trafficking in specified geographical areas by immobilizing the highest levels of targeted violators and trafficking organizations.

6.    During the course of my employment as a DEA Special Agent, I have assisted and participated in criminal investigations targeting individuals involved in the trafficking of controlled substances, including but not limited to, fentanyl, methamphetamine, heroin, cocaine, cocaine base, methylenedioxymethamphetamine (MDMA), lysergic acid diethylamide (LSD), dimethyltryptamine (DMT), psilocybin, and marijuana.  While conducting such investigations, I have participated in a variety of investigative techniques and resources, including physical and electronic surveillance, and various methods of infiltration, including undercover operations and using cooperating sources.  Through these investigations, my training and experience, and conversations I have had with other agents and law enforcement officers, I am familiar with the methods used by drug traffickers to manufacture, transport, store, and distribute controlled substances, and to collect and launder drug

AFFIDAVIT

proceeds.

7.     The conclusions and opinions set forth below are based on my experience and training as a DEA Special Agent, my personal observations during this investigation, and conversations I have had with other law enforcement officers who are familiar with the facts and circumstances of this investigation.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Based on the facts set forth below, there is probable cause to believe that violations of 21 U.S.C. §§ 841(a)(1) and 846 have been committed, are being committed, and will be committed by the members of Drug Trafficking Organization (DTO) described below, and other persons known and unknown.  The court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711.  Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated, see 18 U.S.C. § 2711(3)(A)(i).

8.     This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## II.     PROBABLE CAUSE

### A.     Background

9.     Since July 2024, the DEA's Sacramento District Office has been investigating a methamphetamine trafficking organization based out of the Yuba County, California area. During this investigation, multiple controlled purchases of crystal methamphetamine and fentanyl were conducted by confidential sources from multiple co-conspirators within the drug trafficking organization (DTO).

10.     In May 2025, Title III intercepts were authorized on Target Telephone 1, used by Jose GARCIA-AVALOS, and Target Telephone 2, used by Esequiel CARRANZA-VALDEZ for a period of 30 days. In August 2025, Title III intercepts were authorized for a second iteration of 30 days on Target Telephone 1, used by Jose GARCIA-AVALOS, Target Telephone 3, used by Eric GUZMAN-TOLENTINO, Target Telephone 8, used by Jose ONTIVEROS-SANCHEZ, and Target Telephone 10, used by Esequiel CARRANZA-VALDEZ. In August 2025, Title III intercepts were authorized on Target Telephone 11, used by Esequiel CARRANZA-VALDEZ for a period of 30 days. In September 2025, Title III intercepts were authorized on Target Telephone 12, used by Esequiel CARRANZA-

AFFIDAVIT

4

VALDEZ for a period of 30 days. The probable cause outlined in Attachment C was developed during the course of interception of Target Telephone 1, used by Jose GARCIA-AVALOS, and operations conducted during the investigation of Jose GARCIA-AVALOS.

11. After conducting controlled drug purchases, strategic car stops, and listening to wiretapped conversations, investigators conducted a multi-agency multi-location operation. In particular, on October 18, 2025, The Honorable Sean C. Riordan, United States Magistrate Judge issued multiple federal arrest warrants and multiple federal search warrants, including federal search warrants for the two locations discussed below.

12. On October 20, 2025, the DEA along with other investigating agencies conducted an enforcement operation resulting in the arrests of Jose GARCIA-AVALOS and Leonel ABREGO amongst others, and the search of 1735 Oleander Drive, Yuba City, CA, and 345 Oregon Street, Gridley, CA amongst other locations. During these arrests and searches, The Subject Telephones were seized, as detailed below.

**B. Search Warrant at 1735 Oleander Drive, Yuba City, CA and Arrest of Jose GARCIA-AVALOS on October 20, 2025.**

13. Included in Attachment C is a statement of probable cause to believe that Jose GARCIA-AVALOS distributed (or conspired to distribute) methamphetamine on behalf of the DTO, and that GARCIA-AVALOS resided at 1735 Oleander Drive, Yuba City, CA.

14. On October 20, 2025, at approximately 6:00 AM, DEA along with other investigating agencies executed the aforementioned search warrant at 1735 Oleander Drive, Yuba City, CA, during which time GARCIA-AVALOS was arrested pursuant to the aforementioned arrest warrants.

15. During the search, Subject Telephone 1 and Subject Telephone 2 were found on GARCIA-AVALOS' person and subsequently seized.

**C. Search Warrant at 345 Oregon Street, Gridley, CA on October 20, 2025.**

16. Included in Attachment C is a statement of probable cause to believe that Leonel ABREGO distributed (or conspired to distribute) methamphetamine on behalf of the DTO, and that ABREGO was associated to 345 Oregon Street, Gridley, CA.

17. On October 20, 2025, at approximately 6:00 AM, DEA along with other investigating

AFFIDAVIT

5

agencies executed the aforementioned search warrant at 345 Oregon Street, Gridley, CA. During the search, Subject Telephone 3, Subject Telephone 4, and three other telephones were found in the residence and subsequently seized.

Respectfully submitted,

/s/
_____

Alexander Malik
Special Agent
DEA

Subscribed to me and signed telephonically on:   December 10, 2025

Hon. Chi Soo Kim
U.S. MAGISTRATE JUDGE

/s/ Robert Abendroth
_____
Approved as to form by AUSA ROBERT ABENDROTH

AFFIDAVIT                                                                                   6

# ATTACHMENT A-1

## Property to Be Searched

A Black Motorola smartphone seized from Jose GARCIA-AVALOS on October 20, 2025, during the execution of a federal search warrant on 1735 Oleander Drive, Yuba City, CA.  The Device is currently in the custody of the Drug Enforcement Administration at 4328 Watt Avenue, Sacramento, CA.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## <u>ATTACHMENT A-2</u>

### Property to Be Searched

A black TCL flip phone seized from Jose GARCIA-AVALOS on October 20, 2025, in Yuba City, CA.  The Device is currently in the custody of the Drug Enforcement Administration at 4328 Watt Avenue, Sacramento, CA.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT A-3

### Property to Be Searched

A black Apple iPhone smartphone seized subsequent to the execution of a federal search warrant of 345 Oregon Street, Gridley, CA, on October 20, 2025.  The Device is currently in the custody of the Drug Enforcement Administration at 4328 Watt Avenue, Sacramento, CA.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT A-4**

**Property to Be Searched**

A black Samsung Galaxy S9 smartphone seized subsequent to the execution of a federal search warrant of 345 Oregon Street, Gridley, CA, on October 20, 2025.  The Device is currently in the custody of the Drug Enforcement Administration at 4328 Watt Avenue, Sacramento, CA.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

**Description of Items to Be Seized**

This search warrant grants authority to seize all of the items set forth below:

1. Any and all names, words, telephone numbers, email addresses, time/date information, messages or other electronic data in the memory of the Electronic Device identified in Attachment A-1, A-2, A-3 and A-4 or on a server and associated with the Electronic Devices identified in Attachment A-1, A-2, A-3 and A-4, including:

   a. Incoming call history;

   b. Outgoing call history;

   c. Missed call history;

   d. Outgoing text messages;

   e. Incoming text messages;

   f. Draft text messages;

   g. Telephone books;

   h. Emails;

   i. Data screens or files identifying the telephone number associated with the mobile telephones searched;

   j. Data screens, files, or writings containing serial numbers or other information to identify the electronic devices searched;

   k. Voicemails;

   l. User-entered messages (such as to-do lists); and

   m. Stored media such as photographs or videos.

2. Any passwords used to access the electronic data described above.

3. Any and all locations, addresses, GPS coordinates, names, time/date information, or other electronic data related to addresses and driving directions related to the devices' locations on or about between June 2024 and October 20, 2025.

4. All information and records related to violations of 21 U.S.C. § 841(a) (drug trafficking) and/or 21 U.S.C. § 846 (conspiracy to traffic drugs), including:

    a.  Data and information related to stored applications and/or websites used to communicate with associates and co-conspirators;

    b.  Data, information, or documents related to the distribution of controlled substances, including the acquisition, possession, and use of equipment, paraphernalia, and materials used in the distribution process, including firearms;

    c.  lists of customers and related identifying information;

    d.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    e.  any information related to sources of drugs or drug manufacturing materials and equipment (including names, addresses, phone numbers, email addresses, or any other identifying information);

    f.  any information recording schedule or travel;

    g.  all bank records, checks, credit card bills, account information, and other financial records;

    h.  data, information, or documents related to the receipt of proceeds from controlled substances distribution and the transfer, investment, control, and disposition of those proceeds;

    i.  records of Internet Protocol addresses used;

    j.  records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

    k.  any communications related to drug trafficking; and

    l.  stored media such as photographs or video.

5. Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of | ) |
| | ) |
| | )  Case No. |
| 1735 Oleander Drive, Yuba City, CA | ) |
| | ) |
| | ) |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____ Eastern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841, 843, and 846 | distribution of and possession with intent to distribute controlled substances, use a facility of interstate commerce in furtherance of drug trafficking, and conspiracy to do the same |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☑ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Alexander Malik, Special Agent, DEA
_____
*Printed name and title*

Sworn to before me and signed by telephone.

Date: October 18, 2025

_____
*Judge's signature*

City and state:  Davis, California

Sean C. Riordan, U.S. Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT

I, Alexander Malik, Drug Enforcement Administration ("DEA") Special Agent, being duly sworn, hereby state:

### I.        PURPOSE OF AFFIDAVIT

1.        This affidavit is submitted in support of a Criminal Complaint and arrest warrant for the following people:

i.        Jose GARCIA-AVALOS ("GARCIA-AVALOS") – Counts 1 – 9;

ii.        Octavio HINOJOSA-GUZMAN ("HINOJOSA-GUZMAN") – Counts 1, 5, 6, 8, and 10; and

iii.        Leonel ABREGO – Count 1.

2.        This affidavit charges the individuals listed above with the following violations:

COUNT 1:
Beginning on an unknown date, but no later than on or about July 8, 2024, and continuing through the present date, in the Counties of Sutter, Yuba, and San Joaquin, State and Eastern District of California, and elsewhere, Jose GARCIA-AVALOS, Octavio HINOJOSA-GUZMAN, and Leonel ABREGO, did conspire and agree with persons both known and unknown to your Affiant to knowingly and intentionally distribute and possess with intent to distribute at least 50 grams of methamphetamine, a Schedule II controlled substance, and at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

COUNT 2:
On or about July 31, 2024, in the County of Sutter, State and Eastern District of California, Jose GARCIA-AVALOS, did knowingly and intentionally distribute at least 50 grams of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 3:
On or about August 22, 2024, in the County of Sutter, State and Eastern District of California, Jose GARCIA-AVALOS did knowingly and intentionally distribute at least 50 grams of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 4:
On or about August 22, 2024, in the County of Sutter, State and Eastern District of California, Jose GARCIA-AVALOS did knowingly and intentionally distribute at least 40 grams

1

of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propenamide, commonly referred to as fentanyl, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 5:

On or about September 11, 2024, in the County of Sutter, State and Eastern District of California, Jose GARCIA-AVALOS and Octavio HINOJOSA-GUZMAN, aiding, abetting, and counseling one another, and commanding and procuring the commission of the following, did knowingly and intentionally distribute at least 50 grams of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 6:

On or about September 11, 2024, in the County of Sutter, State and Eastern District of California, Jose GARCIA-AVALOS and Octavio HINOJOSA-GUZMAN, aiding, abetting, and counseling one another, and commanding and procuring the commission of the following, did knowingly and intentionally distribute at least 40 grams of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propenamide, commonly referred to as fentanyl, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 7:

On or about October 10, 2024, in the County of Yuba, State and Eastern District of California, Jose GARCIA-AVALOS did knowingly and intentionally distribute at least 50 grams of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 8:

On or about October 10, 2024, in the County of Yuba, State and Eastern District of California, Jose GARCIA-AVALOS and Octavio HINOJOSA-GUZMAN, aiding, abetting, and counseling one another, and commanding and procuring the commission of the following, did knowingly and intentionally distribute at least 40 grams of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propenamide, commonly referred to as fentanyl, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 9:

On or about June 11, 2025, in the County of Sutter, State and Eastern District of California, Jose GARCIA-AVALOS, did knowingly and intentionally distribute at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 10:

On or about October 4, 2025, in the County of San Joaquin, State and Eastern District of California, Octavio HINOJOSA-GUZMAN did knowingly and intentionally possess with intent to distribute at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

3.      Additionally, this affidavit is submitted in support of a search warrant for the following locations, all described more fully in attachments A-1 through A-6:

      i.       The residence located at 1735 Oleander Drive, Yuba City, CA ("Subject Premises 1"); and

      ii.      The residence located at 345 Oregon Street, Gridley, CA ("Subject Premises 2").

4.      The requested search warrant seeks authorization to seize evidence, fruits, or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 843 and 846 (distribution of and possession with intent to distribute controlled substances, use a facility of interstate commerce in furtherance of drug trafficking, and conspiracy to do the same).  The items and evidence to be seized is more fully in Attachment B.

## II.      AFFIANT'S BACKGROUND AND EXPERTISE

5.      I am a Special Agent (SA) with the DEA and have been so employed since February 2022.  I am an "investigative or law enforcement officer" within the meaning of Section 2510(7) of Title 18 of the United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18 and Title 21 of the United States Code.  I am also a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C).

6.      I completed DEA Basic Agent training at the DEA's Training Academy in Quantico, Virginia, where I received specialized training in narcotics investigations, to include training in the Controlled Substance Act, as set out in Title 21, United States Code, including but not limited to Sections 841 and 846, Controlled Substance Violations and Conspiracy to Commit Controlled Substance Violations, respectively. I received training in search and seizure law, drug identification, drug-trafficking trends and methods, evidence gathering, undercover operations, physical and electronic surveillance, and many other facets of narcotics investigations.  After completing Basic Agent training, I was assigned to the DEA's Sacramento District Office Task Force Group.

7. The DEA Task Force Group is a collaborative group of officers and agents from the DEA and state and local law enforcement agencies such as the Yuba County Sheriff's Department, Sacramento Sheriff's Department, Folsom Police Department, California Highway Patrol, Sacramento Police Department, El Dorado County District Attorney's Office, and California Department of Corrections and Rehabilitation. The goal of the DEA Task Force Group is to investigate and disrupt illicit drug trafficking in specified geographical areas by immobilizing the highest levels of targeted violators and trafficking organizations.

8. During the course of my employment as a DEA Special Agent, I have assisted and participated in criminal investigations targeting individuals involved in the trafficking of controlled substances, including but not limited to, fentanyl, methamphetamine, heroin, cocaine, cocaine base, methylenedioxymethamphetamine (MDMA), lysergic acid diethylamide (LSD), dimethyltryptamine (DMT), psilocybin, and marijuana. While conducting such investigations, I have participated in a variety of investigative techniques and resources, including physical and electronic surveillance, and various methods of infiltration, including undercover operations and using cooperating sources. Through these investigations, my training and experience, and conversations I have had with other agents and law enforcement officers, I am familiar with the methods used by drug traffickers to manufacture, transport, store, and distribute controlled substances, and to collect and launder drug proceeds.

9. In addition to my personal knowledge, this affidavit is based on (1) information I obtained from related investigations; (2) conversations with other law enforcement officers including oral and written investigative and laboratory reports that I received directly or indirectly from other law enforcement officials; (3) review and analysis of information received from various sources, including evidence provided pursuant to subpoenas and search warrants, such as GPS tracking data; (4) physical surveillance conducted by law enforcement officials reported to me either directly or indirectly; (5) a review of public records, telephone toll records, and subscriber information; (6) information provided from confidential sources of information, cooperating defendants, and other sources of information working with law enforcement

4

agencies; (7) a review of driver's license and automobile registration records; (8) records from various law enforcement databases, including but not limited to the National Law Enforcement Telecommunications System ("NLETS") and the National Crime Information Center ("NCIC"); (9) my training and experience as a DEA agent and/or; (10) the training and experience of other law enforcement officials with whom I consulted during this investigation and the preparation of this Affidavit.

10.    Because this affidavit is submitted for the limited purpose of supporting the requested Criminal Complaint, I have not included the details of every aspect of the investigation.  I have set forth only the facts necessary to establish probable cause to charge the defendants listed in this affidavit.  I have not intentionally omitted information that the Court would need to assess probable cause for the arrest of the defendants.

### III.    BASIS OF INFORMATION

11.    Between the period of May 12, 2025 through June 11, 2025, pursuant to Court authorization, agents implemented the interception of wire communications to a from a device used by Jose GARCIA-AVALOS, identified in the affidavit as Target Telephone 1.  Between the period of August 8, 2025, through September 6, 2025, pursuant to Court authorization, agents implemented the interception of wire and electronic communications over Target Telephone 1, used by GARCIA-AVALOS as well as Target Telephone 3 a device used by GUZMAN TOLENTINO.  During these periods, the defendants previously outlined were monitored speaking explicitly about their drug trafficking activities on monitored target telephones or were implicated criminally in conjunction with monitored intercepts on target telephones. Additionally, agents tracked the movements of the cell phones subject to interception orders, cell phones of co-conspirators not subject to interception orders, and tracking devices affixed to vehicles used to facilitate drug trafficking all pursuant to search warrants authorized in the Eastern District of California.  The intercepts, cell phone tracking data, and vehicle tracking data all aided visual and physical surveillance as more fully detailed below.

12.     Additionally, Special Agents of DEA and local officers have received information from three cooperating sources "CS," who are described below:

i.      CS-1 is cooperating with the DEA in exchange for monetary compensation for CS-1's work with law enforcement.  DEA established CS-1 as a cooperator in June 2023. CS-1 has no pending criminal cases but does have a prior criminal history, which includes conspiracy to distribute crystal methamphetamine, possession of a controlled substance for sale, possession of a controlled substance, illegal entry into the U.S., and false identification to a peace officer.  CS-1 knows information involving drug trafficking activities because CS-1, prior to cooperating, was a drug trafficker and incarcerated for methamphetamine trafficking. Because CS-1 has a history which includes providing false information to a peace officer, agents utilized various methods to verify and corroborate information provided by CS-1 including, but not limited to, consensually monitoring communications, toll analysis, controlled purchases of drugs, and physical surveillance during controlled purchases.  Because agents corroborated the information provided by CS-1 relied on in this affidavit, I consider the information provided by CS-1 detailed below to be reliable in this case.

ii.     CS-2 is cooperating with the DEA in exchange for monetary compensation for CS-2's work with law enforcement.  DEA established CS-2 as a cooperator in February 2019.  CS-2 has no pending criminal cases but does have a prior criminal history, which includes trespassing, damaging a wireless communication device, possession of a controlled substance for sale, sale of a controlled substance, robbery, battery, probation violation, and assault with a deadly weapon. CS-2 knows information involving drug trafficking activities because CS-2, prior to

6

cooperating, was a drug trafficker who had been arrested for cocaine trafficking. Additionally, agents corroborated information provided by CS-2 through consensually recorded communications and physical surveillance. For these reasons, I consider CS-2's information relied upon herein to be reliable.

iii. CS-3 is cooperating with the Yuba County Sheriff's Office for consideration of pending state charges. Yuba County established CS-3 as a cooperator in May 2025. CS-3 has prior criminal history, which includes convictions for lewd or lascivious acts with a child under 14, parole violations, petty theft, conspiracy to commit a crime, criminal threats, burglary, and failing to update registration as a sex offender. CS-3 knows information involving drug trafficking activities because CS-3, prior to cooperating, was a drug trafficker who had been arrested by the Yuba County Sheriff's Office. Agents corroborated CS-3's information through consensually recorded calls and surveillance. For these reasons, I consider CS-3 to be reliable in this case

## IV.   PROBABLE CAUSE

13. Since July 2024, the DEA's Sacramento District Office (SDO) has been investigating a group of drug traffickers responsible for the distribution of large quantities of methamphetamine and other controlled substances in the greater area of Yuba City, California and elsewhere. During this investigation, agents developed probable cause to issue arrest warrants for the individuals named above as well as probable cause to search the locations listed herein. Agents developed this probable cause through multiple controlled purchases of methamphetamine and other controlled substances, information from confidential sources, the interception of wire and electronic communication, and the seizure of controlled substances from transporters.

**A.    Probable Cause for Counts 1 and 2 supporting a complaint and arrest warrant for GARCIA-AVALOS: on July 31, 2024, GARCIA-AVALOS sold a confidential source approximately two pounds of methamphetamine.**

14.    On July 8, 2024, CS-1 contacted a suspected methamphetamine trafficker on Facebook to organize the purchase of methamphetamine. CS-1 did so under the direction of Task Force Officer (TFO) Sixto Torres. After successfully establishing communication, the methamphetamine trafficker gave CS-1 a phone number to arrange a purchase of controlled substances.

15.    On July 31, 2024, CS-1 placed several calls to the methamphetamine trafficker as directed by TFO Torres. During these calls, a meeting was arranged at the Taqueria Guadalajara restaurant located at 1380 Franklin Road, Unit A, Yuba City, CA. During these calls, the methamphetamine trafficker informed CS-1 that an associate of the methamphetamine trafficker would meet CS-1 instead, and the associate would be driving a gray Infiniti.

16.    Before and after the controlled purchase, CS-1 and CS-1's vehicle were searched for weapons or contraband. CS-1 was also outfitted with audio and video recording devices, the contents of which were booked into evidence. Visual surveillance was also maintained on CS-1 as CS-1 travelled to and from the predetermined meet location. To date, these procedures have been followed on all controlled purchase and money-drop operations on this case. The searches of every DEA CS and CS vehicle have resulted negative for weapons or contraband on all operations over the course of this investigation.

17.    At approximately 2:53 p.m., surveillance observed CS-1 park in the parking lot of Taqueria Guadalajara. At approximately 3:24, surveillance observed a gray Infiniti SUV (CA 9MXC518), with license plate 9MXC518 enter the parking lot of Taqueria Guadalajara. A Hispanic male adult then exited the gray Infiniti SUV (CA 9MXC518), then enter the front passenger seat of CS-1's vehicle.

18.    Surveillance then observed the Hispanic male adult exit CS-1's vehicle, retrieve a pink plastic bag from the gray Infiniti SUV (CA 9MXC518), then reenter CS-1's vehicle. The Hispanic male adult then exited CS-1's vehicle, returned to the gray Infiniti SUV (CA

8

9MXC518), then departed the meet location, followed by surveillance. Surveillance units maintained visual of the gray Infiniti SUV (CA 9MXC518) until it terminated travel at 1735 Oleander Drive, Yuba City, CA. Surveillance then observed the Hispanic male adult and a second unidentified Hispanic male adult loiter in front of the residence, then load a box into the gray Infiniti SUV (CA 9MXC518). The two unidentified Hispanic male adults then entered the gray Infiniti SUV (CA 9MXC518) and departed 1735 Oleander Drive, at which point surveillance was terminated.

19.    Following the controlled purchase, CS-1 told agents that once the Hispanic male adult entered CS-1's vehicle, he introduced himself as "Jose." Jose stated that he could supply CS-1 with methamphetamine, "M-30s," and marijuana. Based on my training and experience, I believe that when Jose referred to "M-30s," he was referring to blue tables labeled "M-30" which are counterfeit Oxycodone tablets. Further, based on my training and experience, I understand that these tablets are typically counterfeit, especially when sold in large quantities, and typically contain fentanyl. Jose then provided CS-1 with a phone number to reach him directly. CS-1 told agents that once Jose reentered CS-1's vehicle, CS-1 handed Jose $2,400 of official government funds, which Jose immediately counted. Jose then handed CS-1 the pink plastic bag containing approximately two pounds of methamphetamine.

20.    Utilizing law enforcement databases, Task Force Officer (TFO) Sixto Torres obtained a driver license photo of GARCIA-AVALOS, who is the registered owner of the gray Infiniti SUV (CA 9MXC518). Upon presenting an unmarked photo of GARCIA-AVALOS to CS-1, CS-1 confirmed that the individual in the photo was the same individual who introduced himself as Jose during the controlled purchase.

21.    The suspected methamphetamine contents of the pink plastic bag sold to CS-1 were submitted to the DEA Western Regional Laboratory for analysis and safekeeping. The analysis resulted positive for methamphetamine, weighing 888.3 grams.

**B.    Probable cause for Counts 1, 3, and 4 supporting a complaint and arrest warrant for GARCIA-AVALOS: on August 22, 2024, GARCIA-AVALOS sold a confidential**

**source approximately 1 pound of methamphetamine and approximately 2,000 M-30 fentanyl tablets.**

22.    On the days leading up to August 22, 2024, CS-1 arranged the purchase of methamphetamine and blue M-30 tablets from GARCIA-AVALOS by contacting the phone number given to CS-1 during the controlled purchase on July 31, 2025. CS-1 contacted GARCIA-AVALOS under the direction of controlling agents.[1]  On August 22, 2024, at 11:59 a.m., GARCIA-AVALOS contacted CS-1 via phone call, stating that he was waiting for the "barcos." GARCIA-AVALOS also confirmed how long CS-1 would be before arriving at the meet location. "Barcos" is the Spanish word for boats. Based on my training and experience, I know that in California, fentanyl traffickers refer to 1,000 tablets of a controlled substance as a "boat." Therefore, in this case I believe that GARCIA-AVALOS was informing CS-1 that he was waiting for the blue M-30 tablets before the controlled purchase.

23.    On August 22, 2024, agents observed GARCIA-AVALOS arrive to the same meet location as the controlled purchase on July 31, 2024 operating the same gray Infiniti SUV (CA 9MXC518) he was previously observed operating. During the controlled purchase, GARCIA-AVALOS provided CS-1 with approximately 1 pound of methamphetamine and 2,000 M30 tablets in exchange for DEA official advanced funds. The suspected methamphetamine and fentanyl were submitted to the DEA Western Regional Laboratory for analysis and safekeeping. The analysis resulted positive for 437 grams of methamphetamine (a purity analysis showed that this substance was more than 50 grams of actual methamphetamine) and 210 grams of fentanyl.

**C.    Probable cause for Counts 1, 5, and 6 supporting a complaint and arrest warrants for GARCIA-AVALOS and HINOJOSA-GUZMAN: on September 11, 2024, GARCIA-AVALOS and HINOJOSA-GUZMAN sold a confidential source**

---

[1] Unless otherwise specified, all communications between DEA confidential sources and targets of investigation in which a drug deal is organized were conducted utilizing an account and phone number set up through a system available to DEA.  The system and account provide agents with the ability to overhear calls made by each CS in real time, to document and catalog the telephone numbers for incoming or outgoing wire and electronic communications with each CS' telephone number, and to record all phone calls and text messages to or from each CS' telephone number.  For each communication detailed in this affidavit, the respective CS utilized the account assigned to them, and law enforcement confirmed the telephone numbers with which each CS communicated.  Additionally, agents listened to all calls in real time as well as recorded all calls and text messages.

**approximately 1 pound of methamphetamine and approximately 2,000 M-30 fentanyl tablets.**

24.     On the days leading up to September 11, 2024, CS-1 arranged the purchase of methamphetamine and M-30 tablets from GARCIA-AVALOS under the direction of controlling agents.  During the calls, GARCIA-AVALOS and CS-1 agreed to meet at a location for a drug deal involving methamphetamine and M-30 tablets.

25.     On September 11, 2024, agents observed GARCIA-AVALOS arrive at the meet location as the passenger of a black Lincoln sedan (CA 9HKZ325) registered to a Lucio Castillo-Guzman at 200 Park Avenue, apt 300, Yuba City, CA. GARCIA-AVALOS then sold CS-1 approximately 1 pound of methamphetamine and 2,000 M30 tablets, returned to the front passenger seat of the black Lincoln sedan (CA 9HKZ325), then departed the meet location. Surveillance then observed the black Lincoln sedan (CA 9HKZ325) arrive at 318 North Barrett Road, Yuba City, CA. Upon arrival, GARCIA-AVALOS entered his gray Infiniti SUV (CA 9MXC518), then departed 318 North Barrett Road. An unknown Hispanic male adult then exited the black Lincoln sedan (CA 9HKZ325), then entered the rear passenger seat of a black Ford Expedition registered to Octavio HINOJOSA-GUZMAN at 200 Park Avenue, Apartment 300, Yuba City, CA. TFO Aaron Kacalek clearly observed the driver of the black Ford Expedition, and later confirmed the driver to be HINOJOSA-GUZMAN by comparing the driver's license photo of the registered owner of the vehicle to what he observed in person.

26.     The suspected methamphetamine and fentanyl were submitted to the DEA Western Regional Laboratory for analysis and safekeeping. The analysis resulted positive for 441 grams of methamphetamine and 215 grams of fentanyl.

**D.     Probable cause for Counts 1 and 7 supporting a complaint and arrest warrants for GARCIA-AVALOS: on October 31, 2024, GARCIA-AVALOS sold a confidential source approximately 1 pound of methamphetamine and 3,000 M-30 fentanyl tablets.**

27.     On the days leading up to October 31, 2024, CS-1 arranged the purchase of methamphetamine and blue M-30 tablets from GARCIA-AVALOS under the direction of controlling agents.

28.     On October 31, 2024, prior to the controlled purchase operation, agents established surveillance on GARCIA-AVALOS' known gray Infiniti SUV (CA 9MXC518). At approximately 1:28 p.m., surveillance observed the gray Infiniti SUV (CA 9MXC518) park in the vicinity of 191 Garden Highway, where HINOJOSA-GUZMAN was waiting. Upon arrival of the gray Infiniti SUV (CA 9MXC518), HINOJOSA-GUZMAN entered the front passenger seat. Surveillance then observed the gray Infiniti SUV (CA 9MXC518) depart the vicinity of 191 Garden Highway, then travel to the meet location. Once at the meet location, GARCIA-AVALOS entered CS-1's vehicle and sold CS-1 approximately 1 pound of methamphetamine and 3,000 M30 tablets in exchange for DEA official advanced funds.

29.     The suspected methamphetamine and fentanyl were submitted to the DEA Western Regional Laboratory for analysis and safekeeping. The analysis resulted positive for 447 grams of methamphetamine (a purity analysis showed that this substance was more than 50 grams of actual methamphetamine) and 318 grams of fentanyl.

**E.      The Court authorized the interception of wire communications over Target Telephone 1 used by GARCIA-AVALOS to facilitate drug trafficking activities**.

30.     On May 9, 2025, the Court authorized an application intercept wire communications over one of the devices used by GARCIA-AVALOS, Target Telephone 1, for thirty days.  Through the intercepts, agents overheard calls where GARCIA-AVALOS used Target Telephone 1 to arrange controlled substance transactions, to collect money for controlled substances, and to direct associates to use electronic communications, *i.e.* text messages, and to arrange meetings for controlled substance activities.  The initial interceptions over Target Telephone 1 began on May 13, 2025 and continued through June 11, 2025.

**F.      Probable cause for Count 1 supporting a complaint and arrest warrants for GARCIA-AVALOS and HINOJOSA-GUZMAN: GARCIA-AVALOS, LISTER,**

**HINOJOSA-GUZMAN, and others used Target Telephone 1 to distribute controlled substances within the Eastern District of California.**

31.     On May 27, 2025, GARCIA-AVALOS used Target Telephone 1 to discuss what agents believed was the sale of one pound of methamphetamine to another drug trafficker who agents saw meet with GARCIA-AVALOS in Chico, CA.  During the discussions, agents overheard GARCIA-AVALOS tell the other drug trafficker that GARCIA-AVALOS would make a call.  Agents interpreted this to mean that GARCIA-AVALOS was calling a source of supply to acquire methamphetamine for the transaction.  That same evening at 6:51 p.m., GARCIA-AVALOS called LISTER using Target Telephone 1.  Agents were familiar with LISTER's voice, his telephone number, and his appearance because he had previously worked as an informant with DEA in the separate investigation which resulted in the indictment of GUZMAN TOLENTINO.[2]  During the call, GARCIA-AVALOS informed LISTER that a customer in Chico, CA needs "one." GARCIA-AVALOS then informed LISTER that he currently had $800, and would pay LISTER "the rest" upon returning from Chico, CA. On a follow-up call between LISTER and GARCIA-AVALOS at 6:55 p.m., LISTER instructed GARCIA-AVALOS to give him 20 minutes. LISTER then stated that he would see GARCIA-AVALOS at LISTER's "house," to which GARCIA-AVALOS confirmed. Five minutes later, at 6:56 p.m., GARCIA-AVALOS spoke with his customer on Target Telephone 1. During the call, GARCIA-AVALOS informed the customer that he would be leaving Yuba City, CA, in 20 minutes.

32.     At approximately 7:05 p.m., Sacramento Sheriff's Department (SSD) detectives of the Special Investigations Bureau (SIB) observed GARCIA-AVALOS depart his residence of 1735 Oleander Drive, Yuba City, CA, in his gray Infiniti SUV (CA 9MXC518). At 7:16 p.m., GARCIA-AVALOS called LISTER using Target Telephone 1 and informed LISTER that he was at LISTER's residence. LISTER informed GARCIA-AVALOS that he would be home in "less

---

[2] During a separate investigation, LISTER acted as a cooperating source with law enforcement; however, LISTER conducted controlled substance trafficking activities outside the scope of his agreement with law enforcement. Later, he was intercepted in this investigation, and DEA, as well as state and local law enforcement, terminated his designation as a cooperating source.

13

than a minute." At 7:17 p.m., surveillance observed GARCIA-AVALOS park in the vicinity of 1650 Mosswood Drive, Yuba City, CA (LISTER's residence). Surveillance then observed a white Jeep SUV (CA 5JKB410) registered to Lloyd LISTER at 1650 Mosswood Drive, Yuba City, CA, arrive and park in the driveway of Mosswood Drive. Detective Ghaffarpour observed LISTER exit the white Jeep SUV (CA 5JKB410). Detective Ghaffarpour was able to confirm that the driver was LISTER by comparing a historical arrest photo of LISTER to what he observed in person. At 7:23 p.m., surveillance observed GARCIA-AVALOS depart the vicinity of 1650 Mosswood Drive.

33.     At approximately 8:22 p.m., surveillance observed GARCIA-AVALOS park on Hemlock Street in Chico, CA. At 8:23 p.m., GARCIA-AVALOS called his customer using Target Telephone 1. During the call, the customer asked if GARCIA-AVALOS was "there," to which GARCIA-AVALOS confirmed that he was. Then, the customer informed GARCIA-AVALOS that she was "coming out." Surveillance was unable to maintain a consistent visual of GARCIA-AVALOS without alerting him of the investigation. However, surveillance did observe a white female adult exit the front passenger seat of GARCIA-AVALOS' gray Infiniti SUV (CA 9MXC518) shortly after the call at 8:23 p.m. Surveillance then observed the white female adult walk from GARCIA-AVALOS' vehicle to a small apartment building located on the south side of Hemlock Street, Chico, CA.

34.     Approximately three days later, GARCIA-AVALOS communicated with HINOJOSA-GUZMAN concerning controlled substances and drug proceeds. Specifically, on May 30, 2025, at 2:07 p.m., HINOJOSA-GUZMAN[3] called GARCIA-AVALOS on Target

---

[3] Throughout the investigation HINOJOSA-GUZMAN used multiple telephone numbers, and he changed telephone numbers frequently. It is a common tactic used by drug traffickers to utilize multiple telephone numbers and change telephone numbers frequently to avoid detection by law enforcement. Agents used records from a money remitter database to identify HINOJOSA-GUZMAN's telephone number initially; thereafter, agents found HINOJOSA-GUZMAN during physical surveillance, placed a ruse call to the telephone number associated with HINOJOSA-GUZMAN and watched HINOJOSA-GUZMAN answer the telephone. For instance, on April 1, 2025, Yuba County Sheriff's Office Detective Alex Martinez placed a ruse call to a telephone number associated with HINOJOSA-GUZMAN while observing HINOJOSA-GUZMAN walk in the vicinity of his residence at 398 Alemar Way, Yuba City, CA. While placing the call, Detective Martinez observed HINOJOSA-GUZMAN retrieve a cellular phone from his pocket, then hold it up to his ear. Detective Martinez then conversed with HINOJOSA-

14

Telephone 1. During the call, HINOJOSA-GUZMAN requested "one" from GARCIA-AVALOS. GARCIA-AVALOS questioned whether it was a "big one," to which HINOJOSA-GUZMAN confirmed. GARCIA-AVALOS stated that he would need to pick "it" up. HINOJOSA-GUZMAN stated that GARCIA-AVALOS could go with HINOJOSA-GUZMAN's brother, and that HINOJOSA-GUZMAN would leave the money with his brother.

35.     At 2:10 p.m. GARCIA-AVALOS called LISTER using Target Telephone 1. During the call, GARCIA-AVALOS asked LISTER if he had "one," to which LISTER confirmed that he did. GARCIA-AVALOS then stated that he would go "there" with "the money" and questioned if "it" was the same as "the yellow one," and LISTER replied that "it" was "white…clear stuff."

36.     At approximately 2:25 p.m., the Yuba County Sherriff's Office (YCSO) Problem Oriented Policing (POP) team located GARCIA-AVALOS in the vicinity of the Ross clothing store located at 1299 Colusa Avenue, Yuba City, CA, by utilizing GPS data from the court authorized GPS location device affixed to GARCIA-AVALOS' gray Infiniti SUV (CA 9MXC518). After locating GARCIA-AVALOS, surveillance observed an unidentified Hispanic male adult enter GARCIA-AVALOS' gran Infiniti SUV. Surveillance then observed the gray Infiniti SUV (CA 9MXC518) travel to LISTER's residence at 1650 Mosswood Drive, Yuba City, CA, and park in the vicinity of the residence at 2:34 p.m. Surveillance then observed GARCIA-AVALOS depart the vicinity of 1650 Mosswood Drive.

37.     At 2:35 p.m., LISTER called GARCIA-AVALOS on Target Telephone 1. During the call, LISTER asked GARCIA-AVALOS if he had just "pulled up," to which GARCIA-AVALOS confirmed. GARCIA-AVALOS then informed LISTER that his "friend" had forgotten the money, and that he would be back in "two or three" minutes.

38.     Surveillance observed GARCIA-AVALOS travel from Mosswood Drive to the Wells Fargo Bank located at 900 Colusa Avenue, Yuba City, CA, where he parked in the vicinity

GUZMAN, ultimately leading HINOJOSA-GUZMAN to believe that Detective Martinez had placed a call to the wrong number.

15

of a white Honda SUV (CA 9UHF498) registered to Sonia Soto-Fernandez at 398 Alemar Way, Apartment 4, Yuba City, CA. Sergeant Machuca then observed HINOJOSA-GUZMAN exit the white Honda SUV (CA 9UHF498), walk to an ATM machine, interact with the machine, walk to GARCIA-AVALOS' gray Infiniti SUV (CA 9MXC518), then hand the unknown front passenger of the gray Infiniti SUV (CA 9MXC518) money. Surveillance then observed GARCIA-AVALOS travel back to the vicinity of 1650 Mosswood Drive.

39.     At Mosswood Drive, surveillance observed LISTER exit 1650 Mosswood Drive, enter the gray Infiniti SUV (CA 9MXC518), then depart the vicinity of the residence. Surveillance then travelled with the gray Infiniti SUV (CA 9MXC518) until it turned onto Wilkie Way in Yuba City, CA, where surveillance could not follow the vehicle without alerting GARCIA-AVALOS of the investigation. Moments later, surveillance observed the gray Infiniti SUV (CA 9MXC518) exit Wilkie Way and travel to Lincrest Elementary School in Yuba City, CA, where Detective Martinez observed GARCIA-AVALOS to be the sole occupant of the vehicle.

40.     On June 2, 2025, at 3:58 p.m., GARCIA-AVALOS called LISTER using Target Telephone 1. During the call, GARCIA-AVALOS stated that his cousin needed "one big one." Later in the call, GARCIA-AVALOS stated that "the guy" was waiting for his answer. LISTER then informed GARCIA-AVALOS that he was going to make a phone call, then call GARCIA-AVALOS back. At 4:01 p.m., LISTER called GARCIA-AVALOS on Target Telephone 1. During the call, LISTER instructed GARCIA-AVALOS to give him 15 minutes before "heading over."

41.     At approximately 4:47 p.m., while conducting surveillance at LISTER's residence at 1650 Mosswood Drive, the YCSO POP team observed GARCIA-AVALOS arrive in the vicinity of the residence as the operator of his gray Infiniti SUV (CA 9MXC518). Surveillance then observed GARCIA-AVALOS exit the vehicle, then enter 1650 Mosswood Drive. Approximately 6 minutes later, surveillance observed GARCIA-AVALOS exit the residence, enter the gray Infiniti SUV (CA 9MXC518), then depart the vicinity of 1650 Mosswood Drive.

16

**G.    Probable cause for Counts 1 and 9 supporting a complaint and arrest warrant for GARCIA-AVALOS: on June 11, 2025, GARCIA-AVALOS delivered five pounds of methamphetamine to CS-1, after coordinating with LISTER and MONTIEL-ROMERO.**

42.    On the days leading up to June 11, 2025, CS-1 arranged the purchase of 5 pounds of methamphetamine from GARCIA-AVALOS under the direction of controlling agents.  On June 11, 2025, at 12:17 p.m., GARCIA-AVALOS called an associate named Lloyd LISTER ("LISTER") using Target Telephone 1. During the call, GARCIA-AVALOS stated that he needed "five" for "that guy." LISTER stated that once GARCIA-AVALOS went to LISTER's residence with the money, LISTER would go "pick it."

43.    At approximately 12:53 p.m., YCSO POP team Detective Jacob Balentine observed GARCIA-AVALOS' gray Infiniti SUV (CA 9MXC518) arrive in the vicinity of LISTER's residence at 1650 Mosswood Drive, Yuba City, CA. GARCIA-AVALOS then entered the residence, shortly after arriving. At approximately 1:17 p.m., SA Andrew Peters observed LISTER exit 1650 Mosswood Drive, enter his white Jeep SUV (CA 5JKB410), depart the vicinity of the residence, and travel to the vicinity of the Quick Stop located at 1757 Live Oak Boulevard, Yuba City, CA. After arriving at the Quick Stop, officers observed an unknown Hispanic male adult enter LISTER's white Jeep SUV (CA 5JKB410), carrying a grocery bag. The unknown Hispanic male adult then exited the white Jeep SUV (CA 5JKB410) empty-handed, then returned to a maroon Ford sedan (CA 6LFF862), registered to Elmer MONTIEL-ROMERO at 676 Sutter Street, Yuba City, CA. TFO Torres later confirmed the unknown Hispanic male adult to be MONTIEL-ROMERO by comparing a driver's license photo of MONTIEL-ROMERO to what he observed in person on the day of the controlled purchase.

44.    Following the interaction with MONTIEL-ROMERO, surveillance observed the white Jeep SUV (CA 5JKB410) travel back to Mosswood, stopping briefly at the 7-Eleven located at 929 Market Street, Yuba City, CA, on the way. At approximately 1:57 p.m., Detective Ballentine observed the white Jeep SUV (CA 5JKB410) arrive back at 1650 Mosswood Drive. LISTER then exited the white Jeep SUV (CA 5JKB410), carrying the grocery bag, then entered

17

the residence. At approximately 2:00 p.m., Detective Ballentine observed GARCIA-AVALOS exit 1650 Mosswood Drive carrying the grocery bag. Shortly thereafter, LISTER exited 1650 Mosswood Drive. Surveillance observed GARCIA-AVALOS enter the gray Infiniti SUV (CA 9MXC518) while LISTER entered the white Jeep SUV (CA 5JKB410). GARCIA-AVALOS and LISTER then exited the vicinity of 1650 Mosswood Drive in tandem, in their respective vehicles.

45.    At approximately 2:08 p.m., surveillance observed the gray Infiniti SUV (CA 9MXC518) and the white Jeep SUV (CA 5JKB410) enter the vicinity of the predetermined meet location, the Taqueria Guadalajara located at 1380 Franklin Boulevard, Yuba City, CA. At approximately 2:09 p.m., surveillance observed CS-1 park CS-1's vehicle in the vicinity of the gray Infiniti SUV (CA 9MXC518). GARCIA-AVALOS then exchanged 5 pounds of methamphetamine in a gray grocery bag for DEA official advanced funds while inside CS-1's vehicle. GARCIA-AVALOS then returned to the gray Infiniti SUV (CA 9MXC518). LISTER then exited the white Jeep SUV (CA 5JKB410) and entered the gray Infiniti SUV (CA 9MXC518). LISTER then exited the gray Infiniti SUV (CA 9MXC518), returned to the white Jeep SUV (CA 5JKB410), then departed the meet location. GARCIA-AVALOS then departed the meet location separately, in the gray Infiniti SUV (CA 9MXC518).

46.    Based on my training and experience, I believe that LISTER was given some or all of the five pounds of methamphetamine in advance by MONTIEL-ROMERO, then gave some or all of the methamphetamine in advance to GARCIA-AVALOS. Therefore, LISTER accompanied GARCIA-AVALOS to the controlled purchase to observe the transaction, then immediately collect the money for the methamphetamine, to immediately pay MONTIEL-ROMERO for the methamphetamine given to LISTER in advance.

47.    Agents submitted suspected methamphetamine found inside the gray grocery bag sold to CS-1 to the DEA Western Regional Laboratory for analysis and safekeeping. The analysis resulted positive for methamphetamine, weighing 2204 grams and more than 500 grams of a mixture or substance containing a detectable amount of methamphetamine.

18

**H.    Probable cause for Count 1 supporting a complaint and arrest warrants for GARCIA-AVALOS and ABREGO as well as a search warrant for Subject Premises 1 and 2: on September 2, 2025, ABREGO directed a vehicle transporting 20 pounds of methamphetamine to deliver 10 pounds of methamphetamine to GARCIA-AVALOS at Subject Premises 1, and after the delivery, the vehicle went to Subject Premises 2 with the remaining 10 pounds of methamphetamine.**

48.    On August 31, 2025, at 5:55 p.m., ABREGO sent a text message to Target Telephone stating "Soy Leo [This is Leo]."  Results for a query submitted to a law enforcement database indicate that the phone number from which the text message stating "This is Leo" was sent is associated to a Leonel Abrego at 3475 Richmond Court, Live Oak, CA. During an address check of 3475 Ricmond Court on September 2, 2025, YCSO POP Detective Alex Martinez observed a white Nissan SUV (CA 9GLT312) registered to Esmeralda Perez at 3475 Richmond Court, Live Oak, CA in the driveway of the residence.

49.    On September 2, 2025, ABREGO and GARCIA-AVALOS had multiple instances of wire communication over Target Telephone 1 to coordinate what agents believe was ABREGO delivering a load of methamphetamine to GARCIA-AVALOS. At 3:42 p.m., GARCIA-AVALOS called ABREGO using Target Telephone 1. During the call, GARCIA-AVALOS asked ABREGO if he had "heard anything," to which ABREGO replied "they are on their way." GARCIA-AVALOS asked ABREGO if he would "pass through" Yuba City, CA, to which ABREGO stated it would be ABREGO's brother. GARCIA-AVALOS questioned whether he could send ABREGO's brother his home address, to which ABREGO replied that his brother was "completely trustworthy." Later in the conversation, GARCIA-AVALOS informed ABREGO that he would send ABREGO "the address." Following the call, GARCIA-AVALOS sent ABREGO "1735 oleander Dr Yuba city ca 95991" (GARCIA-AVALOS' residence) using Target Telephone 1.

50.    At 9:14 p.m., ABREGO called GARCIA-AVALOS on Target Telephone 1. During the call, ABREGO questioned whether it was too late, because the "pizzas" would arrive in "twenty to twenty-five" minutes. GARCIA-AVALOS informed ABREGO that he could open the garage. ABREGO stated that "his GPS" was giving a 25-minute estimated time of arrival to

19

GARCIA-AVALOS' house. GARCIA-AVALOS questioned how many "they" were, to which ABREGO replied "twenty." Agents believe that in this statement ABREGO informed GARCIA-AVALOS that the transporter had 20 pounds of methamphetamine in the car available for delivery. ABREGO stated that GARCIA-AVALOS could "take a look" at "them" and advise ABREGO how many he wanted. GARCIA-AVALOS informed ABREGO that he could "get 10 out right away." GARCIA-AVALOS inquired about the price, to which ABREGO stated that "the boss" wanted "eleven, but it's fine." GARCIA-AVALOS stated that he would pay "eleven" for the "one" he "had to break."  Because $1,100 is a common price for a pound of methamphetamine, I believe that ABREGO quoted GARCIA-AVALOS a price to purchase 10 pounds of methamphetamine at $1,100 per pound.

51. At approximately 9:34 p.m., detectives with the YCSO POP team observed a red Honda Accord registered to Jose Abrego Calderon at 345 Oregon Street, Gridley, CA arrive at 1735 Oleander Drive, then enter the garage of the residence.  At 9:37 p.m., GARCIA-AVALOS called ABREGO using Target Telephone 1. During the call, GARCIA-AVALOS stated that "he" had arrived already. GARCIA-AVALOS then stated, "they are good." Later in the conversation, ABREGO asked if GARCIA-AVALOS wanted "all of them," to which GARCIA-AVALOS replied that "ten were fine to start." ABREGO stated that GARCIA-AVALOS was close by, and advised GARCIA-AVALOS to "tell him." GARCIA-AVALOS asked for "ten boxes of avocados," then stated he would "pay those back, then grab the next ten."

52. At approximately 9:42 p.m., surveillance observed the red Honda Accord depart the residence. Surveillance followed the red Honda Accord until it terminated travel at the registered owner address at 345 Oregon Street, Gridley, CA (Subject Premises 2).  Agents believe that the red Honda Accord transported 20 pounds of methamphetamine to Subject Premises 1 where it dropped off 10 pounds of methamphetamine to GARCIA-AVALOS.  Then, the red Honda Accord left Subject Premises 1 with the remaining 10 pounds of methamphetamine, and it transported the methamphetamine to Subject Premises 2.

53.    On September 4, 2025, at 12:18 p.m., GARCIA-AVALOS called ABREGO using Target Telephone 1. During the call, GARCIA-AVALOS stated that he "took care of seven trees yesterday," then stated, "so maybe by tomorrow it will be done." ABREGO instructed GARCIA-AVALOS to advise ABREGO "tonight."

54.    On September 5, 2025, starting at 7:58 a.m., the following text conversation between GARCIA-AVALOS and ABREGO occurred:

| Time | Sender | Text |
| --- | --- | --- |
| 7:58 a.m. | GARCIA-AVALOS | You can send me the chainsaws whenever you want |
| 7:59 a.m. | ABREGO | To your house? |
| 8:00 a.m. | GARCIA-AVALOS | Yes |
| 8:00 a.m. | GARCIA-AVALOS | Please, cousin |
| 8:01 a.m. | ABREGO | Do you want the whole line or just the half? |
| 8:02 a.m. | GARCIA-AVALOS | Whatever you prefer |
| 8:03 a.m. | ABREGO | We're full over here |
| 9:55 a.m. | ABREGO | You caught me having breakfast… I'll stop by later!!! Or at what time? |
| 9:55 a.m. | GARCIA-AVALOS | Around what time cousin |
| 9:55 a.m. | GARCIA-AVALOS | Because I have to go to Chico |
| 9:56 a.m. | ABREGO | Go if you want and then text me once you're coming back |
| 9:57 a.m. | GARCIA-AVALOS | Okay thank you |
| 9:57 a.m. | ABREGO | Thank you |
| 12:27 p.m. | GARCIA-AVALOS | We're here at the house |
| 12:30 p.m. | ABREGO | I'm around here. I will stop by in 20-25 for the receipt and later on the butler will give you the trees |
| 12:30 p.m. | GARCIA-AVALOS | Ok |
| 12:43 p.m. | GARCIA-AVALOS | Let me know when you're 5 minutes away |
| 12:44 p.m. | GARCIA-AVALOS | Please because I am busy but I'm around the same block |
| 12:45 p.m. | ABREGO | I'll arrive in 10, I'm in a white Nissan with the family. |

55.    At 12:58 p.m., detectives with the YCSO POP team observed the same white Nissan SUV (CA 9GLT312) previously observed at the residence associated to Leonel ABREGO arrive in the vicinity of GARCIA-AVALOS' known address of 1735 Oleander Drive, Yuba City, CA. Detective Hindo was able to observe a Hispanic male adult exit the white Nissan SUV (CA 9GLT312), and visually confirm that it was ABREGO by comparing what he observed in person to Facebook photos from a profile named "Leonel Abrego" provided by TFO

21

Torres.  ABREGO then walked towards the front of the residence out of view, then moments later back into view, walking towards the white Nissan SUV (CA 9GLT312). ABREGO then entered the white Nissan SUV (CA 9GLT312) then departed the vicinity of the residence.

56.    Later that evening, starting at 7:24 p.m., the following text conversation between GARCIA-AVALOS and ABREGO occurred:

| Time | Sender | Text |
|------|--------|------|
| 7:24 p.m. | GARCIA-AVALOS | Will the butler be able to come by today |
| 7:37 p.m. | ABREGO | He will arrive in 30-35 minutes |
| 7:38 p.m. | GARCIA-AVALOS | Okay thank you I'll see him here |

57.    At 8:14 p.m., detectives with the YCSO POP team observed the same red Honda Accord observed arriving at GARCIA-AVALOS' residence on September 2, 2025, arriving at GARCIA-AVALOS' residence again. Surveillance observed the red Honda Accord back into the garage. GARCIA-AVALOS then shut the garage door. At 8:21 p.m., surveillance observed the garage door open, the red Honda Accord then exited the garage and departed from the vicinity of 1735 Oleander Drive.

**I.    Probable cause for 10 supporting a complaint and arrest warrant for HINOJOSA-GUZMAN: on October 4, 2025, HINOJOSA-GUZMAN possessed with intent to distribute 45 pounds of methamphetamine seized by law enforcement.**

58.    On October 4, 2025, at approximately 4:25 p.m., I observed court-authorized GPS data associated with the telephone used by HINOJOSA-GUZMAN travelling southbound on the Interstate 5 away from Yuba City, CA. The GPS location data showed HINOJOSA-GUZMAN's phone travelling southbound until exiting the Interstate 5 and then travelling eastbound until it arrived in the vicinity of Delano, CA. Once in Delano, the GPS ping location data showed that the phone stayed in Delano until approximately 7:45 p.m., when it began travelling westbound back towards the Interstate 5.

59.    At approximately 10:15 p.m., while observing traffic from an on-ramp to Interstate 5, I observed HINOJOSA-GUZMAN's white Honda SUV (CA 9UHF498) travelling northbound on the interstate.  Based upon my training, experience, and observations during this

case, this route of travel indicated that HINOJOSA-GUZMAN may be transporting methamphetamine from Southern California to Northern California.   I immediately initiated travel, caught up to the white Honda SUV, and observed the license plate to be 9UHF498. I, with the assistance of other members of DEA Sacramento Task Force conducted surveillance of the white Honda SUV (CA 9UHF498) as it travelled.

60.    At approximately 11:10 p.m., CHP Officer Walker conducted a stop of the white Honda SUV (CA 9UHF498) after observing it violate a California vehicle code. The stop was conducted in the vicinity of the Turner Road exit on the California Highway 99 northbound. CHP Officer Rey Garcia responded to the scene of the stop to assist Officer Walker. Officer Walker encountered HINOJOSA-GUZMAN as the operator and sole occupant of the white Honda SUV (CA 9UHF498). HINOJOSA-GUZMAN provided his California driver's license to Officer Garcia who verified the operator of the vehicle was HINOJOSA-GUZMAN by comparing the driver's license name and photo to what he observed in person.

61.    While Officer Garcia was interacting with HINOJOSA-GUZMAN, Officer Walker observed methamphetamine in plain view, between the second and third row seats of the vehicle. A search of the vehicle was conducted, yielding 41 clear plastic bags, each containing methamphetamine, with a total weight of approximately 45 pounds. HINOJOSA-GUZMAN was booked in the San Joaquin County Jail for possession of a controlled substance for sale, transportation of a controlled substance for sale, and possession of methamphetamine exceeding 10 kilograms.

## V.    AUTHORIZATION REQUEST

62.    Based on the foregoing statement of probable cause, I request the court issue arrest warrants for the following individuals:

    i.      Jose GARCIA-AVALOS;

    ii.     Octavio HINOJOSA-GUZMAN; and

    iii.    Leonel ABREGO.

23

63.    Additionally based upon the above statement of probable cause, I request that the Court issue a search warrant authorizing agents to search the following locations, all described more fully in attachment A:

      i.    The residence located at 1735 Oleander Drive, Yuba City, CA ("Subject Premises 1"); and

      ii.    The residence located at 345 Oregon Street, Gridley, CA ("Subject Premises 2").

64.    The authorization requested, if granted, would allow agents to seize evidence, fruits, or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 843 and 846 (distribution of and possession with intent to distribute controlled substances, use a facility of interstate commerce in furtherance of drug trafficking, and conspiracy to do the same).  The items and evidence to be seized is more fully in Attachment B.

## VI.    REQUEST TO SEAL

65.    This Affidavit contains information regarding persons to be arrested as well as potential subject and targets of this investigation.  This investigation is continuing, and the potential targets as well as the persons to be arrested are unaware of the investigation or the fact that they may be arrested.  If unsealed, the information contained herein may jeopardize officers conducting the search warrants or attempting to execute the arrest warrants.  In light of the ongoing nature of the investigation, and the likelihood that notice to above-identified individuals may cause them to destroy evidence, flee from prosecution, and notify confederates, I request that this affidavit and the resulting arrest warrants be sealed on the Court's docketing system, with the exception of copies utilized by law enforcement officers participating in the investigation.  The government also requests that it be allowed to provide this document to defense counsel to comply with its discovery obligations in a criminal proceeding without further order of Court.

I swear, under the penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information, and belief.

_____
Alexander Malik
Special Agent
Drug Enforcement Administration

Sworn to me over the telephone and SIGNED by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this __18th__ day of October 2025.

_____
Hon. Sean C. Riordan
United States Magistrate Judge

Approved as to form:

*/s/ Robert Abendroth*
Robert Abendroth
Assistant United States Attorney

**Attachment A**

**Locations to be Searched**

1. The residence located at 1735 Oleander Drive, Yuba City, CA 95991:



  1735 Oleander Drive, Yuba City, CA 95991 ("Subject Premises 1"). Subject Premises 1, as depicted in the photograph above, is a single-story, single-family residence with a brown shingle roof. The residence has a white exterior, with white trim, and a white garage door. The numbers "1735" appear in black numbering at head level on the left-hand side of the garage door. The front door of the residence is facing Oleander Drive, clearly visible from the street, and is covered by a glass security door. Access to the residence is unobstructed from Oleander Drive. Subject Premises 1 includes all buildings, out-buildings, attached and detached garages, and real property located within the curtilage of 1735 Oleander Drive, Yuba City, CA 95991. This warrant also authorizes the search of vehicles parked within the curtilage of Subject Premises 1.

2.  The residence located at 345 Oregon Street, Gridley, CA 95948:



The residence located at 345 Oregon Street, Gridley, CA 95948 ("Subject Premises 2").

Subject Premises 2, as depicted in the photograph above, is a single-story, single-family

residence with a gray asphalt composite roof. The residence is light brown in color with white

trim.  The numbers "345" appear in white numbering at head level to the left of the front door.

The front door of the residence faces Oregon Street, is clearly visible and unobstructed from the

street, and is protected by a metal security door. There is also a second door granting immediate

access to the dwelling on the north side of the residence, also visible and unobstructed from

Oregon Street. The second door is also protected by a metal security door. Subject Premises 2

includes all buildings, out-buildings, attached and detached garages, and real property located

within the curtilage of 345 Oregon Street, Gridley, CA 95948.  This warrant also authorizes the

search of vehicles parked within the curtilage of Subject Premises 2.

**Attachment B**

**Items to be Seized**

The following items to be seized in whatever form (including electronic) found at the Property to be Searched described in Attachment A, including any digital devices, for evidence, fruits or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 843 and 846 (distribution of and possession with intent to distribute controlled substances, use a facility of interstate commerce in furtherance of drug trafficking, and conspiracy to do the same). These records and materials are more specifically described below:

1.       Controlled substances, including methamphetamine, fentanyl, or items frequently used to distribute methamphetamine and fentanyl or items containing residue from the distribution of methamphetamine and fentanyl; drug-trafficking paraphernalia, including scales, measuring devices, and weighing devices; narcotics diluting or cutting agents; narcotics packaging materials, including plastic, tin foil, cellophane, jars, plastic bags, and containers; and plastic surgical gloves;

2.       United States and foreign currency linked to drug trafficking and/or the proceeds of drug trafficking, including the pre-recorded U.S. currency used to purchase methamphetamine, fentanyl, and drugs during this investigation;

3.       Narcotics or money ledgers, narcotics distribution or customer lists, narcotics supplier lists, correspondence, notations, logs, receipts, journals, books, pay and owe sheets, records and other documents noting the price, quantity, date and/or times when narcotics were purchased, possessed, transferred, distributed, sold or concealed;

4.       Telephone paging devices, beepers, mobile and cellular phones, car phones, answering machines and tapes, and other communication devices which could be used in furtherance of possession with intent to distribute and/or distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1), and unlawful use of a communication facility, in violation of 21 U.S.C. § 843.

3

5.      Bank account records, wire transfer records, bank statements, safety deposit keys and records, money wrappers, money containers, income tax returns, evidence of financial transfer, or movement of money generated from the sale of narcotics;

6.      Personal telephone books, address books and other such address listings, letters, cables, telegrams, telephone bills, photographs, audio and video tapes connected to drug trafficking, personal notes and other items reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in drug trafficking activities;

7.      Financial instruments purchased with large amounts of currency derived from the sale of controlled substances, including travelers checks, bonds, stock certificates, cashier's checks and certificates of deposit; money counting machines, money wrappers and bags used to carry controlled substances;

8.      Records, documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items obtained with the proceeds from the sale of controlled substances;

9.      Records, items, and documents reflecting travel, including airline tickets, credit card receipts, travel vouchers, hotel and restaurant receipts, canceled checks, maps and written directions to location;

10.     Handguns, shotguns, rifles, explosives, and other firearms/incendiary devices and ammunition that may be used to facilitate the distribution or possession of, with the intent to distribute controlled substances or discovered in the possession of a prohibited person;

11.     Indicia of occupancy, residency, control or ownership of the premises and things described in this warrant, including utility bills, telephone bills, loan payment receipts, rent documents, canceled envelopes and keys, photographs, and bank records.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| | ) | |
| | ) | Case No. |
| 1735 Oleander Drive, Yuba City, CA | ) | |
| | ) | |
| | ) | |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ California _____
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____ October 31, 2025 _____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐   Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐   for _____ days *(not to exceed 30)* ☐   until, the facts justifying, the later specific date of _____ .

Date and time issued:     October 18, 2025 at 4:11 p.m. _____          _____
                                                                                                            *Judge's signature*

City and state:        Davis, California _____                    Sean C. Riordan, U.S. Magistrate Judge
                                                                                                            *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____            _____
Signature of Judge                                                                    Date

**Attachment A**

**Locations to be Searched**

1.  The residence located at 1735 Oleander Drive, Yuba City, CA 95991:



      1735 Oleander Drive, Yuba City, CA 95991 ("Subject Premises 1"). Subject Premises 1, as depicted in the photograph above, is a single-story, single-family residence with a brown shingle roof.  The residence has a white exterior, with white trim, and a white garage door.  The numbers "1735" appear in black numbering at head level on the left-hand side of the garage door.  The front door of the residence is facing Oleander Drive, clearly visible from the street, and is covered by a glass security door.  Access to the residence is unobstructed from Oleander Drive. Subject Premises 1 includes all buildings, out-buildings, attached and detached garages, and real property located within the curtilage of 1735 Oleander Drive, Yuba City, CA 95991. This warrant also authorizes the search of vehicles parked within the curtilage of Subject Premises 1.

2. The residence located at 345 Oregon Street, Gridley, CA 95948:



The residence located at 345 Oregon Street, Gridley, CA 95948 ("Subject Premises 2"). Subject Premises 2, as depicted in the photograph above, is a single-story, single-family residence with a gray asphalt composite roof. The residence is light brown in color with white trim. The numbers "345" appear in white numbering at head level to the left of the front door. The front door of the residence faces Oregon Street, is clearly visible and unobstructed from the street, and is protected by a metal security door. There is also a second door granting immediate access to the dwelling on the north side of the residence, also visible and unobstructed from Oregon Street. The second door is also protected by a metal security door. Subject Premises 2 includes all buildings, out-buildings, attached and detached garages, and real property located within the curtilage of 345 Oregon Street, Gridley, CA 95948. This warrant also authorizes the search of vehicles parked within the curtilage of Subject Premises 2.

2

**Attachment B**

**Items to be Seized**

The following items to be seized in whatever form (including electronic) found at the Property to be Searched described in Attachment A, including any digital devices, for evidence, fruits or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 843 and 846 (distribution of and possession with intent to distribute controlled substances, use a facility of interstate commerce in furtherance of drug trafficking, and conspiracy to do the same).  These records and materials are more specifically described below:

1.     Controlled substances, including methamphetamine, fentanyl, or items frequently used to distribute methamphetamine and fentanyl or items containing residue from the distribution of methamphetamine and fentanyl; drug-trafficking paraphernalia, including scales, measuring devices, and weighing devices; narcotics diluting or cutting agents; narcotics packaging materials, including plastic, tin foil, cellophane, jars, plastic bags, and containers; and plastic surgical gloves;

2.     United States and foreign currency linked to drug trafficking and/or the proceeds of drug trafficking, including the pre-recorded U.S. currency used to purchase methamphetamine, fentanyl, and drugs during this investigation;

3.     Narcotics or money ledgers, narcotics distribution or customer lists, narcotics supplier lists, correspondence, notations, logs, receipts, journals, books, pay and owe sheets, records and other documents noting the price, quantity, date and/or times when narcotics were purchased, possessed, transferred, distributed, sold or concealed;

4.     Telephone paging devices, beepers, mobile and cellular phones, car phones, answering machines and tapes, and other communication devices which could be used in furtherance of possession with intent to distribute and/or distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1), and unlawful use of a communication facility, in violation of 21 U.S.C. § 843.

5.     Bank account records, wire transfer records, bank statements, safety deposit keys and records, money wrappers, money containers, income tax returns, evidence of financial transfer, or movement of money generated from the sale of narcotics;

6.     Personal telephone books, address books and other such address listings, letters, cables, telegrams, telephone bills, photographs, audio and video tapes connected to drug trafficking, personal notes and other items reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in drug trafficking activities;

7.     Financial instruments purchased with large amounts of currency derived from the sale of controlled substances, including travelers checks, bonds, stock certificates, cashier's checks and certificates of deposit; money counting machines, money wrappers and bags used to carry controlled substances;

8.     Records, documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items obtained with the proceeds from the sale of controlled substances;

9.     Records, items, and documents reflecting travel, including airline tickets, credit card receipts, travel vouchers, hotel and restaurant receipts, canceled checks, maps and written directions to location;

10.     Handguns, shotguns, rifles, explosives, and other firearms/incendiary devices and ammunition that may be used to facilitate the distribution or possession of, with the intent to distribute controlled substances or discovered in the possession of a prohibited person;

11.     Indicia of occupancy, residency, control or ownership of the premises and things described in this warrant, including utility bills, telephone bills, loan payment receipts, rent documents, canceled envelopes and keys, photographs, and bank records.

ERIC GRANT
United States Attorney
ROBERT ABENDROTH
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| In the Matter of the Search of: | CASE NO. |
|---|---|
| 1735 Oleander Drive, Yuba City, CA | SEALING ORDER |
| | **UNDER SEAL** |

# S E A L I N G   O R D E R

Upon Application of the United States of America and good cause having been shown,

IT IS HEREBY ORDERED that the file in the above-captioned matter be, and is hereby ordered, SEALED until further order of this Court. Law enforcement officers participating in the investigation may utilize copies of the sealed documents without further order of Court.  Additionally, the government may provide the sealed document to defense counsel to comply with its discovery obligations in a criminal proceeding without further order of Court.

Dated:  October 18, 2025

_____
Hon. Sean C. Riordan
U.S. MAGISTRATE JUDGE

SEALING ORDER

AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Eastern District of California

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| | ) | |
| | ) | Case No. |
| 345 Oregon Street, Gridley, CA | ) | |
| | ) | |
| | ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____ Eastern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841, 843, and 846 | distribution of and possession with intent to distribute controlled substances, use a facility of interstate commerce in furtherance of drug trafficking, and conspiracy to do the same |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☑ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Alexander Malik, Special Agent, DEA
_____
*Printed name and title*

Sworn to before me and signed by telephone.

Date:  October 18, 2025

_____
*Judge's signature*

City and state:  Davis, California

Sean C. Riordan, U.S. Magistrate Judge
_____
*Printed name and title*

## AFFIDAVIT

I, Alexander Malik, Drug Enforcement Administration ("DEA") Special Agent, being duly sworn, hereby state:

### I.      PURPOSE OF AFFIDAVIT

1.      This affidavit is submitted in support of a Criminal Complaint and arrest warrant for the following people:

> i.      Jose GARCIA-AVALOS ("GARCIA-AVALOS") – Counts 1 – 9;
>
> ii.      Octavio HINOJOSA-GUZMAN ("HINOJOSA-GUZMAN") – Counts 1, 5, 6, 8, and 10; and
>
> iii.      Leonel ABREGO – Count 1.

2.      This affidavit charges the individuals listed above with the following violations:

COUNT 1:
Beginning on an unknown date, but no later than on or about July 8, 2024, and continuing through the present date, in the Counties of Sutter, Yuba, and San Joaquin, State and Eastern District of California, and elsewhere, Jose GARCIA-AVALOS, Octavio HINOJOSA-GUZMAN, and Leonel ABREGO, did conspire and agree with persons both known and unknown to your Affiant to knowingly and intentionally distribute and possess with intent to distribute at least 50 grams of methamphetamine, a Schedule II controlled substance, and at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

COUNT 2:
On or about July 31, 2024, in the County of Sutter, State and Eastern District of California, Jose GARCIA-AVALOS, did knowingly and intentionally distribute at least 50 grams of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 3:
On or about August 22, 2024, in the County of Sutter, State and Eastern District of California, Jose GARCIA-AVALOS did knowingly and intentionally distribute at least 50 grams of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 4:
On or about August 22, 2024, in the County of Sutter, State and Eastern District of California, Jose GARCIA-AVALOS did knowingly and intentionally distribute at least 40 grams

1

of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propenamide, commonly referred to as fentanyl, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 5:

On or about September 11, 2024, in the County of Sutter, State and Eastern District of California, Jose GARCIA-AVALOS and Octavio HINOJOSA-GUZMAN, aiding, abetting, and counseling one another, and commanding and procuring the commission of the following, did knowingly and intentionally distribute at least 50 grams of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 6:

On or about September 11, 2024, in the County of Sutter, State and Eastern District of California, Jose GARCIA-AVALOS and Octavio HINOJOSA-GUZMAN, aiding, abetting, and counseling one another, and commanding and procuring the commission of the following, did knowingly and intentionally distribute at least 40 grams of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propenamide, commonly referred to as fentanyl, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 7:

On or about October 10, 2024, in the County of Yuba, State and Eastern District of California, Jose GARCIA-AVALOS did knowingly and intentionally distribute at least 50 grams of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 8:

On or about October 10, 2024, in the County of Yuba, State and Eastern District of California, Jose GARCIA-AVALOS and Octavio HINOJOSA-GUZMAN, aiding, abetting, and counseling one another, and commanding and procuring the commission of the following, did knowingly and intentionally distribute at least 40 grams of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propenamide, commonly referred to as fentanyl, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 9:

On or about June 11, 2025, in the County of Sutter, State and Eastern District of California, Jose GARCIA-AVALOS, did knowingly and intentionally distribute at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 10:

On or about October 4, 2025, in the County of San Joaquin, State and Eastern District of California, Octavio HINOJOSA-GUZMAN did knowingly and intentionally possess with intent to distribute at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

2

3.      Additionally, this affidavit is submitted in support of a search warrant for the following locations, all described more fully in attachments A-1 through A-6:

     i.      The residence located at 1735 Oleander Drive, Yuba City, CA ("Subject Premises 1"); and

     ii.     The residence located at 345 Oregon Street, Gridley, CA ("Subject Premises 2").

4.      The requested search warrant seeks authorization to seize evidence, fruits, or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 843 and 846 (distribution of and possession with intent to distribute controlled substances, use a facility of interstate commerce in furtherance of drug trafficking, and conspiracy to do the same). The items and evidence to be seized is more fully in Attachment B.

## II.      AFFIANT'S BACKGROUND AND EXPERTISE

5.      I am a Special Agent (SA) with the DEA and have been so employed since February 2022. I am an "investigative or law enforcement officer" within the meaning of Section 2510(7) of Title 18 of the United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18 and Title 21 of the United States Code. I am also a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C).

6.      I completed DEA Basic Agent training at the DEA's Training Academy in Quantico, Virginia, where I received specialized training in narcotics investigations, to include training in the Controlled Substance Act, as set out in Title 21, United States Code, including but not limited to Sections 841 and 846, Controlled Substance Violations and Conspiracy to Commit Controlled Substance Violations, respectively. I received training in search and seizure law, drug identification, drug-trafficking trends and methods, evidence gathering, undercover operations, physical and electronic surveillance, and many other facets of narcotics investigations. After completing Basic Agent training, I was assigned to the DEA's Sacramento District Office Task Force Group.

3

7.      The DEA Task Force Group is a collaborative group of officers and agents from the DEA and state and local law enforcement agencies such as the Yuba County Sheriff's Department, Sacramento Sheriff's Department, Folsom Police Department, California Highway Patrol, Sacramento Police Department, El Dorado County District Attorney's Office, and California Department of Corrections and Rehabilitation.  The goal of the DEA Task Force Group is to investigate and disrupt illicit drug trafficking in specified geographical areas by immobilizing the highest levels of targeted violators and trafficking organizations.

8.      During the course of my employment as a DEA Special Agent, I have assisted and participated in criminal investigations targeting individuals involved in the trafficking of controlled substances, including but not limited to, fentanyl, methamphetamine, heroin, cocaine, cocaine base, methylenedioxymethamphetamine (MDMA), lysergic acid diethylamide (LSD), dimethyltryptamine (DMT), psilocybin, and marijuana.  While conducting such investigations, I have participated in a variety of investigative techniques and resources, including physical and electronic surveillance, and various methods of infiltration, including undercover operations and using cooperating sources.  Through these investigations, my training and experience, and conversations I have had with other agents and law enforcement officers, I am familiar with the methods used by drug traffickers to manufacture, transport, store, and distribute controlled substances, and to collect and launder drug proceeds.

9.      In addition to my personal knowledge, this affidavit is based on (1) information I obtained from related investigations; (2) conversations with other law enforcement officers including oral and written investigative and laboratory reports that I received directly or indirectly from other law enforcement officials; (3) review and analysis of information received from various sources, including evidence provided pursuant to subpoenas and search warrants, such as GPS tracking data; (4) physical surveillance conducted by law enforcement officials reported to me either directly or indirectly; (5) a review of public records, telephone toll records, and subscriber information; (6) information provided from confidential sources of information, cooperating defendants, and other sources of information working with law enforcement

4

agencies; (7) a review of driver's license and automobile registration records; (8) records from various law enforcement databases, including but not limited to the National Law Enforcement Telecommunications System ("NLETS") and the National Crime Information Center ("NCIC"); (9) my training and experience as a DEA agent and/or; (10) the training and experience of other law enforcement officials with whom I consulted during this investigation and the preparation of this Affidavit.

10.     Because this affidavit is submitted for the limited purpose of supporting the requested Criminal Complaint, I have not included the details of every aspect of the investigation.  I have set forth only the facts necessary to establish probable cause to charge the defendants listed in this affidavit.  I have not intentionally omitted information that the Court would need to assess probable cause for the arrest of the defendants.

### III.     BASIS OF INFORMATION

11.     Between the period of May 12, 2025 through June 11, 2025, pursuant to Court authorization, agents implemented the interception of wire communications to a from a device used by Jose GARCIA-AVALOS, identified in the affidavit as Target Telephone 1.  Between the period of August 8, 2025, through September 6, 2025, pursuant to Court authorization, agents implemented the interception of wire and electronic communications over Target Telephone 1, used by GARCIA-AVALOS as well as Target Telephone 3 a device used by GUZMAN TOLENTINO.  During these periods, the defendants previously outlined were monitored speaking explicitly about their drug trafficking activities on monitored target telephones or were implicated criminally in conjunction with monitored intercepts on target telephones. Additionally, agents tracked the movements of the cell phones subject to interception orders, cell phones of co-conspirators not subject to interception orders, and tracking devices affixed to vehicles used to facilitate drug trafficking all pursuant to search warrants authorized in the Eastern District of California.  The intercepts, cell phone tracking data, and vehicle tracking data all aided visual and physical surveillance as more fully detailed below.

5

12.    Additionally, Special Agents of DEA and local officers have received information from three cooperating sources "CS," who are described below:

i.    CS-1 is cooperating with the DEA in exchange for monetary compensation for CS-1's work with law enforcement.  DEA established CS-1 as a cooperator in June 2023. CS-1 has no pending criminal cases but does have a prior criminal history, which includes conspiracy to distribute crystal methamphetamine, possession of a controlled substance for sale, possession of a controlled substance, illegal entry into the U.S., and false identification to a peace officer.  CS-1 knows information involving drug trafficking activities because CS-1, prior to cooperating, was a drug trafficker and incarcerated for methamphetamine trafficking. Because CS-1 has a history which includes providing false information to a peace officer, agents utilized various methods to verify and corroborate information provided by CS-1 including, but not limited to, consensually monitoring communications, toll analysis, controlled purchases of drugs, and physical surveillance during controlled purchases.  Because agents corroborated the information provided by CS-1 relied on in this affidavit, I consider the information provided by CS-1 detailed below to be reliable in this case.

ii.    CS-2 is cooperating with the DEA in exchange for monetary compensation for CS-2's work with law enforcement.  DEA established CS-2 as a cooperator in February 2019.  CS-2 has no pending criminal cases but does have a prior criminal history, which includes trespassing, damaging a wireless communication device, possession of a controlled substance for sale, sale of a controlled substance, robbery, battery, probation violation, and assault with a deadly weapon. CS-2 knows information involving drug trafficking activities because CS-2, prior to

6

cooperating, was a drug trafficker who had been arrested for cocaine trafficking. Additionally, agents corroborated information provided by CS-2 through consensually recorded communications and physical surveillance. For these reasons, I consider CS-2's information relied upon herein to be reliable.

iii. CS-3 is cooperating with the Yuba County Sheriff's Office for consideration of pending state charges. Yuba County established CS-3 as a cooperator in May 2025. CS-3 has prior criminal history, which includes convictions for lewd or lascivious acts with a child under 14, parole violations, petty theft, conspiracy to commit a crime, criminal threats, burglary, and failing to update registration as a sex offender. CS-3 knows information involving drug trafficking activities because CS-3, prior to cooperating, was a drug trafficker who had been arrested by the Yuba County Sheriff's Office. Agents corroborated CS-3's information through consensually recorded calls and surveillance. For these reasons, I consider CS-3 to be reliable in this case

### IV.   PROBABLE CAUSE

13. Since July 2024, the DEA's Sacramento District Office (SDO) has been investigating a group of drug traffickers responsible for the distribution of large quantities of methamphetamine and other controlled substances in the greater area of Yuba City, California and elsewhere. During this investigation, agents developed probable cause to issue arrest warrants for the individuals named above as well as probable cause to search the locations listed herein. Agents developed this probable cause through multiple controlled purchases of methamphetamine and other controlled substances, information from confidential sources, the interception of wire and electronic communication, and the seizure of controlled substances from transporters.

7

**A.      Probable Cause for Counts 1 and 2 supporting a complaint and arrest warrant for GARCIA-AVALOS: on July 31, 2024, GARCIA-AVALOS sold a confidential source approximately two pounds of methamphetamine.**

14.      On July 8, 2024, CS-1 contacted a suspected methamphetamine trafficker on Facebook to organize the purchase of methamphetamine. CS-1 did so under the direction of Task Force Officer (TFO) Sixto Torres. After successfully establishing communication, the methamphetamine trafficker gave CS-1 a phone number to arrange a purchase of controlled substances.

15.      On July 31, 2024, CS-1 placed several calls to the methamphetamine trafficker as directed by TFO Torres. During these calls, a meeting was arranged at the Taqueria Guadalajara restaurant located at 1380 Franklin Road, Unit A, Yuba City, CA. During these calls, the methamphetamine trafficker informed CS-1 that an associate of the methamphetamine trafficker would meet CS-1 instead, and the associate would be driving a gray Infiniti.

16.      Before and after the controlled purchase, CS-1 and CS-1's vehicle were searched for weapons or contraband. CS-1 was also outfitted with audio and video recording devices, the contents of which were booked into evidence. Visual surveillance was also maintained on CS-1 as CS-1 travelled to and from the predetermined meet location. To date, these procedures have been followed on all controlled purchase and money-drop operations on this case. The searches of every DEA CS and CS vehicle have resulted negative for weapons or contraband on all operations over the course of this investigation.

17.      At approximately 2:53 p.m., surveillance observed CS-1 park in the parking lot of Taqueria Guadalajara. At approximately 3:24, surveillance observed a gray Infiniti SUV (CA 9MXC518), with license plate 9MXC518 enter the parking lot of Taqueria Guadalajara. A Hispanic male adult then exited the gray Infiniti SUV (CA 9MXC518), then enter the front passenger seat of CS-1's vehicle.

18.      Surveillance then observed the Hispanic male adult exit CS-1's vehicle, retrieve a pink plastic bag from the gray Infiniti SUV (CA 9MXC518), then reenter CS-1's vehicle. The Hispanic male adult then exited CS-1's vehicle, returned to the gray Infiniti SUV (CA

8

9MXC518), then departed the meet location, followed by surveillance. Surveillance units maintained visual of the gray Infiniti SUV (CA 9MXC518) until it terminated travel at 1735 Oleander Drive, Yuba City, CA. Surveillance then observed the Hispanic male adult and a second unidentified Hispanic male adult loiter in front of the residence, then load a box into the gray Infiniti SUV (CA 9MXC518). The two unidentified Hispanic male adults then entered the gray Infiniti SUV (CA 9MXC518) and departed 1735 Oleander Drive, at which point surveillance was terminated.

19.     Following the controlled purchase, CS-1 told agents that once the Hispanic male adult entered CS-1's vehicle, he introduced himself as "Jose." Jose stated that he could supply CS-1 with methamphetamine, "M-30s," and marijuana. Based on my training and experience, I believe that when Jose referred to "M-30s," he was referring to blue tables labeled "M-30" which are counterfeit Oxycodone tablets. Further, based on my training and experience, I understand that these tablets are typically counterfeit, especially when sold in large quantities, and typically contain fentanyl. Jose then provided CS-1 with a phone number to reach him directly. CS-1 told agents that once Jose reentered CS-1's vehicle, CS-1 handed Jose $2,400 of official government funds, which Jose immediately counted. Jose then handed CS-1 the pink plastic bag containing approximately two pounds of methamphetamine.

20.     Utilizing law enforcement databases, Task Force Officer (TFO) Sixto Torres obtained a driver license photo of GARCIA-AVALOS, who is the registered owner of the gray Infiniti SUV (CA 9MXC518). Upon presenting an unmarked photo of GARCIA-AVALOS to CS-1, CS-1 confirmed that the individual in the photo was the same individual who introduced himself as Jose during the controlled purchase.

21.     The suspected methamphetamine contents of the pink plastic bag sold to CS-1 were submitted to the DEA Western Regional Laboratory for analysis and safekeeping. The analysis resulted positive for methamphetamine, weighing 888.3 grams.

**B.      Probable cause for Counts 1, 3, and 4 supporting a complaint and arrest warrant for GARCIA-AVALOS: on August 22, 2024, GARCIA-AVALOS sold a confidential**

9

**source approximately 1 pound of methamphetamine and approximately 2,000 M-30 fentanyl tablets.**

22.     On the days leading up to August 22, 2024, CS-1 arranged the purchase of methamphetamine and blue M-30 tablets from GARCIA-AVALOS by contacting the phone number given to CS-1 during the controlled purchase on July 31, 2025. CS-1 contacted GARCIA-AVALOS under the direction of controlling agents.[1]  On August 22, 2024, at 11:59 a.m., GARCIA-AVALOS contacted CS-1 via phone call, stating that he was waiting for the "barcos." GARCIA-AVALOS also confirmed how long CS-1 would be before arriving at the meet location. "Barcos" is the Spanish word for boats. Based on my training and experience, I know that in California, fentanyl traffickers refer to 1,000 tablets of a controlled substance as a "boat." Therefore, in this case I believe that GARCIA-AVALOS was informing CS-1 that he was waiting for the blue M-30 tablets before the controlled purchase.

23.     On August 22, 2024, agents observed GARCIA-AVALOS arrive to the same meet location as the controlled purchase on July 31, 2024 operating the same gray Infiniti SUV (CA 9MXC518) he was previously observed operating. During the controlled purchase, GARCIA-AVALOS provided CS-1 with approximately 1 pound of methamphetamine and 2,000 M30 tablets in exchange for DEA official advanced funds. The suspected methamphetamine and fentanyl were submitted to the DEA Western Regional Laboratory for analysis and safekeeping. The analysis resulted positive for 437 grams of methamphetamine (a purity analysis showed that this substance was more than 50 grams of actual methamphetamine) and 210 grams of fentanyl.

**C.     Probable cause for Counts 1, 5, and 6 supporting a complaint and arrest warrants for GARCIA-AVALOS and HINOJOSA-GUZMAN: on September 11, 2024, GARCIA-AVALOS and HINOJOSA-GUZMAN sold a confidential source**

---

[1] Unless otherwise specified, all communications between DEA confidential sources and targets of investigation in which a drug deal is organized were conducted utilizing an account and phone number set up through a system available to DEA.  The system and account provide agents with the ability to overhear calls made by each CS in real time, to document and catalog the telephone numbers for incoming or outgoing wire and electronic communications with each CS' telephone number, and to record all phone calls and text messages to or from each CS' telephone number.  For each communication detailed in this affidavit, the respective CS utilized the account assigned to them, and law enforcement confirmed the telephone numbers with which each CS communicated.  Additionally, agents listened to all calls in real time as well as recorded all calls and text messages.

**approximately 1 pound of methamphetamine and approximately 2,000 M-30 fentanyl tablets.**

24.    On the days leading up to September 11, 2024, CS-1 arranged the purchase of methamphetamine and M-30 tablets from GARCIA-AVALOS under the direction of controlling agents.  During the calls, GARCIA-AVALOS and CS-1 agreed to meet at a location for a drug deal involving methamphetamine and M-30 tablets.

25.    On September 11, 2024, agents observed GARCIA-AVALOS arrive at the meet location as the passenger of a black Lincoln sedan (CA 9HKZ325) registered to a Lucio Castillo-Guzman at 200 Park Avenue, apt 300, Yuba City, CA. GARCIA-AVALOS then sold CS-1 approximately 1 pound of methamphetamine and 2,000 M30 tablets, returned to the front passenger seat of the black Lincoln sedan (CA 9HKZ325), then departed the meet location. Surveillance then observed the black Lincoln sedan (CA 9HKZ325) arrive at 318 North Barrett Road, Yuba City, CA. Upon arrival, GARCIA-AVALOS entered his gray Infiniti SUV (CA 9MXC518), then departed 318 North Barrett Road. An unknown Hispanic male adult then exited the black Lincoln sedan (CA 9HKZ325), then entered the rear passenger seat of a black Ford Expedition registered to Octavio HINOJOSA-GUZMAN at 200 Park Avenue, Apartment 300, Yuba City, CA. TFO Aaron Kacalek clearly observed the driver of the black Ford Expedition, and later confirmed the driver to be HINOJOSA-GUZMAN by comparing the driver's license photo of the registered owner of the vehicle to what he observed in person.

26.    The suspected methamphetamine and fentanyl were submitted to the DEA Western Regional Laboratory for analysis and safekeeping. The analysis resulted positive for 441 grams of methamphetamine and 215 grams of fentanyl.

**D.    Probable cause for Counts 1 and 7 supporting a complaint and arrest warrants for GARCIA-AVALOS: on October 31, 2024, GARCIA-AVALOS sold a confidential source approximately 1 pound of methamphetamine and 3,000 M-30 fentanyl tablets.**

27.     On the days leading up to October 31, 2024, CS-1 arranged the purchase of methamphetamine and blue M-30 tablets from GARCIA-AVALOS under the direction of controlling agents.

28.     On October 31, 2024, prior to the controlled purchase operation, agents established surveillance on GARCIA-AVALOS' known gray Infiniti SUV (CA 9MXC518). At approximately 1:28 p.m., surveillance observed the gray Infiniti SUV (CA 9MXC518) park in the vicinity of 191 Garden Highway, where HINOJOSA-GUZMAN was waiting. Upon arrival of the gray Infiniti SUV (CA 9MXC518), HINOJOSA-GUZMAN entered the front passenger seat. Surveillance then observed the gray Infiniti SUV (CA 9MXC518) depart the vicinity of 191 Garden Highway, then travel to the meet location. Once at the meet location, GARCIA-AVALOS entered CS-1's vehicle and sold CS-1 approximately 1 pound of methamphetamine and 3,000 M30 tablets in exchange for DEA official advanced funds.

29.     The suspected methamphetamine and fentanyl were submitted to the DEA Western Regional Laboratory for analysis and safekeeping. The analysis resulted positive for 447 grams of methamphetamine (a purity analysis showed that this substance was more than 50 grams of actual methamphetamine) and 318 grams of fentanyl.

**E.     The Court authorized the interception of wire communications over Target Telephone 1 used by GARCIA-AVALOS to facilitate drug trafficking activities.**

30.     On May 9, 2025, the Court authorized an application intercept wire communications over one of the devices used by GARCIA-AVALOS, Target Telephone 1, for thirty days.  Through the intercepts, agents overheard calls where GARCIA-AVALOS used Target Telephone 1 to arrange controlled substance transactions, to collect money for controlled substances, and to direct associates to use electronic communications, *i.e.* text messages, and to arrange meetings for controlled substance activities.  The initial interceptions over Target Telephone 1 began on May 13, 2025 and continued through June 11, 2025.

**F.     Probable cause for Count 1 supporting a complaint and arrest warrants for GARCIA-AVALOS and HINOJOSA-GUZMAN: GARCIA-AVALOS, LISTER,**

**HINOJOSA-GUZMAN, and others used Target Telephone 1 to distribute controlled substances within the Eastern District of California.**

31.     On May 27, 2025, GARCIA-AVALOS used Target Telephone 1 to discuss what agents believed was the sale of one pound of methamphetamine to another drug trafficker who agents saw meet with GARCIA-AVALOS in Chico, CA.  During the discussions, agents overheard GARCIA-AVALOS tell the other drug trafficker that GARCIA-AVALOS would make a call.  Agents interpreted this to mean that GARCIA-AVALOS was calling a source of supply to acquire methamphetamine for the transaction.  That same evening at 6:51 p.m., GARCIA-AVALOS called LISTER using Target Telephone 1.  Agents were familiar with LISTER's voice, his telephone number, and his appearance because he had previously worked as an informant with DEA in the separate investigation which resulted in the indictment of GUZMAN TOLENTINO.[2]  During the call, GARCIA-AVALOS informed LISTER that a customer in Chico, CA needs "one." GARCIA-AVALOS then informed LISTER that he currently had $800, and would pay LISTER "the rest" upon returning from Chico, CA. On a follow-up call between LISTER and GARCIA-AVALOS at 6:55 p.m., LISTER instructed GARCIA-AVALOS to give him 20 minutes. LISTER then stated that he would see GARCIA-AVALOS at LISTER's "house," to which GARCIA-AVALOS confirmed. Five minutes later, at 6:56 p.m., GARCIA-AVALOS spoke with his customer on Target Telephone 1. During the call, GARCIA-AVALOS informed the customer that he would be leaving Yuba City, CA, in 20 minutes.

32.     At approximately 7:05 p.m., Sacramento Sheriff's Department (SSD) detectives of the Special Investigations Bureau (SIB) observed GARCIA-AVALOS depart his residence of 1735 Oleander Drive, Yuba City, CA, in his gray Infiniti SUV (CA 9MXC518). At 7:16 p.m., GARCIA-AVALOS called LISTER using Target Telephone 1 and informed LISTER that he was at LISTER's residence. LISTER informed GARCIA-AVALOS that he would be home in "less

---

[2] During a separate investigation, LISTER acted as a cooperating source with law enforcement; however, LISTER conducted controlled substance trafficking activities outside the scope of his agreement with law enforcement. Later, he was intercepted in this investigation, and DEA, as well as state and local law enforcement, terminated his designation as a cooperating source.

13

than a minute." At 7:17 p.m., surveillance observed GARCIA-AVALOS park in the vicinity of 1650 Mosswood Drive, Yuba City, CA (LISTER's residence). Surveillance then observed a white Jeep SUV (CA 5JKB410) registered to Lloyd LISTER at 1650 Mosswood Drive, Yuba City, CA, arrive and park in the driveway of Mosswood Drive. Detective Ghaffarpour observed LISTER exit the white Jeep SUV (CA 5JKB410). Detective Ghaffarpour was able to confirm that the driver was LISTER by comparing a historical arrest photo of LISTER to what he observed in person. At 7:23 p.m., surveillance observed GARCIA-AVALOS depart the vicinity of 1650 Mosswood Drive.

33.     At approximately 8:22 p.m., surveillance observed GARCIA-AVALOS park on Hemlock Street in Chico, CA. At 8:23 p.m., GARCIA-AVALOS called his customer using Target Telephone 1. During the call, the customer asked if GARCIA-AVALOS was "there," to which GARCIA-AVALOS confirmed that he was. Then, the customer informed GARCIA-AVALOS that she was "coming out." Surveillance was unable to maintain a consistent visual of GARCIA-AVALOS without alerting him of the investigation. However, surveillance did observe a white female adult exit the front passenger seat of GARCIA-AVALOS' gray Infiniti SUV (CA 9MXC518) shortly after the call at 8:23 p.m. Surveillance then observed the white female adult walk from GARCIA-AVALOS' vehicle to a small apartment building located on the south side of Hemlock Street, Chico, CA.

34.     Approximately three days later, GARCIA-AVALOS communicated with HINOJOSA-GUZMAN concerning controlled substances and drug proceeds.  Specifically, on May 30, 2025, at 2:07 p.m., HINOJOSA-GUZMAN[3] called GARCIA-AVALOS on Target

---

[3] Throughout the investigation HINOJOSA-GUZMAN used multiple telephone numbers, and he changed telephone numbers frequently.  It is a common tactic used by drug traffickers to utilize multiple telephone numbers and change telephone numbers frequently to avoid detection by law enforcement.  Agents used records from a money remitter database to identify HINOJOSA-GUZMAN's telephone number initially; thereafter, agents found HINOJOSA-GUZMAN during physical surveillance, placed a ruse call to the telephone number associated with HINOJOSA-GUZMAN and watched HINOJOSA-GUZMAN answer the telephone.  For instance, on April 1, 2025, Yuba County Sheriff's Office Detective Alex Martinez placed a ruse call to a telephone number associated with HINOJOSA-GUZMAN while observing HINOJOSA-GUZMAN walk in the vicinity of his residence at 398 Alemar Way, Yuba City, CA. While placing the call, Detective Martinez observed HINOJOSA-GUZMAN retrieve a cellular phone from his pocket, then hold it up to his ear. Detective Martinez then conversed with HINOJOSA-

14

Telephone 1. During the call, HINOJOSA-GUZMAN requested "one" from GARCIA-AVALOS. GARCIA-AVALOS questioned whether it was a "big one," to which HINOJOSA-GUZMAN confirmed. GARCIA-AVALOS stated that he would need to pick "it" up. HINOJOSA-GUZMAN stated that GARCIA-AVALOS could go with HINOJOSA-GUZMAN's brother, and that HINOJOSA-GUZMAN would leave the money with his brother.

35.    At 2:10 p.m. GARCIA-AVALOS called LISTER using Target Telephone 1. During the call, GARCIA-AVALOS asked LISTER if he had "one," to which LISTER confirmed that he did. GARCIA-AVALOS then stated that he would go "there" with "the money" and questioned if "it" was the same as "the yellow one," and LISTER replied that "it" was "white…clear stuff."

36.    At approximately 2:25 p.m., the Yuba County Sherriff's Office (YCSO) Problem Oriented Policing (POP) team located GARCIA-AVALOS in the vicinity of the Ross clothing store located at 1299 Colusa Avenue, Yuba City, CA, by utilizing GPS data from the court authorized GPS location device affixed to GARCIA-AVALOS' gray Infiniti SUV (CA 9MXC518). After locating GARCIA-AVALOS, surveillance observed an unidentified Hispanic male adult enter GARCIA-AVALOS' gran Infiniti SUV. Surveillance then observed the gray Infiniti SUV (CA 9MXC518) travel to LISTER's residence at 1650 Mosswood Drive, Yuba City, CA, and park in the vicinity of the residence at 2:34 p.m. Surveillance then observed GARCIA-AVALOS depart the vicinity of 1650 Mosswood Drive.

37.    At 2:35 p.m., LISTER called GARCIA-AVALOS on Target Telephone 1. During the call, LISTER asked GARCIA-AVALOS if he had just "pulled up," to which GARCIA-AVALOS confirmed. GARCIA-AVALOS then informed LISTER that his "friend" had forgotten the money, and that he would be back in "two or three" minutes.

38.    Surveillance observed GARCIA-AVALOS travel from Mosswood Drive to the Wells Fargo Bank located at 900 Colusa Avenue, Yuba City, CA, where he parked in the vicinity

GUZMAN, ultimately leading HINOJOSA-GUZMAN to believe that Detective Martinez had placed a call to the wrong number.

of a white Honda SUV (CA 9UHF498) registered to Sonia Soto-Fernandez at 398 Alemar Way, Apartment 4, Yuba City, CA. Sergeant Machuca then observed HINOJOSA-GUZMAN exit the white Honda SUV (CA 9UHF498), walk to an ATM machine, interact with the machine, walk to GARCIA-AVALOS' gray Infiniti SUV (CA 9MXC518), then hand the unknown front passenger of the gray Infiniti SUV (CA 9MXC518) money. Surveillance then observed GARCIA-AVALOS travel back to the vicinity of 1650 Mosswood Drive.

39.     At Mosswood Drive, surveillance observed LISTER exit 1650 Mosswood Drive, enter the gray Infiniti SUV (CA 9MXC518), then depart the vicinity of the residence. Surveillance then travelled with the gray Infiniti SUV (CA 9MXC518) until it turned onto Wilkie Way in Yuba City, CA, where surveillance could not follow the vehicle without alerting GARCIA-AVALOS of the investigation. Moments later, surveillance observed the gray Infiniti SUV (CA 9MXC518) exit Wilkie Way and travel to Lincrest Elementary School in Yuba City, CA, where Detective Martinez observed GARCIA-AVALOS to be the sole occupant of the vehicle.

40.     On June 2, 2025, at 3:58 p.m., GARCIA-AVALOS called LISTER using Target Telephone 1. During the call, GARCIA-AVALOS stated that his cousin needed "one big one." Later in the call, GARCIA-AVALOS stated that "the guy" was waiting for his answer. LISTER then informed GARCIA-AVALOS that he was going to make a phone call, then call GARCIA-AVALOS back. At 4:01 p.m., LISTER called GARCIA-AVALOS on Target Telephone 1. During the call, LISTER instructed GARCIA-AVALOS to give him 15 minutes before "heading over."

41.     At approximately 4:47 p.m., while conducting surveillance at LISTER's residence at 1650 Mosswood Drive, the YCSO POP team observed GARCIA-AVALOS arrive in the vicinity of the residence as the operator of his gray Infiniti SUV (CA 9MXC518). Surveillance then observed GARCIA-AVALOS exit the vehicle, then enter 1650 Mosswood Drive. Approximately 6 minutes later, surveillance observed GARCIA-AVALOS exit the residence, enter the gray Infiniti SUV (CA 9MXC518), then depart the vicinity of 1650 Mosswood Drive.

16

**G.     Probable cause for Counts 1 and 9 supporting a complaint and arrest warrant for GARCIA-AVALOS: on June 11, 2025, GARCIA-AVALOS delivered five pounds of methamphetamine to CS-1, after coordinating with LISTER and MONTIEL-ROMERO.**

42.     On the days leading up to June 11, 2025, CS-1 arranged the purchase of 5 pounds of methamphetamine from GARCIA-AVALOS under the direction of controlling agents.  On June 11, 2025, at 12:17 p.m., GARCIA-AVALOS called an associate named Lloyd LISTER ("LISTER") using Target Telephone 1. During the call, GARCIA-AVALOS stated that he needed "five" for "that guy." LISTER stated that once GARCIA-AVALOS went to LISTER's residence with the money, LISTER would go "pick it."

43.     At approximately 12:53 p.m., YCSO POP team Detective Jacob Balentine observed GARCIA-AVALOS' gray Infiniti SUV (CA 9MXC518) arrive in the vicinity of LISTER's residence at 1650 Mosswood Drive, Yuba City, CA. GARCIA-AVALOS then entered the residence, shortly after arriving. At approximately 1:17 p.m., SA Andrew Peters observed LISTER exit 1650 Mosswood Drive, enter his white Jeep SUV (CA 5JKB410), depart the vicinity of the residence, and travel to the vicinity of the Quick Stop located at 1757 Live Oak Boulevard, Yuba City, CA. After arriving at the Quick Stop, officers observed an unknown Hispanic male adult enter LISTER's white Jeep SUV (CA 5JKB410), carrying a grocery bag. The unknown Hispanic male adult then exited the white Jeep SUV (CA 5JKB410) empty-handed, then returned to a maroon Ford sedan (CA 6LFF862), registered to Elmer MONTIEL-ROMERO at 676 Sutter Street, Yuba City, CA. TFO Torres later confirmed the unknown Hispanic male adult to be MONTIEL-ROMERO by comparing a driver's license photo of MONTIEL-ROMERO to what he observed in person on the day of the controlled purchase.

44.     Following the interaction with MONTIEL-ROMERO, surveillance observed the white Jeep SUV (CA 5JKB410) travel back to Mosswood, stopping briefly at the 7-Eleven located at 929 Market Street, Yuba City, CA, on the way. At approximately 1:57 p.m., Detective Ballentine observed the white Jeep SUV (CA 5JKB410) arrive back at 1650 Mosswood Drive. LISTER then exited the white Jeep SUV (CA 5JKB410), carrying the grocery bag, then entered

17

the residence. At approximately 2:00 p.m., Detective Ballentine observed GARCIA-AVALOS exit 1650 Mosswood Drive carrying the grocery bag. Shortly thereafter, LISTER exited 1650 Mosswood Drive. Surveillance observed GARCIA-AVALOS enter the gray Infiniti SUV (CA 9MXC518) while LISTER entered the white Jeep SUV (CA 5JKB410). GARCIA-AVALOS and LISTER then exited the vicinity of 1650 Mosswood Drive in tandem, in their respective vehicles.

45.    At approximately 2:08 p.m., surveillance observed the gray Infiniti SUV (CA 9MXC518) and the white Jeep SUV (CA 5JKB410) enter the vicinity of the predetermined meet location, the Taqueria Guadalajara located at 1380 Franklin Boulevard, Yuba City, CA. At approximately 2:09 p.m., surveillance observed CS-1 park CS-1's vehicle in the vicinity of the gray Infiniti SUV (CA 9MXC518). GARCIA-AVALOS then exchanged 5 pounds of methamphetamine in a gray grocery bag for DEA official advanced funds while inside CS-1's vehicle. GARCIA-AVALOS then returned to the gray Infiniti SUV (CA 9MXC518). LISTER then exited the white Jeep SUV (CA 5JKB410) and entered the gray Infiniti SUV (CA 9MXC518). LISTER then exited the gray Infiniti SUV (CA 9MXC518), returned to the white Jeep SUV (CA 5JKB410), then departed the meet location. GARCIA-AVALOS then departed the meet location separately, in the gray Infiniti SUV (CA 9MXC518).

46.    Based on my training and experience, I believe that LISTER was given some or all of the five pounds of methamphetamine in advance by MONTIEL-ROMERO, then gave some or all of the methamphetamine in advance to GARCIA-AVALOS. Therefore, LISTER accompanied GARCIA-AVALOS to the controlled purchase to observe the transaction, then immediately collect the money for the methamphetamine, to immediately pay MONTIEL-ROMERO for the methamphetamine given to LISTER in advance.

47.    Agents submitted suspected methamphetamine found inside the gray grocery bag sold to CS-1 to the DEA Western Regional Laboratory for analysis and safekeeping. The analysis resulted positive for methamphetamine, weighing 2204 grams and more than 500 grams of a mixture or substance containing a detectable amount of methamphetamine.

**H.      Probable cause for Count 1 supporting a complaint and arrest warrants for GARCIA-AVALOS and ABREGO as well as a search warrant for Subject Premises 1 and 2: on September 2, 2025, ABREGO directed a vehicle transporting 20 pounds of methamphetamine to deliver 10 pounds of methamphetamine to GARCIA-AVALOS at Subject Premises 1, and after the delivery, the vehicle went to Subject Premises 2 with the remaining 10 pounds of methamphetamine.**

48.      On August 31, 2025, at 5:55 p.m., ABREGO sent a text message to Target Telephone stating "Soy Leo [This is Leo]."  Results for a query submitted to a law enforcement database indicate that the phone number from which the text message stating "This is Leo" was sent is associated to a Leonel Abrego at 3475 Richmond Court, Live Oak, CA. During an address check of 3475 Ricmond Court on September 2, 2025, YCSO POP Detective Alex Martinez observed a white Nissan SUV (CA 9GLT312) registered to Esmeralda Perez at 3475 Richmond Court, Live Oak, CA in the driveway of the residence.

49.      On September 2, 2025, ABREGO and GARCIA-AVALOS had multiple instances of wire communication over Target Telephone 1 to coordinate what agents believe was ABREGO delivering a load of methamphetamine to GARCIA-AVALOS. At 3:42 p.m., GARCIA-AVALOS called ABREGO using Target Telephone 1. During the call, GARCIA-AVALOS asked ABREGO if he had "heard anything," to which ABREGO replied "they are on their way." GARCIA-AVALOS asked ABREGO if he would "pass through" Yuba City, CA, to which ABREGO stated it would be ABREGO's brother. GARCIA-AVALOS questioned whether he could send ABREGO's brother his home address, to which ABREGO replied that his brother was "completely trustworthy." Later in the conversation, GARCIA-AVALOS informed ABREGO that he would send ABREGO "the address." Following the call, GARCIA-AVALOS sent ABREGO "1735 oleander Dr Yuba city ca 95991" (GARCIA-AVALOS' residence) using Target Telephone 1.

50.      At 9:14 p.m., ABREGO called GARCIA-AVALOS on Target Telephone 1. During the call, ABREGO questioned whether it was too late, because the "pizzas" would arrive in "twenty to twenty-five" minutes. GARCIA-AVALOS informed ABREGO that he could open the garage. ABREGO stated that "his GPS" was giving a 25-minute estimated time of arrival to

19

GARCIA-AVALOS' house. GARCIA-AVALOS questioned how many "they" were, to which ABREGO replied "twenty." Agents believe that in this statement ABREGO informed GARCIA-AVALOS that the transporter had 20 pounds of methamphetamine in the car available for delivery. ABREGO stated that GARCIA-AVALOS could "take a look" at "them" and advise ABREGO how many he wanted. GARCIA-AVALOS informed ABREGO that he could "get 10 out right away." GARCIA-AVALOS inquired about the price, to which ABREGO stated that "the boss" wanted "eleven, but it's fine." GARCIA-AVALOS stated that he would pay "eleven" for the "one" he "had to break."  Because $1,100 is a common price for a pound of methamphetamine, I believe that ABREGO quoted GARCIA-AVALOS a price to purchase 10 pounds of methamphetamine at $1,100 per pound.

51.    At approximately 9:34 p.m., detectives with the YCSO POP team observed a red Honda Accord registered to Jose Abrego Calderon at 345 Oregon Street, Gridley, CA arrive at 1735 Oleander Drive, then enter the garage of the residence.  At 9:37 p.m., GARCIA-AVALOS called ABREGO using Target Telephone 1. During the call, GARCIA-AVALOS stated that "he" had arrived already. GARCIA-AVALOS then stated, "they are good." Later in the conversation, ABREGO asked if GARCIA-AVALOS wanted "all of them," to which GARCIA-AVALOS replied that "ten were fine to start." ABREGO stated that GARCIA-AVALOS was close by, and advised GARCIA-AVALOS to "tell him." GARCIA-AVALOS asked for "ten boxes of avocados," then stated he would "pay those back, then grab the next ten."

52.    At approximately 9:42 p.m., surveillance observed the red Honda Accord depart the residence. Surveillance followed the red Honda Accord until it terminated travel at the registered owner address at 345 Oregon Street, Gridley, CA (Subject Premises 2).  Agents believe that the red Honda Accord transported 20 pounds of methamphetamine to Subject Premises 1 where it dropped off 10 pounds of methamphetamine to GARCIA-AVALOS.  Then, the red Honda Accord left Subject Premises 1 with the remaining 10 pounds of methamphetamine, and it transported the methamphetamine to Subject Premises 2.

53.     On September 4, 2025, at 12:18 p.m., GARCIA-AVALOS called ABREGO using Target Telephone 1. During the call, GARCIA-AVALOS stated that he "took care of seven trees yesterday," then stated, "so maybe by tomorrow it will be done." ABREGO instructed GARCIA-AVALOS to advise ABREGO "tonight."

54.     On September 5, 2025, starting at 7:58 a.m., the following text conversation between GARCIA-AVALOS and ABREGO occurred:

| Time | Sender | Text |
|---|---|---|
| 7:58 a.m. | GARCIA-AVALOS | You can send me the chainsaws whenever you want |
| 7:59 a.m. | ABREGO | To your house? |
| 8:00 a.m. | GARCIA-AVALOS | Yes |
| 8:00 a.m. | GARCIA-AVALOS | Please, cousin |
| 8:01 a.m. | ABREGO | Do you want the whole line or just the half? |
| 8:02 a.m. | GARCIA-AVALOS | Whatever you prefer |
| 8:03 a.m. | ABREGO | We're full over here |
| 9:55 a.m. | ABREGO | You caught me having breakfast… I'll stop by later!!! Or at what time? |
| 9:55 a.m. | GARCIA-AVALOS | Around what time cousin |
| 9:55 a.m. | GARCIA-AVALOS | Because I have to go to Chico |
| 9:56 a.m. | ABREGO | Go if you want and then text me once you're coming back |
| 9:57 a.m. | GARCIA-AVALOS | Okay thank you |
| 9:57 a.m. | ABREGO | Thank you |
| 12:27 p.m. | GARCIA-AVALOS | We're here at the house |
| 12:30 p.m. | ABREGO | I'm around here. I will stop by in 20-25 for the receipt and later on the butler will give you the trees |
| 12:30 p.m. | GARCIA-AVALOS | Ok |
| 12:43 p.m. | GARCIA-AVALOS | Let me know when you're 5 minutes away |
| 12:44 p.m. | GARCIA-AVALOS | Please because I am busy but I'm around the same block |
| 12:45 p.m. | ABREGO | I'll arrive in 10, I'm in a white Nissan with the family. |

55.     At 12:58 p.m., detectives with the YCSO POP team observed the same white Nissan SUV (CA 9GLT312) previously observed at the residence associated to Leonel ABREGO arrive in the vicinity of GARCIA-AVALOS' known address of 1735 Oleander Drive, Yuba City, CA. Detective Hindo was able to observe a Hispanic male adult exit the white Nissan SUV (CA 9GLT312), and visually confirm that it was ABREGO by comparing what he observed in person to Facebook photos from a profile named "Leonel Abrego" provided by TFO

21

Torres.  ABREGO then walked towards the front of the residence out of view, then moments later back into view, walking towards the white Nissan SUV (CA 9GLT312). ABREGO then entered the white Nissan SUV (CA 9GLT312) then departed the vicinity of the residence.

56.     Later that evening, starting at 7:24 p.m., the following text conversation between GARCIA-AVALOS and ABREGO occurred:

| Time | Sender | Text |
|---|---|---|
| 7:24 p.m. | GARCIA-AVALOS | Will the butler be able to come by today |
| 7:37 p.m. | ABREGO | He will arrive in 30-35 minutes |
| 7:38 p.m. | GARCIA-AVALOS | Okay thank you I'll see him here |

57.     At 8:14 p.m., detectives with the YCSO POP team observed the same red Honda Accord observed arriving at GARCIA-AVALOS' residence on September 2, 2025, arriving at GARCIA-AVALOS' residence again. Surveillance observed the red Honda Accord back into the garage. GARCIA-AVALOS then shut the garage door. At 8:21 p.m., surveillance observed the garage door open, the red Honda Accord then exited the garage and departed from the vicinity of 1735 Oleander Drive.

**I.     Probable cause for 10 supporting a complaint and arrest warrant for HINOJOSA-GUZMAN: on October 4, 2025, HINOJOSA-GUZMAN possessed with intent to distribute 45 pounds of methamphetamine seized by law enforcement.**

58.     On October 4, 2025, at approximately 4:25 p.m., I observed court-authorized GPS data associated with the telephone used by HINOJOSA-GUZMAN travelling southbound on the Interstate 5 away from Yuba City, CA. The GPS location data showed HINOJOSA-GUZMAN's phone travelling southbound until exiting the Interstate 5 and then travelling eastbound until it arrived in the vicinity of Delano, CA. Once in Delano, the GPS ping location data showed that the phone stayed in Delano until approximately 7:45 p.m., when it began travelling westbound back towards the Interstate 5.

59.     At approximately 10:15 p.m., while observing traffic from an on-ramp to Interstate 5, I observed HINOJOSA-GUZMAN's white Honda SUV (CA 9UHF498) travelling northbound on the interstate.  Based upon my training, experience, and observations during this

case, this route of travel indicated that HINOJOSA-GUZMAN may be transporting methamphetamine from Southern California to Northern California.   I immediately initiated travel, caught up to the white Honda SUV, and observed the license plate to be 9UHF498. I, with the assistance of other members of DEA Sacramento Task Force conducted surveillance of the white Honda SUV (CA 9UHF498) as it travelled.

60.     At approximately 11:10 p.m., CHP Officer Walker conducted a stop of the white Honda SUV (CA 9UHF498) after observing it violate a California vehicle code. The stop was conducted in the vicinity of the Turner Road exit on the California Highway 99 northbound. CHP Officer Rey Garcia responded to the scene of the stop to assist Officer Walker. Officer Walker encountered HINOJOSA-GUZMAN as the operator and sole occupant of the white Honda SUV (CA 9UHF498). HINOJOSA-GUZMAN provided his California driver's license to Officer Garcia who verified the operator of the vehicle was HINOJOSA-GUZMAN by comparing the driver's license name and photo to what he observed in person.

61.     While Officer Garcia was interacting with HINOJOSA-GUZMAN, Officer Walker observed methamphetamine in plain view, between the second and third row seats of the vehicle. A search of the vehicle was conducted, yielding 41 clear plastic bags, each containing methamphetamine, with a total weight of approximately 45 pounds. HINOJOSA-GUZMAN was booked in the San Joaquin County Jail for possession of a controlled substance for sale, transportation of a controlled substance for sale, and possession of methamphetamine exceeding 10 kilograms.

## V.     **AUTHORIZATION REQUEST**

62.     Based on the foregoing statement of probable cause, I request the court issue arrest warrants for the following individuals:

      i.     Jose GARCIA-AVALOS;

      ii.     Octavio HINOJOSA-GUZMAN; and

      iii.     Leonel ABREGO.

63.      Additionally based upon the above statement of probable cause, I request that the Court issue a search warrant authorizing agents to search the following locations, all described more fully in attachment A:

     i.     The residence located at 1735 Oleander Drive, Yuba City, CA ("Subject Premises 1"); and

     ii.     The residence located at 345 Oregon Street, Gridley, CA ("Subject Premises 2").

64.      The authorization requested, if granted, would allow agents to seize evidence, fruits, or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 843 and 846 (distribution of and possession with intent to distribute controlled substances, use a facility of interstate commerce in furtherance of drug trafficking, and conspiracy to do the same). The items and evidence to be seized is more fully in Attachment B.

## VI.      REQUEST TO SEAL

65.      This Affidavit contains information regarding persons to be arrested as well as potential subject and targets of this investigation. This investigation is continuing, and the potential targets as well as the persons to be arrested are unaware of the investigation or the fact that they may be arrested. If unsealed, the information contained herein may jeopardize officers conducting the search warrants or attempting to execute the arrest warrants. In light of the ongoing nature of the investigation, and the likelihood that notice to above-identified individuals may cause them to destroy evidence, flee from prosecution, and notify confederates, I request that this affidavit and the resulting arrest warrants be sealed on the Court's docketing system, with the exception of copies utilized by law enforcement officers participating in the investigation. The government also requests that it be allowed to provide this document to defense counsel to comply with its discovery obligations in a criminal proceeding without further order of Court.

24

I swear, under the penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information, and belief.

_____
Alexander Malik
Special Agent
Drug Enforcement Administration

Sworn to me over the telephone and SIGNED by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this __18th__ day of October 2025.

_____
Hon. Sean C. Riordan
United States Magistrate Judge

Approved as to form:

*/s/ Robert Abendroth*
Robert Abendroth
Assistant United States Attorney

25

**Attachment A**

**Locations to be Searched**

1.  The residence located at 1735 Oleander Drive, Yuba City, CA 95991:



1735 Oleander Drive, Yuba City, CA 95991 ("Subject Premises 1"). Subject Premises 1, as depicted in the photograph above, is a single-story, single-family residence with a brown shingle roof. The residence has a white exterior, with white trim, and a white garage door. The numbers "1735" appear in black numbering at head level on the left-hand side of the garage door. The front door of the residence is facing Oleander Drive, clearly visible from the street, and is covered by a glass security door. Access to the residence is unobstructed from Oleander Drive. Subject Premises 1 includes all buildings, out-buildings, attached and detached garages, and real property located within the curtilage of 1735 Oleander Drive, Yuba City, CA 95991. This warrant also authorizes the search of vehicles parked within the curtilage of Subject Premises 1.

1

2. The residence located at 345 Oregon Street, Gridley, CA 95948:



The residence located at 345 Oregon Street, Gridley, CA 95948 ("Subject Premises 2"). Subject Premises 2, as depicted in the photograph above, is a single-story, single-family residence with a gray asphalt composite roof. The residence is light brown in color with white trim.  The numbers "345" appear in white numbering at head level to the left of the front door. The front door of the residence faces Oregon Street, is clearly visible and unobstructed from the street, and is protected by a metal security door. There is also a second door granting immediate access to the dwelling on the north side of the residence, also visible and unobstructed from Oregon Street. The second door is also protected by a metal security door. Subject Premises 2 includes all buildings, out-buildings, attached and detached garages, and real property located within the curtilage of 345 Oregon Street, Gridley, CA 95948.  This warrant also authorizes the search of vehicles parked within the curtilage of Subject Premises 2.

2

**Attachment B**

**Items to be Seized**

The following items to be seized in whatever form (including electronic) found at the Property to be Searched described in Attachment A, including any digital devices, for evidence, fruits or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 843 and 846 (distribution of and possession with intent to distribute controlled substances, use a facility of interstate commerce in furtherance of drug trafficking, and conspiracy to do the same).  These records and materials are more specifically described below:

1.      Controlled substances, including methamphetamine, fentanyl, or items frequently used to distribute methamphetamine and fentanyl or items containing residue from the distribution of methamphetamine and fentanyl; drug-trafficking paraphernalia, including scales, measuring devices, and weighing devices; narcotics diluting or cutting agents; narcotics packaging materials, including plastic, tin foil, cellophane, jars, plastic bags, and containers; and plastic surgical gloves;

2.      United States and foreign currency linked to drug trafficking and/or the proceeds of drug trafficking, including the pre-recorded U.S. currency used to purchase methamphetamine, fentanyl, and drugs during this investigation;

3.      Narcotics or money ledgers, narcotics distribution or customer lists, narcotics supplier lists, correspondence, notations, logs, receipts, journals, books, pay and owe sheets, records and other documents noting the price, quantity, date and/or times when narcotics were purchased, possessed, transferred, distributed, sold or concealed;

4.      Telephone paging devices, beepers, mobile and cellular phones, car phones, answering machines and tapes, and other communication devices which could be used in furtherance of possession with intent to distribute and/or distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1), and unlawful use of a communication facility, in violation of 21 U.S.C. § 843.

5. Bank account records, wire transfer records, bank statements, safety deposit keys and records, money wrappers, money containers, income tax returns, evidence of financial transfer, or movement of money generated from the sale of narcotics;

6. Personal telephone books, address books and other such address listings, letters, cables, telegrams, telephone bills, photographs, audio and video tapes connected to drug trafficking, personal notes and other items reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in drug trafficking activities;

7. Financial instruments purchased with large amounts of currency derived from the sale of controlled substances, including travelers checks, bonds, stock certificates, cashier's checks and certificates of deposit; money counting machines, money wrappers and bags used to carry controlled substances;

8. Records, documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items obtained with the proceeds from the sale of controlled substances;

9. Records, items, and documents reflecting travel, including airline tickets, credit card receipts, travel vouchers, hotel and restaurant receipts, canceled checks, maps and written directions to location;

10. Handguns, shotguns, rifles, explosives, and other firearms/incendiary devices and ammunition that may be used to facilitate the distribution or possession of, with the intent to distribute controlled substances or discovered in the possession of a prohibited person;

11. Indicia of occupancy, residency, control or ownership of the premises and things described in this warrant, including utility bills, telephone bills, loan payment receipts, rent documents, canceled envelopes and keys, photographs, and bank records.

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
Eastern District of California

| | |
|---|---|
| In the Matter of the Search of<br><br>345 Oregon Street, Gridley, CA | )<br>)<br>)    Case No.<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____Eastern_____ District of _____California_____ *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____October 31, 2025_____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:    October 18, 2025 at 4:11 p.m._____

*Judge's signature*

City and state:    Davis, California_____    Sean C. Riordan, U.S. Magistrate Judge
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____          _____
Signature of Judge                                                  Date

ERIC GRANT
United States Attorney
ROBERT ABENDROTH
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone:  (916) 554-2700
Facsimile:   (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| In the Matter of the Search of: | CASE NO. |
|---|---|
| 345 Oregon Street, Gridley, CA | SEALING ORDER |
| | **UNDER SEAL** |

## S E A L I N G   O R D E R

Upon Application of the United States of America and good cause having been shown,

IT IS HEREBY ORDERED that the file in the above-captioned matter be, and is hereby ordered, SEALED until further order of this Court. Law enforcement officers participating in the investigation may utilize copies of the sealed documents without further order of Court.  Additionally, the government may provide the sealed document to defense counsel to comply with its discovery obligations in a criminal proceeding without further order of Court.

Dated:     October 18, 2025

Hon. Sean C. Riordan
U.S. MAGISTRATE JUDGE

SEALING ORDER

AO 93  (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
### for the
Eastern District of California

In the Matter of the Search of

A BLACK MOTOROLA SMARTPHONE LOCATED
DURING THE SEARCH OF JOSE GARCIA-AVALOS'
PERSON (SUBJECT TELEPHONE 1)

A BLACK TCL FLIP PHONE LOCATED DURING THE
SEARCH OF JOSE GARCIA-AVALOS' PERSON (SUBJECT
TELEPHONE 2)

A BLACK APPLE IPHONE SMARTPHONE LOCATED
DURING THE SEARCH OF 345 OREGON STREET,
GRIDLEY, CA (SUBJECT TELEPHONE 3)

A BLACK SAMSUNG GALAXY S9 SMARTPHONE
LOCATED DURING THE SEARCH OF 345 OREGON
STREET, GRIDLEY, CA (SUBJECT TELEPHONE 4)

Case No.          2:25-sw-1016 CSK

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search
of the following person or property located in the _____ Eastern _____ District of _____ California _____
*(identify the person or describe the property to be searched and give its location)*:
**SEE ATTACHMENTS A-1, A-2, A-3, and A-4, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property
described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B and ATTACHMENT C, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before          December 24, 2025          *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.          ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or
from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory
as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose
property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*  ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    December 10, 2025 at 12:40 p.m.

_____
*Judge's signature*

City and state: Sacramento, California                    Chi Soo Kim, U.S. Magistrate Judge

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

| Inventory made in the presence of : |
|---|

| Inventory of the property taken and name of any person(s) seized: |
|---|

## Certification

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____          _____
Signature of Judge                                                        Date

## ATTACHMENT A-1

### Property to Be Searched

A Black Motorola smartphone seized from Jose GARCIA-AVALOS on October 20, 2025, during the execution of a federal search warrant on 1735 Oleander Drive, Yuba City, CA.  The Device is currently in the custody of the Drug Enforcement Administration at 4328 Watt Avenue, Sacramento, CA.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT A-2**

**Property to Be Searched**

A black TCL flip phone seized from Jose GARCIA-AVALOS on October 20, 2025, in Yuba City, CA.  The Device is currently in the custody of the Drug Enforcement Administration at 4328 Watt Avenue, Sacramento, CA.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT A-3

### Property to Be Searched

A black Apple iPhone smartphone seized subsequent to the execution of a federal search warrant of 345 Oregon Street, Gridley, CA, on October 20, 2025.  The Device is currently in the custody of the Drug Enforcement Administration at 4328 Watt Avenue, Sacramento, CA.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT A-4

### Property to Be Searched

A black Samsung Galaxy S9 smartphone seized subsequent to the execution of a federal search warrant of 345 Oregon Street, Gridley, CA, on October 20, 2025.  The Device is currently in the custody of the Drug Enforcement Administration at 4328 Watt Avenue, Sacramento, CA.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

**Description of Items to Be Seized**

This search warrant grants authority to seize all of the items set forth below:

1. Any and all names, words, telephone numbers, email addresses, time/date information, messages or other electronic data in the memory of the Electronic Device identified in Attachment A-1, A-2, A-3 and A-4 or on a server and associated with the Electronic Devices identified in Attachment A-1, A-2, A-3, and A-4 including:

   a. Incoming call history;

   b. Outgoing call history;

   c. Missed call history;

   d. Outgoing text messages;

   e. Incoming text messages;

   f. Draft text messages;

   g. Telephone books;

   h. Emails;

   i. Data screens or files identifying the telephone number associated with the mobile telephones searched;

   j. Data screens, files, or writings containing serial numbers or other information to identify the electronic devices searched;

   k. Voicemails;

   l. User-entered messages (such as to-do lists); and

   m. Stored media such as photographs or videos.

2. Any passwords used to access the electronic data described above.

3. Any and all locations, addresses, GPS coordinates, names, time/date information, or other electronic data related to addresses and driving directions related to the devices' locations on or about between June 2024 and October 20, 2025.

4. All information and records related to violations of 21 U.S.C. § 841(a) (drug trafficking) and/or 21 U.S.C. § 846 (conspiracy to traffic drugs), including:

    a.  Data and information related to stored applications and/or websites used to communicate with associates and co-conspirators;

    b.  Data, information, or documents related to the distribution of controlled substances, including the acquisition, possession, and use of equipment, paraphernalia, and materials used in the distribution process, including firearms;

    c.  lists of customers and related identifying information;

    d.  types, amounts, and prices of drugs trafficked as well as dates, places, and amounts of specific transactions;

    e.  any information related to sources of drugs or drug manufacturing materials and equipment (including names, addresses, phone numbers, email addresses, or any other identifying information);

    f.  any information recording schedule or travel;

    g.  all bank records, checks, credit card bills, account information, and other financial records;

    h.  data, information, or documents related to the receipt of proceeds from controlled substances distribution and the transfer, investment, control, and disposition of those proceeds;

    i.  records of Internet Protocol addresses used;

    j.  records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

    k.  any communications related to drug trafficking; and

    l.  stored media such as photographs or video.

5. Evidence of user attribution showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the

Eastern District of California

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| | ) | |
| | ) | Case No. |
| 1735 Oleander Drive, Yuba City, CA | ) | |
| | ) | |
| | ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841, 843, and 846 | distribution of and possession with intent to distribute controlled substances, use a facility of interstate commerce in furtherance of drug trafficking, and conspiracy to do the same |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

- ☑ Continued on the attached sheet.
- ☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Alexander Malik, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed by telephone.

Date:   October 18, 2025

_____
*Judge's signature*

City and state:  Davis, California

Sean C. Riordan, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Alexander Malik, Drug Enforcement Administration ("DEA") Special Agent, being duly sworn, hereby state:

## I.      PURPOSE OF AFFIDAVIT

1.      This affidavit is submitted in support of a Criminal Complaint and arrest warrant for the following people:

  i. Jose GARCIA-AVALOS ("GARCIA-AVALOS") – Counts 1 – 9;

  ii. Octavio HINOJOSA-GUZMAN ("HINOJOSA-GUZMAN") – Counts 1, 5, 6, 8, and 10; and

  iii. Leonel ABREGO – Count 1.

2.      This affidavit charges the individuals listed above with the following violations:

COUNT 1:

Beginning on an unknown date, but no later than on or about July 8, 2024, and continuing through the present date, in the Counties of Sutter, Yuba, and San Joaquin, State and Eastern District of California, and elsewhere, Jose GARCIA-AVALOS, Octavio HINOJOSA-GUZMAN, and Leonel ABREGO, did conspire and agree with persons both known and unknown to your Affiant to knowingly and intentionally distribute and possess with intent to distribute at least 50 grams of methamphetamine, a Schedule II controlled substance, and at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

COUNT 2:

On or about July 31, 2024, in the County of Sutter, State and Eastern District of California, Jose GARCIA-AVALOS, did knowingly and intentionally distribute at least 50 grams of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 3:

On or about August 22, 2024, in the County of Sutter, State and Eastern District of California, Jose GARCIA-AVALOS did knowingly and intentionally distribute at least 50 grams of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 4:

On or about August 22, 2024, in the County of Sutter, State and Eastern District of California, Jose GARCIA-AVALOS did knowingly and intentionally distribute at least 40 grams

1

of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propenamide, commonly referred to as fentanyl, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 5:

On or about September 11, 2024, in the County of Sutter, State and Eastern District of California, Jose GARCIA-AVALOS and Octavio HINOJOSA-GUZMAN, aiding, abetting, and counseling one another, and commanding and procuring the commission of the following, did knowingly and intentionally distribute at least 50 grams of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 6:

On or about September 11, 2024, in the County of Sutter, State and Eastern District of California, Jose GARCIA-AVALOS and Octavio HINOJOSA-GUZMAN, aiding, abetting, and counseling one another, and commanding and procuring the commission of the following, did knowingly and intentionally distribute at least 40 grams of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propenamide, commonly referred to as fentanyl, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 7:

On or about October 10, 2024, in the County of Yuba, State and Eastern District of California, Jose GARCIA-AVALOS did knowingly and intentionally distribute at least 50 grams of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 8:

On or about October 10, 2024, in the County of Yuba, State and Eastern District of California, Jose GARCIA-AVALOS and Octavio HINOJOSA-GUZMAN, aiding, abetting, and counseling one another, and commanding and procuring the commission of the following, did knowingly and intentionally distribute at least 40 grams of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propenamide, commonly referred to as fentanyl, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 9:

On or about June 11, 2025, in the County of Sutter, State and Eastern District of California, Jose GARCIA-AVALOS, did knowingly and intentionally distribute at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 10:

On or about October 4, 2025, in the County of San Joaquin, State and Eastern District of California, Octavio HINOJOSA-GUZMAN did knowingly and intentionally possess with intent to distribute at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

3.      Additionally, this affidavit is submitted in support of a search warrant for the following locations, all described more fully in attachments A-1 through A-6:

      i.      The residence located at 1735 Oleander Drive, Yuba City, CA ("Subject Premises 1"); and

      ii.      The residence located at 345 Oregon Street, Gridley, CA ("Subject Premises 2").

4.      The requested search warrant seeks authorization to seize evidence, fruits, or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 843 and 846 (distribution of and possession with intent to distribute controlled substances, use a facility of interstate commerce in furtherance of drug trafficking, and conspiracy to do the same).  The items and evidence to be seized is more fully in Attachment B.

## II.      AFFIANT'S BACKGROUND AND EXPERTISE

5.      I am a Special Agent (SA) with the DEA and have been so employed since February 2022.  I am an "investigative or law enforcement officer" within the meaning of Section 2510(7) of Title 18 of the United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18 and Title 21 of the United States Code.  I am also a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C).

6.      I completed DEA Basic Agent training at the DEA's Training Academy in Quantico, Virginia, where I received specialized training in narcotics investigations, to include training in the Controlled Substance Act, as set out in Title 21, United States Code, including but not limited to Sections 841 and 846, Controlled Substance Violations and Conspiracy to Commit Controlled Substance Violations, respectively. I received training in search and seizure law, drug identification, drug-trafficking trends and methods, evidence gathering, undercover operations, physical and electronic surveillance, and many other facets of narcotics investigations.  After completing Basic Agent training, I was assigned to the DEA's Sacramento District Office Task Force Group.

7.      The DEA Task Force Group is a collaborative group of officers and agents from the DEA and state and local law enforcement agencies such as the Yuba County Sheriff's Department, Sacramento Sheriff's Department, Folsom Police Department, California Highway Patrol, Sacramento Police Department, El Dorado County District Attorney's Office, and California Department of Corrections and Rehabilitation.  The goal of the DEA Task Force Group is to investigate and disrupt illicit drug trafficking in specified geographical areas by immobilizing the highest levels of targeted violators and trafficking organizations.

8.      During the course of my employment as a DEA Special Agent, I have assisted and participated in criminal investigations targeting individuals involved in the trafficking of controlled substances, including but not limited to, fentanyl, methamphetamine, heroin, cocaine, cocaine base, methylenedioxymethamphetamine (MDMA), lysergic acid diethylamide (LSD), dimethyltryptamine (DMT), psilocybin, and marijuana.  While conducting such investigations, I have participated in a variety of investigative techniques and resources, including physical and electronic surveillance, and various methods of infiltration, including undercover operations and using cooperating sources.  Through these investigations, my training and experience, and conversations I have had with other agents and law enforcement officers, I am familiar with the methods used by drug traffickers to manufacture, transport, store, and distribute controlled substances, and to collect and launder drug proceeds.

9.      In addition to my personal knowledge, this affidavit is based on (1) information I obtained from related investigations; (2) conversations with other law enforcement officers including oral and written investigative and laboratory reports that I received directly or indirectly from other law enforcement officials; (3) review and analysis of information received from various sources, including evidence provided pursuant to subpoenas and search warrants, such as GPS tracking data; (4) physical surveillance conducted by law enforcement officials reported to me either directly or indirectly; (5) a review of public records, telephone toll records, and subscriber information; (6) information provided from confidential sources of information, cooperating defendants, and other sources of information working with law enforcement

4

agencies; (7) a review of driver's license and automobile registration records; (8) records from various law enforcement databases, including but not limited to the National Law Enforcement Telecommunications System ("NLETS") and the National Crime Information Center ("NCIC"); (9) my training and experience as a DEA agent and/or; (10) the training and experience of other law enforcement officials with whom I consulted during this investigation and the preparation of this Affidavit.

10.     Because this affidavit is submitted for the limited purpose of supporting the requested Criminal Complaint, I have not included the details of every aspect of the investigation.  I have set forth only the facts necessary to establish probable cause to charge the defendants listed in this affidavit.  I have not intentionally omitted information that the Court would need to assess probable cause for the arrest of the defendants.

### III.     BASIS OF INFORMATION

11.     Between the period of May 12, 2025 through June 11, 2025, pursuant to Court authorization, agents implemented the interception of wire communications to a from a device used by Jose GARCIA-AVALOS, identified in the affidavit as Target Telephone 1.  Between the period of August 8, 2025, through September 6, 2025, pursuant to Court authorization, agents implemented the interception of wire and electronic communications over Target Telephone 1, used by GARCIA-AVALOS as well as Target Telephone 3 a device used by GUZMAN TOLENTINO.  During these periods, the defendants previously outlined were monitored speaking explicitly about their drug trafficking activities on monitored target telephones or were implicated criminally in conjunction with monitored intercepts on target telephones. Additionally, agents tracked the movements of the cell phones subject to interception orders, cell phones of co-conspirators not subject to interception orders, and tracking devices affixed to vehicles used to facilitate drug trafficking all pursuant to search warrants authorized in the Eastern District of California.  The intercepts, cell phone tracking data, and vehicle tracking data all aided visual and physical surveillance as more fully detailed below.

5

12.     Additionally, Special Agents of DEA and local officers have received information from three cooperating sources "CS," who are described below:

i.      CS-1 is cooperating with the DEA in exchange for monetary compensation for CS-1's work with law enforcement.  DEA established CS-1 as a cooperator in June 2023. CS-1 has no pending criminal cases but does have a prior criminal history, which includes conspiracy to distribute crystal methamphetamine, possession of a controlled substance for sale, possession of a controlled substance, illegal entry into the U.S., and false identification to a peace officer.  CS-1 knows information involving drug trafficking activities because CS-1, prior to cooperating, was a drug trafficker and incarcerated for methamphetamine trafficking. Because CS-1 has a history which includes providing false information to a peace officer, agents utilized various methods to verify and corroborate information provided by CS-1 including, but not limited to, consensually monitoring communications, toll analysis, controlled purchases of drugs, and physical surveillance during controlled purchases.  Because agents corroborated the information provided by CS-1 relied on in this affidavit, I consider the information provided by CS-1 detailed below to be reliable in this case.

ii.     CS-2 is cooperating with the DEA in exchange for monetary compensation for CS-2's work with law enforcement.  DEA established CS-2 as a cooperator in February 2019.  CS-2 has no pending criminal cases but does have a prior criminal history, which includes trespassing, damaging a wireless communication device, possession of a controlled substance for sale, sale of a controlled substance, robbery, battery, probation violation, and assault with a deadly weapon. CS-2 knows information involving drug trafficking activities because CS-2, prior to

6

cooperating, was a drug trafficker who had been arrested for cocaine trafficking. Additionally, agents corroborated information provided by CS-2 through consensually recorded communications and physical surveillance. For these reasons, I consider CS-2's information relied upon herein to be reliable.

iii.   CS-3 is cooperating with the Yuba County Sheriff's Office for consideration of pending state charges. Yuba County established CS-3 as a cooperator in May 2025. CS-3 has prior criminal history, which includes convictions for lewd or lascivious acts with a child under 14, parole violations, petty theft, conspiracy to commit a crime, criminal threats, burglary, and failing to update registration as a sex offender. CS-3 knows information involving drug trafficking activities because CS-3, prior to cooperating, was a drug trafficker who had been arrested by the Yuba County Sheriff's Office. Agents corroborated CS-3's information through consensually recorded calls and surveillance. For these reasons, I consider CS-3 to be reliable in this case

## IV.   PROBABLE CAUSE

13.   Since July 2024, the DEA's Sacramento District Office (SDO) has been investigating a group of drug traffickers responsible for the distribution of large quantities of methamphetamine and other controlled substances in the greater area of Yuba City, California and elsewhere. During this investigation, agents developed probable cause to issue arrest warrants for the individuals named above as well as probable cause to search the locations listed herein. Agents developed this probable cause through multiple controlled purchases of methamphetamine and other controlled substances, information from confidential sources, the interception of wire and electronic communication, and the seizure of controlled substances from transporters.

7

**A.    Probable Cause for Counts 1 and 2 supporting a complaint and arrest warrant for GARCIA-AVALOS: on July 31, 2024, GARCIA-AVALOS sold a confidential source approximately two pounds of methamphetamine.**

14.    On July 8, 2024, CS-1 contacted a suspected methamphetamine trafficker on Facebook to organize the purchase of methamphetamine. CS-1 did so under the direction of Task Force Officer (TFO) Sixto Torres. After successfully establishing communication, the methamphetamine trafficker gave CS-1 a phone number to arrange a purchase of controlled substances.

15.    On July 31, 2024, CS-1 placed several calls to the methamphetamine trafficker as directed by TFO Torres. During these calls, a meeting was arranged at the Taqueria Guadalajara restaurant located at 1380 Franklin Road, Unit A, Yuba City, CA. During these calls, the methamphetamine trafficker informed CS-1 that an associate of the methamphetamine trafficker would meet CS-1 instead, and the associate would be driving a gray Infiniti.

16.    Before and after the controlled purchase, CS-1 and CS-1's vehicle were searched for weapons or contraband. CS-1 was also outfitted with audio and video recording devices, the contents of which were booked into evidence. Visual surveillance was also maintained on CS-1 as CS-1 travelled to and from the predetermined meet location. To date, these procedures have been followed on all controlled purchase and money-drop operations on this case. The searches of every DEA CS and CS vehicle have resulted negative for weapons or contraband on all operations over the course of this investigation.

17.    At approximately 2:53 p.m., surveillance observed CS-1 park in the parking lot of Taqueria Guadalajara. At approximately 3:24, surveillance observed a gray Infiniti SUV (CA 9MXC518), with license plate 9MXC518 enter the parking lot of Taqueria Guadalajara. A Hispanic male adult then exited the gray Infiniti SUV (CA 9MXC518), then enter the front passenger seat of CS-1's vehicle.

18.    Surveillance then observed the Hispanic male adult exit CS-1's vehicle, retrieve a pink plastic bag from the gray Infiniti SUV (CA 9MXC518), then reenter CS-1's vehicle. The Hispanic male adult then exited CS-1's vehicle, returned to the gray Infiniti SUV (CA

9MXC518), then departed the meet location, followed by surveillance. Surveillance units maintained visual of the gray Infiniti SUV (CA 9MXC518) until it terminated travel at 1735 Oleander Drive, Yuba City, CA. Surveillance then observed the Hispanic male adult and a second unidentified Hispanic male adult loiter in front of the residence, then load a box into the gray Infiniti SUV (CA 9MXC518). The two unidentified Hispanic male adults then entered the gray Infiniti SUV (CA 9MXC518) and departed 1735 Oleander Drive, at which point surveillance was terminated.

19.     Following the controlled purchase, CS-1 told agents that once the Hispanic male adult entered CS-1's vehicle, he introduced himself as "Jose." Jose stated that he could supply CS-1 with methamphetamine, "M-30s," and marijuana. Based on my training and experience, I believe that when Jose referred to "M-30s," he was referring to blue tables labeled "M-30" which are counterfeit Oxycodone tablets. Further, based on my training and experience, I understand that these tablets are typically counterfeit, especially when sold in large quantities, and typically contain fentanyl. Jose then provided CS-1 with a phone number to reach him directly. CS-1 told agents that once Jose reentered CS-1's vehicle, CS-1 handed Jose $2,400 of official government funds, which Jose immediately counted. Jose then handed CS-1 the pink plastic bag containing approximately two pounds of methamphetamine.

20.     Utilizing law enforcement databases, Task Force Officer (TFO) Sixto Torres obtained a driver license photo of GARCIA-AVALOS, who is the registered owner of the gray Infiniti SUV (CA 9MXC518). Upon presenting an unmarked photo of GARCIA-AVALOS to CS-1, CS-1 confirmed that the individual in the photo was the same individual who introduced himself as Jose during the controlled purchase.

21.     The suspected methamphetamine contents of the pink plastic bag sold to CS-1 were submitted to the DEA Western Regional Laboratory for analysis and safekeeping. The analysis resulted positive for methamphetamine, weighing 888.3 grams.

**B.     Probable cause for Counts 1, 3, and 4 supporting a complaint and arrest warrant for GARCIA-AVALOS: on August 22, 2024, GARCIA-AVALOS sold a confidential**

9

**source approximately 1 pound of methamphetamine and approximately 2,000 M-30 fentanyl tablets.**

22.     On the days leading up to August 22, 2024, CS-1 arranged the purchase of methamphetamine and blue M-30 tablets from GARCIA-AVALOS by contacting the phone number given to CS-1 during the controlled purchase on July 31, 2025. CS-1 contacted GARCIA-AVALOS under the direction of controlling agents.[1] On August 22, 2024, at 11:59 a.m., GARCIA-AVALOS contacted CS-1 via phone call, stating that he was waiting for the "barcos." GARCIA-AVALOS also confirmed how long CS-1 would be before arriving at the meet location. "Barcos" is the Spanish word for boats. Based on my training and experience, I know that in California, fentanyl traffickers refer to 1,000 tablets of a controlled substance as a "boat." Therefore, in this case I believe that GARCIA-AVALOS was informing CS-1 that he was waiting for the blue M-30 tablets before the controlled purchase.

23.     On August 22, 2024, agents observed GARCIA-AVALOS arrive to the same meet location as the controlled purchase on July 31, 2024 operating the same gray Infiniti SUV (CA 9MXC518) he was previously observed operating. During the controlled purchase, GARCIA-AVALOS provided CS-1 with approximately 1 pound of methamphetamine and 2,000 M30 tablets in exchange for DEA official advanced funds. The suspected methamphetamine and fentanyl were submitted to the DEA Western Regional Laboratory for analysis and safekeeping. The analysis resulted positive for 437 grams of methamphetamine (a purity analysis showed that this substance was more than 50 grams of actual methamphetamine) and 210 grams of fentanyl.

**C.     Probable cause for Counts 1, 5, and 6 supporting a complaint and arrest warrants for GARCIA-AVALOS and HINOJOSA-GUZMAN: on September 11, 2024, GARCIA-AVALOS and HINOJOSA-GUZMAN sold a confidential source**

---

[1] Unless otherwise specified, all communications between DEA confidential sources and targets of investigation in which a drug deal is organized were conducted utilizing an account and phone number set up through a system available to DEA. The system and account provide agents with the ability to overhear calls made by each CS in real time, to document and catalog the telephone numbers for incoming or outgoing wire and electronic communications with each CS' telephone number, and to record all phone calls and text messages to or from each CS' telephone number. For each communication detailed in this affidavit, the respective CS utilized the account assigned to them, and law enforcement confirmed the telephone numbers with which each CS communicated. Additionally, agents listened to all calls in real time as well as recorded all calls and text messages.

**approximately 1 pound of methamphetamine and approximately 2,000 M-30 fentanyl tablets.**

24.     On the days leading up to September 11, 2024, CS-1 arranged the purchase of methamphetamine and M-30 tablets from GARCIA-AVALOS under the direction of controlling agents.  During the calls, GARCIA-AVALOS and CS-1 agreed to meet at a location for a drug deal involving methamphetamine and M-30 tablets.

25.     On September 11, 2024, agents observed GARCIA-AVALOS arrive at the meet location as the passenger of a black Lincoln sedan (CA 9HKZ325) registered to a Lucio Castillo-Guzman at 200 Park Avenue, apt 300, Yuba City, CA. GARCIA-AVALOS then sold CS-1 approximately 1 pound of methamphetamine and 2,000 M30 tablets, returned to the front passenger seat of the black Lincoln sedan (CA 9HKZ325), then departed the meet location. Surveillance then observed the black Lincoln sedan (CA 9HKZ325) arrive at 318 North Barrett Road, Yuba City, CA. Upon arrival, GARCIA-AVALOS entered his gray Infiniti SUV (CA 9MXC518), then departed 318 North Barrett Road. An unknown Hispanic male adult then exited the black Lincoln sedan (CA 9HKZ325), then entered the rear passenger seat of a black Ford Expedition registered to Octavio HINOJOSA-GUZMAN at 200 Park Avenue, Apartment 300, Yuba City, CA. TFO Aaron Kacalek clearly observed the driver of the black Ford Expedition, and later confirmed the driver to be HINOJOSA-GUZMAN by comparing the driver's license photo of the registered owner of the vehicle to what he observed in person.

26.     The suspected methamphetamine and fentanyl were submitted to the DEA Western Regional Laboratory for analysis and safekeeping. The analysis resulted positive for 441 grams of methamphetamine and 215 grams of fentanyl.

**D.      Probable cause for Counts 1 and 7 supporting a complaint and arrest warrants for GARCIA-AVALOS: on October 31, 2024, GARCIA-AVALOS sold a confidential source approximately 1 pound of methamphetamine and 3,000 M-30 fentanyl tablets.**

27.    On the days leading up to October 31, 2024, CS-1 arranged the purchase of methamphetamine and blue M-30 tablets from GARCIA-AVALOS under the direction of controlling agents.

28.    On October 31, 2024, prior to the controlled purchase operation, agents established surveillance on GARCIA-AVALOS' known gray Infiniti SUV (CA 9MXC518). At approximately 1:28 p.m., surveillance observed the gray Infiniti SUV (CA 9MXC518) park in the vicinity of 191 Garden Highway, where HINOJOSA-GUZMAN was waiting. Upon arrival of the gray Infiniti SUV (CA 9MXC518), HINOJOSA-GUZMAN entered the front passenger seat. Surveillance then observed the gray Infiniti SUV (CA 9MXC518) depart the vicinity of 191 Garden Highway, then travel to the meet location. Once at the meet location, GARCIA-AVALOS entered CS-1's vehicle and sold CS-1 approximately 1 pound of methamphetamine and 3,000 M30 tablets in exchange for DEA official advanced funds.

29.    The suspected methamphetamine and fentanyl were submitted to the DEA Western Regional Laboratory for analysis and safekeeping. The analysis resulted positive for 447 grams of methamphetamine (a purity analysis showed that this substance was more than 50 grams of actual methamphetamine) and 318 grams of fentanyl.

E.    **The Court authorized the interception of wire communications over Target Telephone 1 used by GARCIA-AVALOS to facilitate drug trafficking activities**.

30.    On May 9, 2025, the Court authorized an application intercept wire communications over one of the devices used by GARCIA-AVALOS, Target Telephone 1, for thirty days.  Through the intercepts, agents overheard calls where GARCIA-AVALOS used Target Telephone 1 to arrange controlled substance transactions, to collect money for controlled substances, and to direct associates to use electronic communications, *i.e.* text messages, and to arrange meetings for controlled substance activities.  The initial interceptions over Target Telephone 1 began on May 13, 2025 and continued through June 11, 2025.

F.    **Probable cause for Count 1 supporting a complaint and arrest warrants for GARCIA-AVALOS and HINOJOSA-GUZMAN: GARCIA-AVALOS, LISTER,**

12

**HINOJOSA-GUZMAN, and others used Target Telephone 1 to distribute controlled substances within the Eastern District of California.**

31.     On May 27, 2025, GARCIA-AVALOS used Target Telephone 1 to discuss what agents believed was the sale of one pound of methamphetamine to another drug trafficker who agents saw meet with GARCIA-AVALOS in Chico, CA.  During the discussions, agents overheard GARCIA-AVALOS tell the other drug trafficker that GARCIA-AVALOS would make a call.  Agents interpreted this to mean that GARCIA-AVALOS was calling a source of supply to acquire methamphetamine for the transaction.  That same evening at 6:51 p.m., GARCIA-AVALOS called LISTER using Target Telephone 1.  Agents were familiar with LISTER's voice, his telephone number, and his appearance because he had previously worked as an informant with DEA in the separate investigation which resulted in the indictment of GUZMAN TOLENTINO.[2]  During the call, GARCIA-AVALOS informed LISTER that a customer in Chico, CA needs "one." GARCIA-AVALOS then informed LISTER that he currently had $800, and would pay LISTER "the rest" upon returning from Chico, CA. On a follow-up call between LISTER and GARCIA-AVALOS at 6:55 p.m., LISTER instructed GARCIA-AVALOS to give him 20 minutes. LISTER then stated that he would see GARCIA-AVALOS at LISTER's "house," to which GARCIA-AVALOS confirmed. Five minutes later, at 6:56 p.m., GARCIA-AVALOS spoke with his customer on Target Telephone 1. During the call, GARCIA-AVALOS informed the customer that he would be leaving Yuba City, CA, in 20 minutes.

32.     At approximately 7:05 p.m., Sacramento Sheriff's Department (SSD) detectives of the Special Investigations Bureau (SIB) observed GARCIA-AVALOS depart his residence of 1735 Oleander Drive, Yuba City, CA, in his gray Infiniti SUV (CA 9MXC518). At 7:16 p.m., GARCIA-AVALOS called LISTER using Target Telephone 1 and informed LISTER that he was at LISTER's residence. LISTER informed GARCIA-AVALOS that he would be home in "less

---

[2] During a separate investigation, LISTER acted as a cooperating source with law enforcement; however, LISTER conducted controlled substance trafficking activities outside the scope of his agreement with law enforcement. Later, he was intercepted in this investigation, and DEA, as well as state and local law enforcement, terminated his designation as a cooperating source.

13

than a minute." At 7:17 p.m., surveillance observed GARCIA-AVALOS park in the vicinity of 1650 Mosswood Drive, Yuba City, CA (LISTER's residence). Surveillance then observed a white Jeep SUV (CA 5JKB410) registered to Lloyd LISTER at 1650 Mosswood Drive, Yuba City, CA, arrive and park in the driveway of Mosswood Drive. Detective Ghaffarpour observed LISTER exit the white Jeep SUV (CA 5JKB410). Detective Ghaffarpour was able to confirm that the driver was LISTER by comparing a historical arrest photo of LISTER to what he observed in person. At 7:23 p.m., surveillance observed GARCIA-AVALOS depart the vicinity of 1650 Mosswood Drive.

33.     At approximately 8:22 p.m., surveillance observed GARCIA-AVALOS park on Hemlock Street in Chico, CA. At 8:23 p.m., GARCIA-AVALOS called his customer using Target Telephone 1. During the call, the customer asked if GARCIA-AVALOS was "there," to which GARCIA-AVALOS confirmed that he was. Then, the customer informed GARCIA-AVALOS that she was "coming out." Surveillance was unable to maintain a consistent visual of GARCIA-AVALOS without alerting him of the investigation. However, surveillance did observe a white female adult exit the front passenger seat of GARCIA-AVALOS' gray Infiniti SUV (CA 9MXC518) shortly after the call at 8:23 p.m. Surveillance then observed the white female adult walk from GARCIA-AVALOS' vehicle to a small apartment building located on the south side of Hemlock Street, Chico, CA.

34.     Approximately three days later, GARCIA-AVALOS communicated with HINOJOSA-GUZMAN concerning controlled substances and drug proceeds.  Specifically, on May 30, 2025, at 2:07 p.m., HINOJOSA-GUZMAN[3] called GARCIA-AVALOS on Target

---

[3] Throughout the investigation HINOJOSA-GUZMAN used multiple telephone numbers, and he changed telephone numbers frequently.  It is a common tactic used by drug traffickers to utilize multiple telephone numbers and change telephone numbers frequently to avoid detection by law enforcement.  Agents used records from a money remitter database to identify HINOJOSA-GUZMAN's telephone number initially; thereafter, agents found HINOJOSA-GUZMAN during physical surveillance, placed a ruse call to the telephone number associated with HINOJOSA-GUZMAN and watched HINOJOSA-GUZMAN answer the telephone.  For instance, on April 1, 2025, Yuba County Sheriff's Office Detective Alex Martinez placed a ruse call to a telephone number associated with HINOJOSA-GUZMAN while observing HINOJOSA-GUZMAN walk in the vicinity of his residence at 398 Alemar Way, Yuba City, CA. While placing the call, Detective Martinez observed HINOJOSA-GUZMAN retrieve a cellular phone from his pocket, then hold it up to his ear. Detective Martinez then conversed with HINOJOSA-

14

Telephone 1. During the call, HINOJOSA-GUZMAN requested "one" from GARCIA-AVALOS. GARCIA-AVALOS questioned whether it was a "big one," to which HINOJOSA-GUZMAN confirmed. GARCIA-AVALOS stated that he would need to pick "it" up. HINOJOSA-GUZMAN stated that GARCIA-AVALOS could go with HINOJOSA-GUZMAN's brother, and that HINOJOSA-GUZMAN would leave the money with his brother.

35.    At 2:10 p.m. GARCIA-AVALOS called LISTER using Target Telephone 1. During the call, GARCIA-AVALOS asked LISTER if he had "one," to which LISTER confirmed that he did. GARCIA-AVALOS then stated that he would go "there" with "the money" and questioned if "it" was the same as "the yellow one," and LISTER replied that "it" was "white…clear stuff."

36.    At approximately 2:25 p.m., the Yuba County Sherriff's Office (YCSO) Problem Oriented Policing (POP) team located GARCIA-AVALOS in the vicinity of the Ross clothing store located at 1299 Colusa Avenue, Yuba City, CA, by utilizing GPS data from the court authorized GPS location device affixed to GARCIA-AVALOS' gray Infiniti SUV (CA 9MXC518). After locating GARCIA-AVALOS, surveillance observed an unidentified Hispanic male adult enter GARCIA-AVALOS' gran Infiniti SUV. Surveillance then observed the gray Infiniti SUV (CA 9MXC518) travel to LISTER's residence at 1650 Mosswood Drive, Yuba City, CA, and park in the vicinity of the residence at 2:34 p.m. Surveillance then observed GARCIA-AVALOS depart the vicinity of 1650 Mosswood Drive.

37.    At 2:35 p.m., LISTER called GARCIA-AVALOS on Target Telephone 1. During the call, LISTER asked GARCIA-AVALOS if he had just "pulled up," to which GARCIA-AVALOS confirmed. GARCIA-AVALOS then informed LISTER that his "friend" had forgotten the money, and that he would be back in "two or three" minutes.

38.    Surveillance observed GARCIA-AVALOS travel from Mosswood Drive to the Wells Fargo Bank located at 900 Colusa Avenue, Yuba City, CA, where he parked in the vicinity

GUZMAN, ultimately leading HINOJOSA-GUZMAN to believe that Detective Martinez had placed a call to the wrong number.

of a white Honda SUV (CA 9UHF498) registered to Sonia Soto-Fernandez at 398 Alemar Way, Apartment 4, Yuba City, CA. Sergeant Machuca then observed HINOJOSA-GUZMAN exit the white Honda SUV (CA 9UHF498), walk to an ATM machine, interact with the machine, walk to GARCIA-AVALOS' gray Infiniti SUV (CA 9MXC518), then hand the unknown front passenger of the gray Infiniti SUV (CA 9MXC518) money. Surveillance then observed GARCIA-AVALOS travel back to the vicinity of 1650 Mosswood Drive.

39.     At Mosswood Drive, surveillance observed LISTER exit 1650 Mosswood Drive, enter the gray Infiniti SUV (CA 9MXC518), then depart the vicinity of the residence. Surveillance then travelled with the gray Infiniti SUV (CA 9MXC518) until it turned onto Wilkie Way in Yuba City, CA, where surveillance could not follow the vehicle without alerting GARCIA-AVALOS of the investigation. Moments later, surveillance observed the gray Infiniti SUV (CA 9MXC518) exit Wilkie Way and travel to Lincrest Elementary School in Yuba City, CA, where Detective Martinez observed GARCIA-AVALOS to be the sole occupant of the vehicle.

40.     On June 2, 2025, at 3:58 p.m., GARCIA-AVALOS called LISTER using Target Telephone 1. During the call, GARCIA-AVALOS stated that his cousin needed "one big one." Later in the call, GARCIA-AVALOS stated that "the guy" was waiting for his answer. LISTER then informed GARCIA-AVALOS that he was going to make a phone call, then call GARCIA-AVALOS back. At 4:01 p.m., LISTER called GARCIA-AVALOS on Target Telephone 1. During the call, LISTER instructed GARCIA-AVALOS to give him 15 minutes before "heading over."

41.     At approximately 4:47 p.m., while conducting surveillance at LISTER's residence at 1650 Mosswood Drive, the YCSO POP team observed GARCIA-AVALOS arrive in the vicinity of the residence as the operator of his gray Infiniti SUV (CA 9MXC518). Surveillance then observed GARCIA-AVALOS exit the vehicle, then enter 1650 Mosswood Drive. Approximately 6 minutes later, surveillance observed GARCIA-AVALOS exit the residence, enter the gray Infiniti SUV (CA 9MXC518), then depart the vicinity of 1650 Mosswood Drive.

16

**G.    Probable cause for Counts 1 and 9 supporting a complaint and arrest warrant for GARCIA-AVALOS: on June 11, 2025, GARCIA-AVALOS delivered five pounds of methamphetamine to CS-1, after coordinating with LISTER and MONTIEL-ROMERO.**

42.    On the days leading up to June 11, 2025, CS-1 arranged the purchase of 5 pounds of methamphetamine from GARCIA-AVALOS under the direction of controlling agents.  On June 11, 2025, at 12:17 p.m., GARCIA-AVALOS called an associate named Lloyd LISTER ("LISTER") using Target Telephone 1. During the call, GARCIA-AVALOS stated that he needed "five" for "that guy." LISTER stated that once GARCIA-AVALOS went to LISTER's residence with the money, LISTER would go "pick it."

43.    At approximately 12:53 p.m., YCSO POP team Detective Jacob Balentine observed GARCIA-AVALOS' gray Infiniti SUV (CA 9MXC518) arrive in the vicinity of LISTER's residence at 1650 Mosswood Drive, Yuba City, CA. GARCIA-AVALOS then entered the residence, shortly after arriving. At approximately 1:17 p.m., SA Andrew Peters observed LISTER exit 1650 Mosswood Drive, enter his white Jeep SUV (CA 5JKB410), depart the vicinity of the residence, and travel to the vicinity of the Quick Stop located at 1757 Live Oak Boulevard, Yuba City, CA. After arriving at the Quick Stop, officers observed an unknown Hispanic male adult enter LISTER's white Jeep SUV (CA 5JKB410), carrying a grocery bag. The unknown Hispanic male adult then exited the white Jeep SUV (CA 5JKB410) empty-handed, then returned to a maroon Ford sedan (CA 6LFF862), registered to Elmer MONTIEL-ROMERO at 676 Sutter Street, Yuba City, CA. TFO Torres later confirmed the unknown Hispanic male adult to be MONTIEL-ROMERO by comparing a driver's license photo of MONTIEL-ROMERO to what he observed in person on the day of the controlled purchase.

44.    Following the interaction with MONTIEL-ROMERO, surveillance observed the white Jeep SUV (CA 5JKB410) travel back to Mosswood, stopping briefly at the 7-Eleven located at 929 Market Street, Yuba City, CA, on the way. At approximately 1:57 p.m., Detective Ballentine observed the white Jeep SUV (CA 5JKB410) arrive back at 1650 Mosswood Drive. LISTER then exited the white Jeep SUV (CA 5JKB410), carrying the grocery bag, then entered

17

the residence. At approximately 2:00 p.m., Detective Ballentine observed GARCIA-AVALOS exit 1650 Mosswood Drive carrying the grocery bag. Shortly thereafter, LISTER exited 1650 Mosswood Drive. Surveillance observed GARCIA-AVALOS enter the gray Infiniti SUV (CA 9MXC518) while LISTER entered the white Jeep SUV (CA 5JKB410). GARCIA-AVALOS and LISTER then exited the vicinity of 1650 Mosswood Drive in tandem, in their respective vehicles.

45.     At approximately 2:08 p.m., surveillance observed the gray Infiniti SUV (CA 9MXC518) and the white Jeep SUV (CA 5JKB410) enter the vicinity of the predetermined meet location, the Taqueria Guadalajara located at 1380 Franklin Boulevard, Yuba City, CA. At approximately 2:09 p.m., surveillance observed CS-1 park CS-1's vehicle in the vicinity of the gray Infiniti SUV (CA 9MXC518). GARCIA-AVALOS then exchanged 5 pounds of methamphetamine in a gray grocery bag for DEA official advanced funds while inside CS-1's vehicle. GARCIA-AVALOS then returned to the gray Infiniti SUV (CA 9MXC518). LISTER then exited the white Jeep SUV (CA 5JKB410) and entered the gray Infiniti SUV (CA 9MXC518). LISTER then exited the gray Infiniti SUV (CA 9MXC518), returned to the white Jeep SUV (CA 5JKB410), then departed the meet location. GARCIA-AVALOS then departed the meet location separately, in the gray Infiniti SUV (CA 9MXC518).

46.     Based on my training and experience, I believe that LISTER was given some or all of the five pounds of methamphetamine in advance by MONTIEL-ROMERO, then gave some or all of the methamphetamine in advance to GARCIA-AVALOS. Therefore, LISTER accompanied GARCIA-AVALOS to the controlled purchase to observe the transaction, then immediately collect the money for the methamphetamine, to immediately pay MONTIEL-ROMERO for the methamphetamine given to LISTER in advance.

47.     Agents submitted suspected methamphetamine found inside the gray grocery bag sold to CS-1 to the DEA Western Regional Laboratory for analysis and safekeeping. The analysis resulted positive for methamphetamine, weighing 2204 grams and more than 500 grams of a mixture or substance containing a detectable amount of methamphetamine.

**H.    Probable cause for Count 1 supporting a complaint and arrest warrants for GARCIA-AVALOS and ABREGO as well as a search warrant for Subject Premises 1 and 2: on September 2, 2025, ABREGO directed a vehicle transporting 20 pounds of methamphetamine to deliver 10 pounds of methamphetamine to GARCIA-AVALOS at Subject Premises 1, and after the delivery, the vehicle went to Subject Premises 2 with the remaining 10 pounds of methamphetamine.**

48.    On August 31, 2025, at 5:55 p.m., ABREGO sent a text message to Target Telephone stating "Soy Leo [This is Leo]."  Results for a query submitted to a law enforcement database indicate that the phone number from which the text message stating "This is Leo" was sent is associated to a Leonel Abrego at 3475 Richmond Court, Live Oak, CA. During an address check of 3475 Ricmond Court on September 2, 2025, YCSO POP Detective Alex Martinez observed a white Nissan SUV (CA 9GLT312) registered to Esmeralda Perez at 3475 Richmond Court, Live Oak, CA in the driveway of the residence.

49.    On September 2, 2025, ABREGO and GARCIA-AVALOS had multiple instances of wire communication over Target Telephone 1 to coordinate what agents believe was ABREGO delivering a load of methamphetamine to GARCIA-AVALOS. At 3:42 p.m., GARCIA-AVALOS called ABREGO using Target Telephone 1. During the call, GARCIA-AVALOS asked ABREGO if he had "heard anything," to which ABREGO replied "they are on their way." GARCIA-AVALOS asked ABREGO if he would "pass through" Yuba City, CA, to which ABREGO stated it would be ABREGO's brother. GARCIA-AVALOS questioned whether he could send ABREGO's brother his home address, to which ABREGO replied that his brother was "completely trustworthy." Later in the conversation, GARCIA-AVALOS informed ABREGO that he would send ABREGO "the address." Following the call, GARCIA-AVALOS sent ABREGO "1735 oleander Dr Yuba city ca 95991" (GARCIA-AVALOS' residence) using Target Telephone 1.

50.    At 9:14 p.m., ABREGO called GARCIA-AVALOS on Target Telephone 1. During the call, ABREGO questioned whether it was too late, because the "pizzas" would arrive in "twenty to twenty-five" minutes. GARCIA-AVALOS informed ABREGO that he could open the garage. ABREGO stated that "his GPS" was giving a 25-minute estimated time of arrival to

19

GARCIA-AVALOS' house. GARCIA-AVALOS questioned how many "they" were, to which ABREGO replied "twenty." Agents believe that in this statement ABREGO informed GARCIA-AVALOS that the transporter had 20 pounds of methamphetamine in the car available for delivery. ABREGO stated that GARCIA-AVALOS could "take a look" at "them" and advise ABREGO how many he wanted. GARCIA-AVALOS informed ABREGO that he could "get 10 out right away." GARCIA-AVALOS inquired about the price, to which ABREGO stated that "the boss" wanted "eleven, but it's fine." GARCIA-AVALOS stated that he would pay "eleven" for the "one" he "had to break."  Because $1,100 is a common price for a pound of methamphetamine, I believe that ABREGO quoted GARCIA-AVALOS a price to purchase 10 pounds of methamphetamine at $1,100 per pound.

51.     At approximately 9:34 p.m., detectives with the YCSO POP team observed a red Honda Accord registered to Jose Abrego Calderon at 345 Oregon Street, Gridley, CA arrive at 1735 Oleander Drive, then enter the garage of the residence.  At 9:37 p.m., GARCIA-AVALOS called ABREGO using Target Telephone 1. During the call, GARCIA-AVALOS stated that "he" had arrived already. GARCIA-AVALOS then stated, "they are good." Later in the conversation, ABREGO asked if GARCIA-AVALOS wanted "all of them," to which GARCIA-AVALOS replied that "ten were fine to start." ABREGO stated that GARCIA-AVALOS was close by, and advised GARCIA-AVALOS to "tell him." GARCIA-AVALOS asked for "ten boxes of avocados," then stated he would "pay those back, then grab the next ten."

52.     At approximately 9:42 p.m., surveillance observed the red Honda Accord depart the residence. Surveillance followed the red Honda Accord until it terminated travel at the registered owner address at 345 Oregon Street, Gridley, CA (Subject Premises 2).  Agents believe that the red Honda Accord transported 20 pounds of methamphetamine to Subject Premises 1 where it dropped off 10 pounds of methamphetamine to GARCIA-AVALOS.  Then, the red Honda Accord left Subject Premises 1 with the remaining 10 pounds of methamphetamine, and it transported the methamphetamine to Subject Premises 2.

53.     On September 4, 2025, at 12:18 p.m., GARCIA-AVALOS called ABREGO using Target Telephone 1. During the call, GARCIA-AVALOS stated that he "took care of seven trees yesterday," then stated, "so maybe by tomorrow it will be done." ABREGO instructed GARCIA-AVALOS to advise ABREGO "tonight."

54.     On September 5, 2025, starting at 7:58 a.m., the following text conversation between GARCIA-AVALOS and ABREGO occurred:

| Time | Sender | Text |
|---|---|---|
| 7:58 a.m. | GARCIA-AVALOS | You can send me the chainsaws whenever you want |
| 7:59 a.m. | ABREGO | To your house? |
| 8:00 a.m. | GARCIA-AVALOS | Yes |
| 8:00 a.m. | GARCIA-AVALOS | Please, cousin |
| 8:01 a.m. | ABREGO | Do you want the whole line or just the half? |
| 8:02 a.m. | GARCIA-AVALOS | Whatever you prefer |
| 8:03 a.m. | ABREGO | We're full over here |
| 9:55 a.m. | ABREGO | You caught me having breakfast… I'll stop by later!!! Or at what time? |
| 9:55 a.m. | GARCIA-AVALOS | Around what time cousin |
| 9:55 a.m. | GARCIA-AVALOS | Because I have to go to Chico |
| 9:56 a.m. | ABREGO | Go if you want and then text me once you're coming back |
| 9:57 a.m. | GARCIA-AVALOS | Okay thank you |
| 9:57 a.m. | ABREGO | Thank you |
| 12:27 p.m. | GARCIA-AVALOS | We're here at the house |
| 12:30 p.m. | ABREGO | I'm around here. I will stop by in 20-25 for the receipt and later on the butler will give you the trees |
| 12:30 p.m. | GARCIA-AVALOS | Ok |
| 12:43 p.m. | GARCIA-AVALOS | Let me know when you're 5 minutes away |
| 12:44 p.m. | GARCIA-AVALOS | Please because I am busy but I'm around the same block |
| 12:45 p.m. | ABREGO | I'll arrive in 10, I'm in a white Nissan with the family. |

55.     At 12:58 p.m., detectives with the YCSO POP team observed the same white Nissan SUV (CA 9GLT312) previously observed at the residence associated to Leonel ABREGO arrive in the vicinity of GARCIA-AVALOS' known address of 1735 Oleander Drive, Yuba City, CA. Detective Hindo was able to observe a Hispanic male adult exit the white Nissan SUV (CA 9GLT312), and visually confirm that it was ABREGO by comparing what he observed in person to Facebook photos from a profile named "Leonel Abrego" provided by TFO

21

Torres.  ABREGO then walked towards the front of the residence out of view, then moments later back into view, walking towards the white Nissan SUV (CA 9GLT312). ABREGO then entered the white Nissan SUV (CA 9GLT312) then departed the vicinity of the residence.

56.   Later that evening, starting at 7:24 p.m., the following text conversation between GARCIA-AVALOS and ABREGO occurred:

| Time | Sender | Text |
|------|--------|------|
| 7:24 p.m. | GARCIA-AVALOS | Will the butler be able to come by today |
| 7:37 p.m. | ABREGO | He will arrive in 30-35 minutes |
| 7:38 p.m. | GARCIA-AVALOS | Okay thank you I'll see him here |

57.   At 8:14 p.m., detectives with the YCSO POP team observed the same red Honda Accord observed arriving at GARCIA-AVALOS' residence on September 2, 2025, arriving at GARCIA-AVALOS' residence again. Surveillance observed the red Honda Accord back into the garage. GARCIA-AVALOS then shut the garage door. At 8:21 p.m., surveillance observed the garage door open, the red Honda Accord then exited the garage and departed from the vicinity of 1735 Oleander Drive.

**I.   Probable cause for 10 supporting a complaint and arrest warrant for HINOJOSA-GUZMAN: on October 4, 2025, HINOJOSA-GUZMAN possessed with intent to distribute 45 pounds of methamphetamine seized by law enforcement.**

58.   On October 4, 2025, at approximately 4:25 p.m., I observed court-authorized GPS data associated with the telephone used by HINOJOSA-GUZMAN travelling southbound on the Interstate 5 away from Yuba City, CA. The GPS location data showed HINOJOSA-GUZMAN's phone travelling southbound until exiting the Interstate 5 and then travelling eastbound until it arrived in the vicinity of Delano, CA. Once in Delano, the GPS ping location data showed that the phone stayed in Delano until approximately 7:45 p.m., when it began travelling westbound back towards the Interstate 5.

59.   At approximately 10:15 p.m., while observing traffic from an on-ramp to Interstate 5, I observed HINOJOSA-GUZMAN's white Honda SUV (CA 9UHF498) travelling northbound on the interstate.  Based upon my training, experience, and observations during this

case, this route of travel indicated that HINOJOSA-GUZMAN may be transporting methamphetamine from Southern California to Northern California. I immediately initiated travel, caught up to the white Honda SUV, and observed the license plate to be 9UHF498. I, with the assistance of other members of DEA Sacramento Task Force conducted surveillance of the white Honda SUV (CA 9UHF498) as it travelled.

60.    At approximately 11:10 p.m., CHP Officer Walker conducted a stop of the white Honda SUV (CA 9UHF498) after observing it violate a California vehicle code. The stop was conducted in the vicinity of the Turner Road exit on the California Highway 99 northbound. CHP Officer Rey Garcia responded to the scene of the stop to assist Officer Walker. Officer Walker encountered HINOJOSA-GUZMAN as the operator and sole occupant of the white Honda SUV (CA 9UHF498). HINOJOSA-GUZMAN provided his California driver's license to Officer Garcia who verified the operator of the vehicle was HINOJOSA-GUZMAN by comparing the driver's license name and photo to what he observed in person.

61.    While Officer Garcia was interacting with HINOJOSA-GUZMAN, Officer Walker observed methamphetamine in plain view, between the second and third row seats of the vehicle. A search of the vehicle was conducted, yielding 41 clear plastic bags, each containing methamphetamine, with a total weight of approximately 45 pounds. HINOJOSA-GUZMAN was booked in the San Joaquin County Jail for possession of a controlled substance for sale, transportation of a controlled substance for sale, and possession of methamphetamine exceeding 10 kilograms.

## V.    AUTHORIZATION REQUEST

62.    Based on the foregoing statement of probable cause, I request the court issue arrest warrants for the following individuals:

    i.      Jose GARCIA-AVALOS;

    ii.     Octavio HINOJOSA-GUZMAN; and

    iii.    Leonel ABREGO.

23

63.    Additionally based upon the above statement of probable cause, I request that the Court issue a search warrant authorizing agents to search the following locations, all described more fully in attachment A:

    i.    The residence located at 1735 Oleander Drive, Yuba City, CA ("Subject Premises 1"); and

    ii.    The residence located at 345 Oregon Street, Gridley, CA ("Subject Premises 2").

64.    The authorization requested, if granted, would allow agents to seize evidence, fruits, or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 843 and 846 (distribution of and possession with intent to distribute controlled substances, use a facility of interstate commerce in furtherance of drug trafficking, and conspiracy to do the same). The items and evidence to be seized is more fully in Attachment B.

## VI.    REQUEST TO SEAL

65.    This Affidavit contains information regarding persons to be arrested as well as potential subject and targets of this investigation. This investigation is continuing, and the potential targets as well as the persons to be arrested are unaware of the investigation or the fact that they may be arrested. If unsealed, the information contained herein may jeopardize officers conducting the search warrants or attempting to execute the arrest warrants. In light of the ongoing nature of the investigation, and the likelihood that notice to above-identified individuals may cause them to destroy evidence, flee from prosecution, and notify confederates, I request that this affidavit and the resulting arrest warrants be sealed on the Court's docketing system, with the exception of copies utilized by law enforcement officers participating in the investigation. The government also requests that it be allowed to provide this document to defense counsel to comply with its discovery obligations in a criminal proceeding without further order of Court.

I swear, under the penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information, and belief.

_____
Alexander Malik
Special Agent
Drug Enforcement Administration

Sworn to me over the telephone and SIGNED by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this __18th__ day of October 2025.

_____
Hon. Sean C. Riordan
United States Magistrate Judge

Approved as to form:

*/s/ Robert Abendroth*
Robert Abendroth
Assistant United States Attorney

**Attachment A**

**Locations to be Searched**

1.  The residence located at 1735 Oleander Drive, Yuba City, CA 95991:



1735 Oleander Drive, Yuba City, CA 95991 ("Subject Premises 1"). Subject Premises 1, as depicted in the photograph above, is a single-story, single-family residence with a brown shingle roof.  The residence has a white exterior, with white trim, and a white garage door.  The numbers "1735" appear in black numbering at head level on the left-hand side of the garage door.  The front door of the residence is facing Oleander Drive, clearly visible from the street, and is covered by a glass security door.  Access to the residence is unobstructed from Oleander Drive. Subject Premises 1 includes all buildings, out-buildings, attached and detached garages, and real property located within the curtilage of 1735 Oleander Drive, Yuba City, CA 95991. This warrant also authorizes the search of vehicles parked within the curtilage of Subject Premises 1.

1

2.  The residence located at 345 Oregon Street, Gridley, CA 95948:



The residence located at 345 Oregon Street, Gridley, CA 95948 ("Subject Premises 2").
Subject Premises 2, as depicted in the photograph above, is a single-story, single-family
residence with a gray asphalt composite roof. The residence is light brown in color with white
trim.  The numbers "345" appear in white numbering at head level to the left of the front door.
The front door of the residence faces Oregon Street, is clearly visible and unobstructed from the
street, and is protected by a metal security door. There is also a second door granting immediate
access to the dwelling on the north side of the residence, also visible and unobstructed from
Oregon Street. The second door is also protected by a metal security door. Subject Premises 2
includes all buildings, out-buildings, attached and detached garages, and real property located
within the curtilage of 345 Oregon Street, Gridley, CA 95948.  This warrant also authorizes the
search of vehicles parked within the curtilage of Subject Premises 2.

**Attachment B**

**Items to be Seized**

The following items to be seized in whatever form (including electronic) found at the Property to be Searched described in Attachment A, including any digital devices, for evidence, fruits or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 843 and 846 (distribution of and possession with intent to distribute controlled substances, use a facility of interstate commerce in furtherance of drug trafficking, and conspiracy to do the same). These records and materials are more specifically described below:

1. Controlled substances, including methamphetamine, fentanyl, or items frequently used to distribute methamphetamine and fentanyl or items containing residue from the distribution of methamphetamine and fentanyl; drug-trafficking paraphernalia, including scales, measuring devices, and weighing devices; narcotics diluting or cutting agents; narcotics packaging materials, including plastic, tin foil, cellophane, jars, plastic bags, and containers; and plastic surgical gloves;

2. United States and foreign currency linked to drug trafficking and/or the proceeds of drug trafficking, including the pre-recorded U.S. currency used to purchase methamphetamine, fentanyl, and drugs during this investigation;

3. Narcotics or money ledgers, narcotics distribution or customer lists, narcotics supplier lists, correspondence, notations, logs, receipts, journals, books, pay and owe sheets, records and other documents noting the price, quantity, date and/or times when narcotics were purchased, possessed, transferred, distributed, sold or concealed;

4. Telephone paging devices, beepers, mobile and cellular phones, car phones, answering machines and tapes, and other communication devices which could be used in furtherance of possession with intent to distribute and/or distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1), and unlawful use of a communication facility, in violation of 21 U.S.C. § 843.

3

5. Bank account records, wire transfer records, bank statements, safety deposit keys and records, money wrappers, money containers, income tax returns, evidence of financial transfer, or movement of money generated from the sale of narcotics;

6. Personal telephone books, address books and other such address listings, letters, cables, telegrams, telephone bills, photographs, audio and video tapes connected to drug trafficking, personal notes and other items reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in drug trafficking activities;

7. Financial instruments purchased with large amounts of currency derived from the sale of controlled substances, including travelers checks, bonds, stock certificates, cashier's checks and certificates of deposit; money counting machines, money wrappers and bags used to carry controlled substances;

8. Records, documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items obtained with the proceeds from the sale of controlled substances;

9. Records, items, and documents reflecting travel, including airline tickets, credit card receipts, travel vouchers, hotel and restaurant receipts, canceled checks, maps and written directions to location;

10. Handguns, shotguns, rifles, explosives, and other firearms/incendiary devices and ammunition that may be used to facilitate the distribution or possession of, with the intent to distribute controlled substances or discovered in the possession of a prohibited person;

11. Indicia of occupancy, residency, control or ownership of the premises and things described in this warrant, including utility bills, telephone bills, loan payment receipts, rent documents, canceled envelopes and keys, photographs, and bank records.

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

In the Matter of the Search of )
)
) Case No.
1735 Oleander Drive, Yuba City, CA )
)
)

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the ____Eastern____ District of ____California____
*(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before ____October 31, 2025____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: any authorized U.S. Magistrate Judge in the Eastern District of California.

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for ____ days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:    October 18, 2025 at 4:11 p.m.    _____
                                                                    *Judge's signature*

City and state:    Davis, California    Sean C. Riordan, U.S. Magistrate Judge
                                                            *Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____         _____
Signature of Judge                                                        Date

**Attachment A**

**Locations to be Searched**

1.  The residence located at 1735 Oleander Drive, Yuba City, CA 95991:



      1735 Oleander Drive, Yuba City, CA 95991 ("Subject Premises 1"). Subject Premises 1, as depicted in the photograph above, is a single-story, single-family residence with a brown shingle roof. The residence has a white exterior, with white trim, and a white garage door. The numbers "1735" appear in black numbering at head level on the left-hand side of the garage door. The front door of the residence is facing Oleander Drive, clearly visible from the street, and is covered by a glass security door. Access to the residence is unobstructed from Oleander Drive. Subject Premises 1 includes all buildings, out-buildings, attached and detached garages, and real property located within the curtilage of 1735 Oleander Drive, Yuba City, CA 95991. This warrant also authorizes the search of vehicles parked within the curtilage of Subject Premises 1.

2.  The residence located at 345 Oregon Street, Gridley, CA 95948:



The residence located at 345 Oregon Street, Gridley, CA 95948 ("Subject Premises 2").
Subject Premises 2, as depicted in the photograph above, is a single-story, single-family
residence with a gray asphalt composite roof. The residence is light brown in color with white
trim.  The numbers "345" appear in white numbering at head level to the left of the front door.
The front door of the residence faces Oregon Street, is clearly visible and unobstructed from the
street, and is protected by a metal security door. There is also a second door granting immediate
access to the dwelling on the north side of the residence, also visible and unobstructed from
Oregon Street. The second door is also protected by a metal security door. Subject Premises 2
includes all buildings, out-buildings, attached and detached garages, and real property located
within the curtilage of 345 Oregon Street, Gridley, CA 95948.  This warrant also authorizes the
search of vehicles parked within the curtilage of Subject Premises 2.

**Attachment B**

**Items to be Seized**

The following items to be seized in whatever form (including electronic) found at the Property to be Searched described in Attachment A, including any digital devices, for evidence, fruits or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 843 and 846 (distribution of and possession with intent to distribute controlled substances, use a facility of interstate commerce in furtherance of drug trafficking, and conspiracy to do the same). These records and materials are more specifically described below:

1.      Controlled substances, including methamphetamine, fentanyl, or items frequently used to distribute methamphetamine and fentanyl or items containing residue from the distribution of methamphetamine and fentanyl; drug-trafficking paraphernalia, including scales, measuring devices, and weighing devices; narcotics diluting or cutting agents; narcotics packaging materials, including plastic, tin foil, cellophane, jars, plastic bags, and containers; and plastic surgical gloves;

2.      United States and foreign currency linked to drug trafficking and/or the proceeds of drug trafficking, including the pre-recorded U.S. currency used to purchase methamphetamine, fentanyl, and drugs during this investigation;

3.      Narcotics or money ledgers, narcotics distribution or customer lists, narcotics supplier lists, correspondence, notations, logs, receipts, journals, books, pay and owe sheets, records and other documents noting the price, quantity, date and/or times when narcotics were purchased, possessed, transferred, distributed, sold or concealed;

4.      Telephone paging devices, beepers, mobile and cellular phones, car phones, answering machines and tapes, and other communication devices which could be used in furtherance of possession with intent to distribute and/or distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1), and unlawful use of a communication facility, in violation of 21 U.S.C. § 843.

3

5.     Bank account records, wire transfer records, bank statements, safety deposit keys and records, money wrappers, money containers, income tax returns, evidence of financial transfer, or movement of money generated from the sale of narcotics;

6.     Personal telephone books, address books and other such address listings, letters, cables, telegrams, telephone bills, photographs, audio and video tapes connected to drug trafficking, personal notes and other items reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in drug trafficking activities;

7.     Financial instruments purchased with large amounts of currency derived from the sale of controlled substances, including travelers checks, bonds, stock certificates, cashier's checks and certificates of deposit; money counting machines, money wrappers and bags used to carry controlled substances;

8.     Records, documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items obtained with the proceeds from the sale of controlled substances;

9.     Records, items, and documents reflecting travel, including airline tickets, credit card receipts, travel vouchers, hotel and restaurant receipts, canceled checks, maps and written directions to location;

10.    Handguns, shotguns, rifles, explosives, and other firearms/incendiary devices and ammunition that may be used to facilitate the distribution or possession of, with the intent to distribute controlled substances or discovered in the possession of a prohibited person;

11.    Indicia of occupancy, residency, control or ownership of the premises and things described in this warrant, including utility bills, telephone bills, loan payment receipts, rent documents, canceled envelopes and keys, photographs, and bank records.

ERIC GRANT
United States Attorney
ROBERT ABENDROTH
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone:  (916) 554-2700
Facsimile:  (916) 554-2900


Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| In the Matter of the Search of: | CASE NO. |
| 1735 Oleander Drive, Yuba City, CA | SEALING ORDER |
| | **UNDER SEAL** |

# **S E A L I N G   O R D E R**

Upon Application of the United States of America and good cause having been shown,

IT IS HEREBY ORDERED that the file in the above-captioned matter be, and is hereby ordered, SEALED until further order of this Court. Law enforcement officers participating in the investigation may utilize copies of the sealed documents without further order of Court.  Additionally, the government may provide the sealed document to defense counsel to comply with its discovery obligations in a criminal proceeding without further order of Court.

Dated:   October 18, 2025

Hon. Sean C. Riordan
U.S. MAGISTRATE JUDGE

SEALING ORDER

AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the

Eastern District of California

<table>
<tr><td>In the Matter of the Search of</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>Case No.</td></tr>
<tr><td>345 Oregon Street, Gridley, CA</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
</table>

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

located in the _____Eastern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841, 843, and 846 | distribution of and possession with intent to distribute controlled substances, use a facility of interstate commerce in furtherance of drug trafficking, and conspiracy to do the same |

The application is based on these facts:

**SEE AFFIDAVIT, attached hereto and incorporated by reference.**

☑ Continued on the attached sheet.

☐ Delayed notice _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Alexander Malik, Special Agent, DEA
*Printed name and title*

Sworn to before me and signed by telephone.

Date:  October 18, 2025

_____
*Judge's signature*

City and state:  Davis, California

Sean C. Riordan, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Alexander Malik, Drug Enforcement Administration ("DEA") Special Agent, being duly sworn, hereby state:

### I.    PURPOSE OF AFFIDAVIT

1.    This affidavit is submitted in support of a Criminal Complaint and arrest warrant for the following people:

      i.    Jose GARCIA-AVALOS ("GARCIA-AVALOS") – Counts 1 – 9;

      ii.    Octavio HINOJOSA-GUZMAN ("HINOJOSA-GUZMAN") – Counts 1, 5, 6, 8, and 10; and

      iii.    Leonel ABREGO – Count 1.

2.    This affidavit charges the individuals listed above with the following violations:

COUNT 1:

Beginning on an unknown date, but no later than on or about July 8, 2024, and continuing through the present date, in the Counties of Sutter, Yuba, and San Joaquin, State and Eastern District of California, and elsewhere, Jose GARCIA-AVALOS, Octavio HINOJOSA-GUZMAN, and Leonel ABREGO, did conspire and agree with persons both known and unknown to your Affiant to knowingly and intentionally distribute and possess with intent to distribute at least 50 grams of methamphetamine, a Schedule II controlled substance, and at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 846 and 841(a)(1).

COUNT 2:

On or about July 31, 2024, in the County of Sutter, State and Eastern District of California, Jose GARCIA-AVALOS, did knowingly and intentionally distribute at least 50 grams of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 3:

On or about August 22, 2024, in the County of Sutter, State and Eastern District of California, Jose GARCIA-AVALOS did knowingly and intentionally distribute at least 50 grams of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 4:

On or about August 22, 2024, in the County of Sutter, State and Eastern District of California, Jose GARCIA-AVALOS did knowingly and intentionally distribute at least 40 grams

1

of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propenamide, commonly referred to as fentanyl, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 5:

On or about September 11, 2024, in the County of Sutter, State and Eastern District of California, Jose GARCIA-AVALOS and Octavio HINOJOSA-GUZMAN, aiding, abetting, and counseling one another, and commanding and procuring the commission of the following, did knowingly and intentionally distribute at least 50 grams of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 6:

On or about September 11, 2024, in the County of Sutter, State and Eastern District of California, Jose GARCIA-AVALOS and Octavio HINOJOSA-GUZMAN, aiding, abetting, and counseling one another, and commanding and procuring the commission of the following, did knowingly and intentionally distribute at least 40 grams of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propenamide, commonly referred to as fentanyl, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 7:

On or about October 10, 2024, in the County of Yuba, State and Eastern District of California, Jose GARCIA-AVALOS did knowingly and intentionally distribute at least 50 grams of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 8:

On or about October 10, 2024, in the County of Yuba, State and Eastern District of California, Jose GARCIA-AVALOS and Octavio HINOJOSA-GUZMAN, aiding, abetting, and counseling one another, and commanding and procuring the commission of the following, did knowingly and intentionally distribute at least 40 grams of N-phenyl-N- [ 1- ( 2-phenylethyl ) -4-piperidinyl ] propenamide, commonly referred to as fentanyl, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 9:

On or about June 11, 2025, in the County of Sutter, State and Eastern District of California, Jose GARCIA-AVALOS, did knowingly and intentionally distribute at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

COUNT 10:

On or about October 4, 2025, in the County of San Joaquin, State and Eastern District of California, Octavio HINOJOSA-GUZMAN did knowingly and intentionally possess with intent to distribute at least 500 grams of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

2

3.       Additionally, this affidavit is submitted in support of a search warrant for the following locations, all described more fully in attachments A-1 through A-6:

      i.       The residence located at 1735 Oleander Drive, Yuba City, CA ("Subject Premises 1"); and

      ii.       The residence located at 345 Oregon Street, Gridley, CA ("Subject Premises 2").

4.       The requested search warrant seeks authorization to seize evidence, fruits, or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 843 and 846 (distribution of and possession with intent to distribute controlled substances, use a facility of interstate commerce in furtherance of drug trafficking, and conspiracy to do the same).  The items and evidence to be seized is more fully in Attachment B.

## II.       AFFIANT'S BACKGROUND AND EXPERTISE

5.       I am a Special Agent (SA) with the DEA and have been so employed since February 2022.  I am an "investigative or law enforcement officer" within the meaning of Section 2510(7) of Title 18 of the United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516 of Title 18 and Title 21 of the United States Code.  I am also a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C).

6.       I completed DEA Basic Agent training at the DEA's Training Academy in Quantico, Virginia, where I received specialized training in narcotics investigations, to include training in the Controlled Substance Act, as set out in Title 21, United States Code, including but not limited to Sections 841 and 846, Controlled Substance Violations and Conspiracy to Commit Controlled Substance Violations, respectively. I received training in search and seizure law, drug identification, drug-trafficking trends and methods, evidence gathering, undercover operations, physical and electronic surveillance, and many other facets of narcotics investigations.  After completing Basic Agent training, I was assigned to the DEA's Sacramento District Office Task Force Group.

3

7.      The DEA Task Force Group is a collaborative group of officers and agents from the DEA and state and local law enforcement agencies such as the Yuba County Sheriff's Department, Sacramento Sheriff's Department, Folsom Police Department, California Highway Patrol, Sacramento Police Department, El Dorado County District Attorney's Office, and California Department of Corrections and Rehabilitation.  The goal of the DEA Task Force Group is to investigate and disrupt illicit drug trafficking in specified geographical areas by immobilizing the highest levels of targeted violators and trafficking organizations.

8.      During the course of my employment as a DEA Special Agent, I have assisted and participated in criminal investigations targeting individuals involved in the trafficking of controlled substances, including but not limited to, fentanyl, methamphetamine, heroin, cocaine, cocaine base, methylenedioxymethamphetamine (MDMA), lysergic acid diethylamide (LSD), dimethyltryptamine (DMT), psilocybin, and marijuana.  While conducting such investigations, I have participated in a variety of investigative techniques and resources, including physical and electronic surveillance, and various methods of infiltration, including undercover operations and using cooperating sources.  Through these investigations, my training and experience, and conversations I have had with other agents and law enforcement officers, I am familiar with the methods used by drug traffickers to manufacture, transport, store, and distribute controlled substances, and to collect and launder drug proceeds.

9.      In addition to my personal knowledge, this affidavit is based on (1) information I obtained from related investigations; (2) conversations with other law enforcement officers including oral and written investigative and laboratory reports that I received directly or indirectly from other law enforcement officials; (3) review and analysis of information received from various sources, including evidence provided pursuant to subpoenas and search warrants, such as GPS tracking data; (4) physical surveillance conducted by law enforcement officials reported to me either directly or indirectly; (5) a review of public records, telephone toll records, and subscriber information; (6) information provided from confidential sources of information, cooperating defendants, and other sources of information working with law enforcement

4

agencies; (7) a review of driver's license and automobile registration records; (8) records from various law enforcement databases, including but not limited to the National Law Enforcement Telecommunications System ("NLETS") and the National Crime Information Center ("NCIC"); (9) my training and experience as a DEA agent and/or; (10) the training and experience of other law enforcement officials with whom I consulted during this investigation and the preparation of this Affidavit.

10.    Because this affidavit is submitted for the limited purpose of supporting the requested Criminal Complaint, I have not included the details of every aspect of the investigation.  I have set forth only the facts necessary to establish probable cause to charge the defendants listed in this affidavit.  I have not intentionally omitted information that the Court would need to assess probable cause for the arrest of the defendants.

### III.    BASIS OF INFORMATION

11.    Between the period of May 12, 2025 through June 11, 2025, pursuant to Court authorization, agents implemented the interception of wire communications to a from a device used by Jose GARCIA-AVALOS, identified in the affidavit as Target Telephone 1.  Between the period of August 8, 2025, through September 6, 2025, pursuant to Court authorization, agents implemented the interception of wire and electronic communications over Target Telephone 1, used by GARCIA-AVALOS as well as Target Telephone 3 a device used by GUZMAN TOLENTINO.  During these periods, the defendants previously outlined were monitored speaking explicitly about their drug trafficking activities on monitored target telephones or were implicated criminally in conjunction with monitored intercepts on target telephones. Additionally, agents tracked the movements of the cell phones subject to interception orders, cell phones of co-conspirators not subject to interception orders, and tracking devices affixed to vehicles used to facilitate drug trafficking all pursuant to search warrants authorized in the Eastern District of California.  The intercepts, cell phone tracking data, and vehicle tracking data all aided visual and physical surveillance as more fully detailed below.

5

12.     Additionally, Special Agents of DEA and local officers have received information from three cooperating sources "CS," who are described below:

      i.      CS-1 is cooperating with the DEA in exchange for monetary compensation for CS-1's work with law enforcement.  DEA established CS-1 as a cooperator in June 2023. CS-1 has no pending criminal cases but does have a prior criminal history, which includes conspiracy to distribute crystal methamphetamine, possession of a controlled substance for sale, possession of a controlled substance, illegal entry into the U.S., and false identification to a peace officer.  CS-1 knows information involving drug trafficking activities because CS-1, prior to cooperating, was a drug trafficker and incarcerated for methamphetamine trafficking. Because CS-1 has a history which includes providing false information to a peace officer, agents utilized various methods to verify and corroborate information provided by CS-1 including, but not limited to, consensually monitoring communications, toll analysis, controlled purchases of drugs, and physical surveillance during controlled purchases.  Because agents corroborated the information provided by CS-1 relied on in this affidavit, I consider the information provided by CS-1 detailed below to be reliable in this case.

      ii.      CS-2 is cooperating with the DEA in exchange for monetary compensation for CS-2's work with law enforcement.  DEA established CS-2 as a cooperator in February 2019.  CS-2 has no pending criminal cases but does have a prior criminal history, which includes trespassing, damaging a wireless communication device, possession of a controlled substance for sale, sale of a controlled substance, robbery, battery, probation violation, and assault with a deadly weapon. CS-2 knows information involving drug trafficking activities because CS-2, prior to

6

cooperating, was a drug trafficker who had been arrested for cocaine trafficking. Additionally, agents corroborated information provided by CS-2 through consensually recorded communications and physical surveillance. For these reasons, I consider CS-2's information relied upon herein to be reliable.

iii. CS-3 is cooperating with the Yuba County Sheriff's Office for consideration of pending state charges. Yuba County established CS-3 as a cooperator in May 2025. CS-3 has prior criminal history, which includes convictions for lewd or lascivious acts with a child under 14, parole violations, petty theft, conspiracy to commit a crime, criminal threats, burglary, and failing to update registration as a sex offender. CS-3 knows information involving drug trafficking activities because CS-3, prior to cooperating, was a drug trafficker who had been arrested by the Yuba County Sheriff's Office. Agents corroborated CS-3's information through consensually recorded calls and surveillance. For these reasons, I consider CS-3 to be reliable in this case

## IV.   PROBABLE CAUSE

13. Since July 2024, the DEA's Sacramento District Office (SDO) has been investigating a group of drug traffickers responsible for the distribution of large quantities of methamphetamine and other controlled substances in the greater area of Yuba City, California and elsewhere. During this investigation, agents developed probable cause to issue arrest warrants for the individuals named above as well as probable cause to search the locations listed herein. Agents developed this probable cause through multiple controlled purchases of methamphetamine and other controlled substances, information from confidential sources, the interception of wire and electronic communication, and the seizure of controlled substances from transporters.

7

**A.      Probable Cause for Counts 1 and 2 supporting a complaint and arrest warrant for GARCIA-AVALOS: on July 31, 2024, GARCIA-AVALOS sold a confidential source approximately two pounds of methamphetamine.**

14.     On July 8, 2024, CS-1 contacted a suspected methamphetamine trafficker on Facebook to organize the purchase of methamphetamine. CS-1 did so under the direction of Task Force Officer (TFO) Sixto Torres. After successfully establishing communication, the methamphetamine trafficker gave CS-1 a phone number to arrange a purchase of controlled substances.

15.     On July 31, 2024, CS-1 placed several calls to the methamphetamine trafficker as directed by TFO Torres. During these calls, a meeting was arranged at the Taqueria Guadalajara restaurant located at 1380 Franklin Road, Unit A, Yuba City, CA. During these calls, the methamphetamine trafficker informed CS-1 that an associate of the methamphetamine trafficker would meet CS-1 instead, and the associate would be driving a gray Infiniti.

16.     Before and after the controlled purchase, CS-1 and CS-1's vehicle were searched for weapons or contraband. CS-1 was also outfitted with audio and video recording devices, the contents of which were booked into evidence. Visual surveillance was also maintained on CS-1 as CS-1 travelled to and from the predetermined meet location. To date, these procedures have been followed on all controlled purchase and money-drop operations on this case. The searches of every DEA CS and CS vehicle have resulted negative for weapons or contraband on all operations over the course of this investigation.

17.     At approximately 2:53 p.m., surveillance observed CS-1 park in the parking lot of Taqueria Guadalajara. At approximately 3:24, surveillance observed a gray Infiniti SUV (CA 9MXC518), with license plate 9MXC518 enter the parking lot of Taqueria Guadalajara. A Hispanic male adult then exited the gray Infiniti SUV (CA 9MXC518), then enter the front passenger seat of CS-1's vehicle.

18.     Surveillance then observed the Hispanic male adult exit CS-1's vehicle, retrieve a pink plastic bag from the gray Infiniti SUV (CA 9MXC518), then reenter CS-1's vehicle. The Hispanic male adult then exited CS-1's vehicle, returned to the gray Infiniti SUV (CA

9MXC518), then departed the meet location, followed by surveillance. Surveillance units maintained visual of the gray Infiniti SUV (CA 9MXC518) until it terminated travel at 1735 Oleander Drive, Yuba City, CA. Surveillance then observed the Hispanic male adult and a second unidentified Hispanic male adult loiter in front of the residence, then load a box into the gray Infiniti SUV (CA 9MXC518). The two unidentified Hispanic male adults then entered the gray Infiniti SUV (CA 9MXC518) and departed 1735 Oleander Drive, at which point surveillance was terminated.

19. Following the controlled purchase, CS-1 told agents that once the Hispanic male adult entered CS-1's vehicle, he introduced himself as "Jose." Jose stated that he could supply CS-1 with methamphetamine, "M-30s," and marijuana. Based on my training and experience, I believe that when Jose referred to "M-30s," he was referring to blue tables labeled "M-30" which are counterfeit Oxycodone tablets. Further, based on my training and experience, I understand that these tablets are typically counterfeit, especially when sold in large quantities, and typically contain fentanyl. Jose then provided CS-1 with a phone number to reach him directly. CS-1 told agents that once Jose reentered CS-1's vehicle, CS-1 handed Jose $2,400 of official government funds, which Jose immediately counted. Jose then handed CS-1 the pink plastic bag containing approximately two pounds of methamphetamine.

20. Utilizing law enforcement databases, Task Force Officer (TFO) Sixto Torres obtained a driver license photo of GARCIA-AVALOS, who is the registered owner of the gray Infiniti SUV (CA 9MXC518). Upon presenting an unmarked photo of GARCIA-AVALOS to CS-1, CS-1 confirmed that the individual in the photo was the same individual who introduced himself as Jose during the controlled purchase.

21. The suspected methamphetamine contents of the pink plastic bag sold to CS-1 were submitted to the DEA Western Regional Laboratory for analysis and safekeeping. The analysis resulted positive for methamphetamine, weighing 888.3 grams.

**B.** **Probable cause for Counts 1, 3, and 4 supporting a complaint and arrest warrant for GARCIA-AVALOS: on August 22, 2024, GARCIA-AVALOS sold a confidential**

9

**source approximately 1 pound of methamphetamine and approximately 2,000 M-30 fentanyl tablets.**

22.     On the days leading up to August 22, 2024, CS-1 arranged the purchase of methamphetamine and blue M-30 tablets from GARCIA-AVALOS by contacting the phone number given to CS-1 during the controlled purchase on July 31, 2025. CS-1 contacted GARCIA-AVALOS under the direction of controlling agents.[1]  On August 22, 2024, at 11:59 a.m., GARCIA-AVALOS contacted CS-1 via phone call, stating that he was waiting for the "barcos." GARCIA-AVALOS also confirmed how long CS-1 would be before arriving at the meet location. "Barcos" is the Spanish word for boats. Based on my training and experience, I know that in California, fentanyl traffickers refer to 1,000 tablets of a controlled substance as a "boat." Therefore, in this case I believe that GARCIA-AVALOS was informing CS-1 that he was waiting for the blue M-30 tablets before the controlled purchase.

23.     On August 22, 2024, agents observed GARCIA-AVALOS arrive to the same meet location as the controlled purchase on July 31, 2024 operating the same gray Infiniti SUV (CA 9MXC518) he was previously observed operating. During the controlled purchase, GARCIA-AVALOS provided CS-1 with approximately 1 pound of methamphetamine and 2,000 M30 tablets in exchange for DEA official advanced funds. The suspected methamphetamine and fentanyl were submitted to the DEA Western Regional Laboratory for analysis and safekeeping. The analysis resulted positive for 437 grams of methamphetamine (a purity analysis showed that this substance was more than 50 grams of actual methamphetamine) and 210 grams of fentanyl.

**C.     Probable cause for Counts 1, 5, and 6 supporting a complaint and arrest warrants for GARCIA-AVALOS and HINOJOSA-GUZMAN: on September 11, 2024, GARCIA-AVALOS and HINOJOSA-GUZMAN sold a confidential source**

---

[1] Unless otherwise specified, all communications between DEA confidential sources and targets of investigation in which a drug deal is organized were conducted utilizing an account and phone number set up through a system available to DEA.  The system and account provide agents with the ability to overhear calls made by each CS in real time, to document and catalog the telephone numbers for incoming or outgoing wire and electronic communications with each CS' telephone number, and to record all phone calls and text messages to or from each CS' telephone number.  For each communication detailed in this affidavit, the respective CS utilized the account assigned to them, and law enforcement confirmed the telephone numbers with which each CS communicated.  Additionally, agents listened to all calls in real time as well as recorded all calls and text messages.

**approximately 1 pound of methamphetamine and approximately 2,000 M-30 fentanyl tablets.**

24.     On the days leading up to September 11, 2024, CS-1 arranged the purchase of methamphetamine and M-30 tablets from GARCIA-AVALOS under the direction of controlling agents.  During the calls, GARCIA-AVALOS and CS-1 agreed to meet at a location for a drug deal involving methamphetamine and M-30 tablets.

25.     On September 11, 2024, agents observed GARCIA-AVALOS arrive at the meet location as the passenger of a black Lincoln sedan (CA 9HKZ325) registered to a Lucio Castillo-Guzman at 200 Park Avenue, apt 300, Yuba City, CA. GARCIA-AVALOS then sold CS-1 approximately 1 pound of methamphetamine and 2,000 M30 tablets, returned to the front passenger seat of the black Lincoln sedan (CA 9HKZ325), then departed the meet location. Surveillance then observed the black Lincoln sedan (CA 9HKZ325) arrive at 318 North Barrett Road, Yuba City, CA. Upon arrival, GARCIA-AVALOS entered his gray Infiniti SUV (CA 9MXC518), then departed 318 North Barrett Road. An unknown Hispanic male adult then exited the black Lincoln sedan (CA 9HKZ325), then entered the rear passenger seat of a black Ford Expedition registered to Octavio HINOJOSA-GUZMAN at 200 Park Avenue, Apartment 300, Yuba City, CA. TFO Aaron Kacalek clearly observed the driver of the black Ford Expedition, and later confirmed the driver to be HINOJOSA-GUZMAN by comparing the driver's license photo of the registered owner of the vehicle to what he observed in person.

26.     The suspected methamphetamine and fentanyl were submitted to the DEA Western Regional Laboratory for analysis and safekeeping. The analysis resulted positive for 441 grams of methamphetamine and 215 grams of fentanyl.

**D.     Probable cause for Counts 1 and 7 supporting a complaint and arrest warrants for GARCIA-AVALOS: on October 31, 2024, GARCIA-AVALOS sold a confidential source approximately 1 pound of methamphetamine and 3,000 M-30 fentanyl tablets.**

27.     On the days leading up to October 31, 2024, CS-1 arranged the purchase of methamphetamine and blue M-30 tablets from GARCIA-AVALOS under the direction of controlling agents.

28.     On October 31, 2024, prior to the controlled purchase operation, agents established surveillance on GARCIA-AVALOS' known gray Infiniti SUV (CA 9MXC518). At approximately 1:28 p.m., surveillance observed the gray Infiniti SUV (CA 9MXC518) park in the vicinity of 191 Garden Highway, where HINOJOSA-GUZMAN was waiting. Upon arrival of the gray Infiniti SUV (CA 9MXC518), HINOJOSA-GUZMAN entered the front passenger seat. Surveillance then observed the gray Infiniti SUV (CA 9MXC518) depart the vicinity of 191 Garden Highway, then travel to the meet location. Once at the meet location, GARCIA-AVALOS entered CS-1's vehicle and sold CS-1 approximately 1 pound of methamphetamine and 3,000 M30 tablets in exchange for DEA official advanced funds.

29.     The suspected methamphetamine and fentanyl were submitted to the DEA Western Regional Laboratory for analysis and safekeeping. The analysis resulted positive for 447 grams of methamphetamine (a purity analysis showed that this substance was more than 50 grams of actual methamphetamine) and 318 grams of fentanyl.

### E.     The Court authorized the interception of wire communications over Target Telephone 1 used by GARCIA-AVALOS to facilitate drug trafficking activities.

30.     On May 9, 2025, the Court authorized an application intercept wire communications over one of the devices used by GARCIA-AVALOS, Target Telephone 1, for thirty days.  Through the intercepts, agents overheard calls where GARCIA-AVALOS used Target Telephone 1 to arrange controlled substance transactions, to collect money for controlled substances, and to direct associates to use electronic communications, *i.e.* text messages, and to arrange meetings for controlled substance activities.  The initial interceptions over Target Telephone 1 began on May 13, 2025 and continued through June 11, 2025.

### F.     Probable cause for Count 1 supporting a complaint and arrest warrants for GARCIA-AVALOS and HINOJOSA-GUZMAN: GARCIA-AVALOS, LISTER,

12

**HINOJOSA-GUZMAN, and others used Target Telephone 1 to distribute controlled substances within the Eastern District of California.**

31.     On May 27, 2025, GARCIA-AVALOS used Target Telephone 1 to discuss what agents believed was the sale of one pound of methamphetamine to another drug trafficker who agents saw meet with GARCIA-AVALOS in Chico, CA.  During the discussions, agents overheard GARCIA-AVALOS tell the other drug trafficker that GARCIA-AVALOS would make a call.  Agents interpreted this to mean that GARCIA-AVALOS was calling a source of supply to acquire methamphetamine for the transaction.  That same evening at 6:51 p.m., GARCIA-AVALOS called LISTER using Target Telephone 1.  Agents were familiar with LISTER's voice, his telephone number, and his appearance because he had previously worked as an informant with DEA in the separate investigation which resulted in the indictment of GUZMAN TOLENTINO.[2]  During the call, GARCIA-AVALOS informed LISTER that a customer in Chico, CA needs "one." GARCIA-AVALOS then informed LISTER that he currently had $800, and would pay LISTER "the rest" upon returning from Chico, CA. On a follow-up call between LISTER and GARCIA-AVALOS at 6:55 p.m., LISTER instructed GARCIA-AVALOS to give him 20 minutes. LISTER then stated that he would see GARCIA-AVALOS at LISTER's "house," to which GARCIA-AVALOS confirmed. Five minutes later, at 6:56 p.m., GARCIA-AVALOS spoke with his customer on Target Telephone 1. During the call, GARCIA-AVALOS informed the customer that he would be leaving Yuba City, CA, in 20 minutes.

32.     At approximately 7:05 p.m., Sacramento Sheriff's Department (SSD) detectives of the Special Investigations Bureau (SIB) observed GARCIA-AVALOS depart his residence of 1735 Oleander Drive, Yuba City, CA, in his gray Infiniti SUV (CA 9MXC518). At 7:16 p.m., GARCIA-AVALOS called LISTER using Target Telephone 1 and informed LISTER that he was at LISTER's residence. LISTER informed GARCIA-AVALOS that he would be home in "less

---

[2] During a separate investigation, LISTER acted as a cooperating source with law enforcement; however, LISTER conducted controlled substance trafficking activities outside the scope of his agreement with law enforcement. Later, he was intercepted in this investigation, and DEA, as well as state and local law enforcement, terminated his designation as a cooperating source.

13

than a minute." At 7:17 p.m., surveillance observed GARCIA-AVALOS park in the vicinity of 1650 Mosswood Drive, Yuba City, CA (LISTER's residence). Surveillance then observed a white Jeep SUV (CA 5JKB410) registered to Lloyd LISTER at 1650 Mosswood Drive, Yuba City, CA, arrive and park in the driveway of Mosswood Drive. Detective Ghaffarpour observed LISTER exit the white Jeep SUV (CA 5JKB410). Detective Ghaffarpour was able to confirm that the driver was LISTER by comparing a historical arrest photo of LISTER to what he observed in person. At 7:23 p.m., surveillance observed GARCIA-AVALOS depart the vicinity of 1650 Mosswood Drive.

33.    At approximately 8:22 p.m., surveillance observed GARCIA-AVALOS park on Hemlock Street in Chico, CA. At 8:23 p.m., GARCIA-AVALOS called his customer using Target Telephone 1. During the call, the customer asked if GARCIA-AVALOS was "there," to which GARCIA-AVALOS confirmed that he was. Then, the customer informed GARCIA-AVALOS that she was "coming out." Surveillance was unable to maintain a consistent visual of GARCIA-AVALOS without alerting him of the investigation. However, surveillance did observe a white female adult exit the front passenger seat of GARCIA-AVALOS' gray Infiniti SUV (CA 9MXC518) shortly after the call at 8:23 p.m. Surveillance then observed the white female adult walk from GARCIA-AVALOS' vehicle to a small apartment building located on the south side of Hemlock Street, Chico, CA.

34.    Approximately three days later, GARCIA-AVALOS communicated with HINOJOSA-GUZMAN concerning controlled substances and drug proceeds. Specifically, on May 30, 2025, at 2:07 p.m., HINOJOSA-GUZMAN[3] called GARCIA-AVALOS on Target

---

[3] Throughout the investigation HINOJOSA-GUZMAN used multiple telephone numbers, and he changed telephone numbers frequently. It is a common tactic used by drug traffickers to utilize multiple telephone numbers and change telephone numbers frequently to avoid detection by law enforcement. Agents used records from a money remitter database to identify HINOJOSA-GUZMAN's telephone number initially; thereafter, agents found HINOJOSA-GUZMAN during physical surveillance, placed a ruse call to the telephone number associated with HINOJOSA-GUZMAN and watched HINOJOSA-GUZMAN answer the telephone. For instance, on April 1, 2025, Yuba County Sheriff's Office Detective Alex Martinez placed a ruse call to a telephone number associated with HINOJOSA-GUZMAN while observing HINOJOSA-GUZMAN walk in the vicinity of his residence at 398 Alemar Way, Yuba City, CA. While placing the call, Detective Martinez observed HINOJOSA-GUZMAN retrieve a cellular phone from his pocket, then hold it up to his ear. Detective Martinez then conversed with HINOJOSA-

14

Telephone 1. During the call, HINOJOSA-GUZMAN requested "one" from GARCIA-AVALOS. GARCIA-AVALOS questioned whether it was a "big one," to which HINOJOSA-GUZMAN confirmed. GARCIA-AVALOS stated that he would need to pick "it" up. HINOJOSA-GUZMAN stated that GARCIA-AVALOS could go with HINOJOSA-GUZMAN's brother, and that HINOJOSA-GUZMAN would leave the money with his brother.

35.    At 2:10 p.m. GARCIA-AVALOS called LISTER using Target Telephone 1. During the call, GARCIA-AVALOS asked LISTER if he had "one," to which LISTER confirmed that he did. GARCIA-AVALOS then stated that he would go "there" with "the money" and questioned if "it" was the same as "the yellow one," and LISTER replied that "it" was "white…clear stuff."

36.    At approximately 2:25 p.m., the Yuba County Sherriff's Office (YCSO) Problem Oriented Policing (POP) team located GARCIA-AVALOS in the vicinity of the Ross clothing store located at 1299 Colusa Avenue, Yuba City, CA, by utilizing GPS data from the court authorized GPS location device affixed to GARCIA-AVALOS' gray Infiniti SUV (CA 9MXC518). After locating GARCIA-AVALOS, surveillance observed an unidentified Hispanic male adult enter GARCIA-AVALOS' gran Infiniti SUV. Surveillance then observed the gray Infiniti SUV (CA 9MXC518) travel to LISTER's residence at 1650 Mosswood Drive, Yuba City, CA, and park in the vicinity of the residence at 2:34 p.m. Surveillance then observed GARCIA-AVALOS depart the vicinity of 1650 Mosswood Drive.

37.    At 2:35 p.m., LISTER called GARCIA-AVALOS on Target Telephone 1. During the call, LISTER asked GARCIA-AVALOS if he had just "pulled up," to which GARCIA-AVALOS confirmed. GARCIA-AVALOS then informed LISTER that his "friend" had forgotten the money, and that he would be back in "two or three" minutes.

38.    Surveillance observed GARCIA-AVALOS travel from Mosswood Drive to the Wells Fargo Bank located at 900 Colusa Avenue, Yuba City, CA, where he parked in the vicinity

---

GUZMAN, ultimately leading HINOJOSA-GUZMAN to believe that Detective Martinez had placed a call to the wrong number.

of a white Honda SUV (CA 9UHF498) registered to Sonia Soto-Fernandez at 398 Alemar Way, Apartment 4, Yuba City, CA. Sergeant Machuca then observed HINOJOSA-GUZMAN exit the white Honda SUV (CA 9UHF498), walk to an ATM machine, interact with the machine, walk to GARCIA-AVALOS' gray Infiniti SUV (CA 9MXC518), then hand the unknown front passenger of the gray Infiniti SUV (CA 9MXC518) money. Surveillance then observed GARCIA-AVALOS travel back to the vicinity of 1650 Mosswood Drive.

39.     At Mosswood Drive, surveillance observed LISTER exit 1650 Mosswood Drive, enter the gray Infiniti SUV (CA 9MXC518), then depart the vicinity of the residence. Surveillance then travelled with the gray Infiniti SUV (CA 9MXC518) until it turned onto Wilkie Way in Yuba City, CA, where surveillance could not follow the vehicle without alerting GARCIA-AVALOS of the investigation. Moments later, surveillance observed the gray Infiniti SUV (CA 9MXC518) exit Wilkie Way and travel to Lincrest Elementary School in Yuba City, CA, where Detective Martinez observed GARCIA-AVALOS to be the sole occupant of the vehicle.

40.     On June 2, 2025, at 3:58 p.m., GARCIA-AVALOS called LISTER using Target Telephone 1. During the call, GARCIA-AVALOS stated that his cousin needed "one big one." Later in the call, GARCIA-AVALOS stated that "the guy" was waiting for his answer. LISTER then informed GARCIA-AVALOS that he was going to make a phone call, then call GARCIA-AVALOS back. At 4:01 p.m., LISTER called GARCIA-AVALOS on Target Telephone 1. During the call, LISTER instructed GARCIA-AVALOS to give him 15 minutes before "heading over."

41.     At approximately 4:47 p.m., while conducting surveillance at LISTER's residence at 1650 Mosswood Drive, the YCSO POP team observed GARCIA-AVALOS arrive in the vicinity of the residence as the operator of his gray Infiniti SUV (CA 9MXC518). Surveillance then observed GARCIA-AVALOS exit the vehicle, then enter 1650 Mosswood Drive. Approximately 6 minutes later, surveillance observed GARCIA-AVALOS exit the residence, enter the gray Infiniti SUV (CA 9MXC518), then depart the vicinity of 1650 Mosswood Drive.

16

**G.    Probable cause for Counts 1 and 9 supporting a complaint and arrest warrant for GARCIA-AVALOS: on June 11, 2025, GARCIA-AVALOS delivered five pounds of methamphetamine to CS-1, after coordinating with LISTER and MONTIEL-ROMERO.**

42.    On the days leading up to June 11, 2025, CS-1 arranged the purchase of 5 pounds of methamphetamine from GARCIA-AVALOS under the direction of controlling agents.  On June 11, 2025, at 12:17 p.m., GARCIA-AVALOS called an associate named Lloyd LISTER ("LISTER") using Target Telephone 1. During the call, GARCIA-AVALOS stated that he needed "five" for "that guy." LISTER stated that once GARCIA-AVALOS went to LISTER's residence with the money, LISTER would go "pick it."

43.    At approximately 12:53 p.m., YCSO POP team Detective Jacob Balentine observed GARCIA-AVALOS' gray Infiniti SUV (CA 9MXC518) arrive in the vicinity of LISTER's residence at 1650 Mosswood Drive, Yuba City, CA. GARCIA-AVALOS then entered the residence, shortly after arriving. At approximately 1:17 p.m., SA Andrew Peters observed LISTER exit 1650 Mosswood Drive, enter his white Jeep SUV (CA 5JKB410), depart the vicinity of the residence, and travel to the vicinity of the Quick Stop located at 1757 Live Oak Boulevard, Yuba City, CA. After arriving at the Quick Stop, officers observed an unknown Hispanic male adult enter LISTER's white Jeep SUV (CA 5JKB410), carrying a grocery bag. The unknown Hispanic male adult then exited the white Jeep SUV (CA 5JKB410) empty-handed, then returned to a maroon Ford sedan (CA 6LFF862), registered to Elmer MONTIEL-ROMERO at 676 Sutter Street, Yuba City, CA. TFO Torres later confirmed the unknown Hispanic male adult to be MONTIEL-ROMERO by comparing a driver's license photo of MONTIEL-ROMERO to what he observed in person on the day of the controlled purchase.

44.    Following the interaction with MONTIEL-ROMERO, surveillance observed the white Jeep SUV (CA 5JKB410) travel back to Mosswood, stopping briefly at the 7-Eleven located at 929 Market Street, Yuba City, CA, on the way. At approximately 1:57 p.m., Detective Ballentine observed the white Jeep SUV (CA 5JKB410) arrive back at 1650 Mosswood Drive. LISTER then exited the white Jeep SUV (CA 5JKB410), carrying the grocery bag, then entered

17

the residence. At approximately 2:00 p.m., Detective Ballentine observed GARCIA-AVALOS exit 1650 Mosswood Drive carrying the grocery bag. Shortly thereafter, LISTER exited 1650 Mosswood Drive. Surveillance observed GARCIA-AVALOS enter the gray Infiniti SUV (CA 9MXC518) while LISTER entered the white Jeep SUV (CA 5JKB410). GARCIA-AVALOS and LISTER then exited the vicinity of 1650 Mosswood Drive in tandem, in their respective vehicles.

45.     At approximately 2:08 p.m., surveillance observed the gray Infiniti SUV (CA 9MXC518) and the white Jeep SUV (CA 5JKB410) enter the vicinity of the predetermined meet location, the Taqueria Guadalajara located at 1380 Franklin Boulevard, Yuba City, CA. At approximately 2:09 p.m., surveillance observed CS-1 park CS-1's vehicle in the vicinity of the gray Infiniti SUV (CA 9MXC518). GARCIA-AVALOS then exchanged 5 pounds of methamphetamine in a gray grocery bag for DEA official advanced funds while inside CS-1's vehicle. GARCIA-AVALOS then returned to the gray Infiniti SUV (CA 9MXC518). LISTER then exited the white Jeep SUV (CA 5JKB410) and entered the gray Infiniti SUV (CA 9MXC518). LISTER then exited the gray Infiniti SUV (CA 9MXC518), returned to the white Jeep SUV (CA 5JKB410), then departed the meet location. GARCIA-AVALOS then departed the meet location separately, in the gray Infiniti SUV (CA 9MXC518).

46.     Based on my training and experience, I believe that LISTER was given some or all of the five pounds of methamphetamine in advance by MONTIEL-ROMERO, then gave some or all of the methamphetamine in advance to GARCIA-AVALOS. Therefore, LISTER accompanied GARCIA-AVALOS to the controlled purchase to observe the transaction, then immediately collect the money for the methamphetamine, to immediately pay MONTIEL-ROMERO for the methamphetamine given to LISTER in advance.

47.     Agents submitted suspected methamphetamine found inside the gray grocery bag sold to CS-1 to the DEA Western Regional Laboratory for analysis and safekeeping. The analysis resulted positive for methamphetamine, weighing 2204 grams and more than 500 grams of a mixture or substance containing a detectable amount of methamphetamine.

**H.      Probable cause for Count 1 supporting a complaint and arrest warrants for GARCIA-AVALOS and ABREGO as well as a search warrant for Subject Premises 1 and 2: on September 2, 2025, ABREGO directed a vehicle transporting 20 pounds of methamphetamine to deliver 10 pounds of methamphetamine to GARCIA-AVALOS at Subject Premises 1, and after the delivery, the vehicle went to Subject Premises 2 with the remaining 10 pounds of methamphetamine.**

48.      On August 31, 2025, at 5:55 p.m., ABREGO sent a text message to Target Telephone stating "Soy Leo [This is Leo]." Results for a query submitted to a law enforcement database indicate that the phone number from which the text message stating "This is Leo" was sent is associated to a Leonel Abrego at 3475 Richmond Court, Live Oak, CA. During an address check of 3475 Ricmond Court on September 2, 2025, YCSO POP Detective Alex Martinez observed a white Nissan SUV (CA 9GLT312) registered to Esmeralda Perez at 3475 Richmond Court, Live Oak, CA in the driveway of the residence.

49.      On September 2, 2025, ABREGO and GARCIA-AVALOS had multiple instances of wire communication over Target Telephone 1 to coordinate what agents believe was ABREGO delivering a load of methamphetamine to GARCIA-AVALOS. At 3:42 p.m., GARCIA-AVALOS called ABREGO using Target Telephone 1. During the call, GARCIA-AVALOS asked ABREGO if he had "heard anything," to which ABREGO replied "they are on their way." GARCIA-AVALOS asked ABREGO if he would "pass through" Yuba City, CA, to which ABREGO stated it would be ABREGO's brother. GARCIA-AVALOS questioned whether he could send ABREGO's brother his home address, to which ABREGO replied that his brother was "completely trustworthy." Later in the conversation, GARCIA-AVALOS informed ABREGO that he would send ABREGO "the address." Following the call, GARCIA-AVALOS sent ABREGO "1735 oleander Dr Yuba city ca 95991" (GARCIA-AVALOS' residence) using Target Telephone 1.

50.      At 9:14 p.m., ABREGO called GARCIA-AVALOS on Target Telephone 1. During the call, ABREGO questioned whether it was too late, because the "pizzas" would arrive in "twenty to twenty-five" minutes. GARCIA-AVALOS informed ABREGO that he could open the garage. ABREGO stated that "his GPS" was giving a 25-minute estimated time of arrival to

19

GARCIA-AVALOS' house. GARCIA-AVALOS questioned how many "they" were, to which ABREGO replied "twenty." Agents believe that in this statement ABREGO informed GARCIA-AVALOS that the transporter had 20 pounds of methamphetamine in the car available for delivery. ABREGO stated that GARCIA-AVALOS could "take a look" at "them" and advise ABREGO how many he wanted. GARCIA-AVALOS informed ABREGO that he could "get 10 out right away." GARCIA-AVALOS inquired about the price, to which ABREGO stated that "the boss" wanted "eleven, but it's fine." GARCIA-AVALOS stated that he would pay "eleven" for the "one" he "had to break." Because $1,100 is a common price for a pound of methamphetamine, I believe that ABREGO quoted GARCIA-AVALOS a price to purchase 10 pounds of methamphetamine at $1,100 per pound.

51. At approximately 9:34 p.m., detectives with the YCSO POP team observed a red Honda Accord registered to Jose Abrego Calderon at 345 Oregon Street, Gridley, CA arrive at 1735 Oleander Drive, then enter the garage of the residence. At 9:37 p.m., GARCIA-AVALOS called ABREGO using Target Telephone 1. During the call, GARCIA-AVALOS stated that "he" had arrived already. GARCIA-AVALOS then stated, "they are good." Later in the conversation, ABREGO asked if GARCIA-AVALOS wanted "all of them," to which GARCIA-AVALOS replied that "ten were fine to start." ABREGO stated that GARCIA-AVALOS was close by, and advised GARCIA-AVALOS to "tell him." GARCIA-AVALOS asked for "ten boxes of avocados," then stated he would "pay those back, then grab the next ten."

52. At approximately 9:42 p.m., surveillance observed the red Honda Accord depart the residence. Surveillance followed the red Honda Accord until it terminated travel at the registered owner address at 345 Oregon Street, Gridley, CA (Subject Premises 2). Agents believe that the red Honda Accord transported 20 pounds of methamphetamine to Subject Premises 1 where it dropped off 10 pounds of methamphetamine to GARCIA-AVALOS. Then, the red Honda Accord left Subject Premises 1 with the remaining 10 pounds of methamphetamine, and it transported the methamphetamine to Subject Premises 2.

53.    On September 4, 2025, at 12:18 p.m., GARCIA-AVALOS called ABREGO using Target Telephone 1. During the call, GARCIA-AVALOS stated that he "took care of seven trees yesterday," then stated, "so maybe by tomorrow it will be done." ABREGO instructed GARCIA-AVALOS to advise ABREGO "tonight."

54.    On September 5, 2025, starting at 7:58 a.m., the following text conversation between GARCIA-AVALOS and ABREGO occurred:

| Time | Sender | Text |
|---|---|---|
| 7:58 a.m. | GARCIA-AVALOS | You can send me the chainsaws whenever you want |
| 7:59 a.m. | ABREGO | To your house? |
| 8:00 a.m. | GARCIA-AVALOS | Yes |
| 8:00 a.m. | GARCIA-AVALOS | Please, cousin |
| 8:01 a.m. | ABREGO | Do you want the whole line or just the half? |
| 8:02 a.m. | GARCIA-AVALOS | Whatever you prefer |
| 8:03 a.m. | ABREGO | We're full over here |
| 9:55 a.m. | ABREGO | You caught me having breakfast… I'll stop by later!!! Or at what time? |
| 9:55 a.m. | GARCIA-AVALOS | Around what time cousin |
| 9:55 a.m. | GARCIA-AVALOS | Because I have to go to Chico |
| 9:56 a.m. | ABREGO | Go if you want and then text me once you're coming back |
| 9:57 a.m. | GARCIA-AVALOS | Okay thank you |
| 9:57 a.m. | ABREGO | Thank you |
| 12:27 p.m. | GARCIA-AVALOS | We're here at the house |
| 12:30 p.m. | ABREGO | I'm around here. I will stop by in 20-25 for the receipt and later on the butler will give you the trees |
| 12:30 p.m. | GARCIA-AVALOS | Ok |
| 12:43 p.m. | GARCIA-AVALOS | Let me know when you're 5 minutes away |
| 12:44 p.m. | GARCIA-AVALOS | Please because I am busy but I'm around the same block |
| 12:45 p.m. | ABREGO | I'll arrive in 10, I'm in a white Nissan with the family. |

55.    At 12:58 p.m., detectives with the YCSO POP team observed the same white Nissan SUV (CA 9GLT312) previously observed at the residence associated to Leonel ABREGO arrive in the vicinity of GARCIA-AVALOS' known address of 1735 Oleander Drive, Yuba City, CA. Detective Hindo was able to observe a Hispanic male adult exit the white Nissan SUV (CA 9GLT312), and visually confirm that it was ABREGO by comparing what he observed in person to Facebook photos from a profile named "Leonel Abrego" provided by TFO

21

Torres.  ABREGO then walked towards the front of the residence out of view, then moments later back into view, walking towards the white Nissan SUV (CA 9GLT312). ABREGO then entered the white Nissan SUV (CA 9GLT312) then departed the vicinity of the residence.

56.     Later that evening, starting at 7:24 p.m., the following text conversation between GARCIA-AVALOS and ABREGO occurred:

| Time | Sender | Text |
| --- | --- | --- |
| 7:24 p.m. | GARCIA-AVALOS | Will the butler be able to come by today |
| 7:37 p.m. | ABREGO | He will arrive in 30-35 minutes |
| 7:38 p.m. | GARCIA-AVALOS | Okay thank you I'll see him here |

57.     At 8:14 p.m., detectives with the YCSO POP team observed the same red Honda Accord observed arriving at GARCIA-AVALOS' residence on September 2, 2025, arriving at GARCIA-AVALOS' residence again. Surveillance observed the red Honda Accord back into the garage. GARCIA-AVALOS then shut the garage door. At 8:21 p.m., surveillance observed the garage door open, the red Honda Accord then exited the garage and departed from the vicinity of 1735 Oleander Drive.

**I.      Probable cause for 10 supporting a complaint and arrest warrant for HINOJOSA-GUZMAN: on October 4, 2025, HINOJOSA-GUZMAN possessed with intent to distribute 45 pounds of methamphetamine seized by law enforcement.**

58.     On October 4, 2025, at approximately 4:25 p.m., I observed court-authorized GPS data associated with the telephone used by HINOJOSA-GUZMAN travelling southbound on the Interstate 5 away from Yuba City, CA. The GPS location data showed HINOJOSA-GUZMAN's phone travelling southbound until exiting the Interstate 5 and then travelling eastbound until it arrived in the vicinity of Delano, CA. Once in Delano, the GPS ping location data showed that the phone stayed in Delano until approximately 7:45 p.m., when it began travelling westbound back towards the Interstate 5.

59.     At approximately 10:15 p.m., while observing traffic from an on-ramp to Interstate 5, I observed HINOJOSA-GUZMAN's white Honda SUV (CA 9UHF498) travelling northbound on the interstate.  Based upon my training, experience, and observations during this

22

case, this route of travel indicated that HINOJOSA-GUZMAN may be transporting methamphetamine from Southern California to Northern California. I immediately initiated travel, caught up to the white Honda SUV, and observed the license plate to be 9UHF498. I, with the assistance of other members of DEA Sacramento Task Force conducted surveillance of the white Honda SUV (CA 9UHF498) as it travelled.

60. At approximately 11:10 p.m., CHP Officer Walker conducted a stop of the white Honda SUV (CA 9UHF498) after observing it violate a California vehicle code. The stop was conducted in the vicinity of the Turner Road exit on the California Highway 99 northbound. CHP Officer Rey Garcia responded to the scene of the stop to assist Officer Walker. Officer Walker encountered HINOJOSA-GUZMAN as the operator and sole occupant of the white Honda SUV (CA 9UHF498). HINOJOSA-GUZMAN provided his California driver's license to Officer Garcia who verified the operator of the vehicle was HINOJOSA-GUZMAN by comparing the driver's license name and photo to what he observed in person.

61. While Officer Garcia was interacting with HINOJOSA-GUZMAN, Officer Walker observed methamphetamine in plain view, between the second and third row seats of the vehicle. A search of the vehicle was conducted, yielding 41 clear plastic bags, each containing methamphetamine, with a total weight of approximately 45 pounds. HINOJOSA-GUZMAN was booked in the San Joaquin County Jail for possession of a controlled substance for sale, transportation of a controlled substance for sale, and possession of methamphetamine exceeding 10 kilograms.

## V.    AUTHORIZATION REQUEST

62. Based on the foregoing statement of probable cause, I request the court issue arrest warrants for the following individuals:

      i.      Jose GARCIA-AVALOS;

      ii.      Octavio HINOJOSA-GUZMAN; and

      iii.      Leonel ABREGO.

63.     Additionally based upon the above statement of probable cause, I request that the Court issue a search warrant authorizing agents to search the following locations, all described more fully in attachment A:

     i.     The residence located at 1735 Oleander Drive, Yuba City, CA ("Subject Premises 1"); and

     ii.     The residence located at 345 Oregon Street, Gridley, CA ("Subject Premises 2").

64.     The authorization requested, if granted, would allow agents to seize evidence, fruits, or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 843 and 846 (distribution of and possession with intent to distribute controlled substances, use a facility of interstate commerce in furtherance of drug trafficking, and conspiracy to do the same).  The items and evidence to be seized is more fully in Attachment B.

## VI.    <u>REQUEST TO SEAL</u>

65.     This Affidavit contains information regarding persons to be arrested as well as potential subject and targets of this investigation.  This investigation is continuing, and the potential targets as well as the persons to be arrested are unaware of the investigation or the fact that they may be arrested.  If unsealed, the information contained herein may jeopardize officers conducting the search warrants or attempting to execute the arrest warrants.  In light of the ongoing nature of the investigation, and the likelihood that notice to above-identified individuals may cause them to destroy evidence, flee from prosecution, and notify confederates, I request that this affidavit and the resulting arrest warrants be sealed on the Court's docketing system, with the exception of copies utilized by law enforcement officers participating in the investigation.  The government also requests that it be allowed to provide this document to defense counsel to comply with its discovery obligations in a criminal proceeding without further order of Court.

I swear, under the penalty of perjury, that the foregoing information is true and correct to the best of my knowledge, information, and belief.

_____
Alexander Malik
Special Agent
Drug Enforcement Administration

Sworn to me over the telephone and SIGNED by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this __18th__ day of October 2025.

_____
Hon. Sean C. Riordan
United States Magistrate Judge

Approved as to form:

*/s/ Robert Abendroth*
Robert Abendroth
Assistant United States Attorney

25

**Attachment A**

**Locations to be Searched**

1. The residence located at 1735 Oleander Drive, Yuba City, CA 95991:



      1735 Oleander Drive, Yuba City, CA 95991 ("Subject Premises 1"). Subject Premises 1, as depicted in the photograph above, is a single-story, single-family residence with a brown shingle roof. The residence has a white exterior, with white trim, and a white garage door. The numbers "1735" appear in black numbering at head level on the left-hand side of the garage door. The front door of the residence is facing Oleander Drive, clearly visible from the street, and is covered by a glass security door. Access to the residence is unobstructed from Oleander Drive. Subject Premises 1 includes all buildings, out-buildings, attached and detached garages, and real property located within the curtilage of 1735 Oleander Drive, Yuba City, CA 95991. This warrant also authorizes the search of vehicles parked within the curtilage of Subject Premises 1.

1

2.  The residence located at 345 Oregon Street, Gridley, CA 95948:



The residence located at 345 Oregon Street, Gridley, CA 95948 ("Subject Premises 2").

Subject Premises 2, as depicted in the photograph above, is a single-story, single-family

residence with a gray asphalt composite roof. The residence is light brown in color with white

trim.  The numbers "345" appear in white numbering at head level to the left of the front door.

The front door of the residence faces Oregon Street, is clearly visible and unobstructed from the

street, and is protected by a metal security door. There is also a second door granting immediate

access to the dwelling on the north side of the residence, also visible and unobstructed from

Oregon Street. The second door is also protected by a metal security door. Subject Premises 2

includes all buildings, out-buildings, attached and detached garages, and real property located

within the curtilage of 345 Oregon Street, Gridley, CA 95948.  This warrant also authorizes the

search of vehicles parked within the curtilage of Subject Premises 2.

**Attachment B**

**Items to be Seized**

The following items to be seized in whatever form (including electronic) found at the Property to be Searched described in Attachment A, including any digital devices, for evidence, fruits or instrumentalities of violations of 21 U.S.C. §§ 841(a)(1), 843 and 846 (distribution of and possession with intent to distribute controlled substances, use a facility of interstate commerce in furtherance of drug trafficking, and conspiracy to do the same). These records and materials are more specifically described below:

1.    Controlled substances, including methamphetamine, fentanyl, or items frequently used to distribute methamphetamine and fentanyl or items containing residue from the distribution of methamphetamine and fentanyl; drug-trafficking paraphernalia, including scales, measuring devices, and weighing devices; narcotics diluting or cutting agents; narcotics packaging materials, including plastic, tin foil, cellophane, jars, plastic bags, and containers; and plastic surgical gloves;

2.    United States and foreign currency linked to drug trafficking and/or the proceeds of drug trafficking, including the pre-recorded U.S. currency used to purchase methamphetamine, fentanyl, and drugs during this investigation;

3.    Narcotics or money ledgers, narcotics distribution or customer lists, narcotics supplier lists, correspondence, notations, logs, receipts, journals, books, pay and owe sheets, records and other documents noting the price, quantity, date and/or times when narcotics were purchased, possessed, transferred, distributed, sold or concealed;

4.    Telephone paging devices, beepers, mobile and cellular phones, car phones, answering machines and tapes, and other communication devices which could be used in furtherance of possession with intent to distribute and/or distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1), and unlawful use of a communication facility, in violation of 21 U.S.C. § 843.

3

5.  Bank account records, wire transfer records, bank statements, safety deposit keys and records, money wrappers, money containers, income tax returns, evidence of financial transfer, or movement of money generated from the sale of narcotics;

6.  Personal telephone books, address books and other such address listings, letters, cables, telegrams, telephone bills, photographs, audio and video tapes connected to drug trafficking, personal notes and other items reflecting names, addresses, telephone numbers, communications, and illegal activities of associates in drug trafficking activities;

7.  Financial instruments purchased with large amounts of currency derived from the sale of controlled substances, including travelers checks, bonds, stock certificates, cashier's checks and certificates of deposit; money counting machines, money wrappers and bags used to carry controlled substances;

8.  Records, documents and deeds reflecting the purchase or lease of real estate, vehicles, precious metals, jewelry, or other items obtained with the proceeds from the sale of controlled substances;

9.  Records, items, and documents reflecting travel, including airline tickets, credit card receipts, travel vouchers, hotel and restaurant receipts, canceled checks, maps and written directions to location;

10.  Handguns, shotguns, rifles, explosives, and other firearms/incendiary devices and ammunition that may be used to facilitate the distribution or possession of, with the intent to distribute controlled substances or discovered in the possession of a prohibited person;

11.  Indicia of occupancy, residency, control or ownership of the premises and things described in this warrant, including utility bills, telephone bills, loan payment receipts, rent documents, canceled envelopes and keys, photographs, and bank records.

# UNITED STATES DISTRICT COURT

for the

Eastern District of California

| | |
|---|---|
| In the Matter of the Search of<br><br>345 Oregon Street, Gridley, CA | )<br>)<br>)    Case No.<br>)<br>)<br>) |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the _____ Eastern _____ District of _____ California _____ *(identify the person or describe the property to be searched and give its location)*:

**SEE ATTACHMENT A, attached hereto and incorporated by reference.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE ATTACHMENT B, attached hereto and incorporated by reference.**

**YOU ARE COMMANDED** to execute this warrant on or before _____ October 31, 2025 _____ *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.    ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to: <u>any authorized U.S. Magistrate Judge in the Eastern District of California.</u>

☐    Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐    for _____ days *(not to exceed 30)* ☐    until, the facts justifying, the later specific date of _____ .

Date and time issued:    October 18, 2025 at 4:11 p.m.    _____
*Judge's signature*

City and state:    Davis, California    Sean C. Riordan, U.S. Magistrate Judge
*Printed name and title*

AO 93  (Rev. 11/13) Search and Seizure Warrant (Page 2) (modified)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name of any person(s) seized: | | |

**Certification**

I swear that this inventory is a true and detailed account of the person or property taken by me on the warrant.

_____

Subscribed, sworn to, and returned before me this date.

_____        _____
              Signature of Judge                                              Date

ERIC GRANT
United States Attorney
ROBERT ABENDROTH
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| In the Matter of the Search of: | CASE NO. |
|---|---|
| 345 Oregon Street, Gridley, CA | SEALING ORDER |
| | **UNDER SEAL** |

## S E A L I N G   O R D E R

Upon Application of the United States of America and good cause having been shown,

IT IS HEREBY ORDERED that the file in the above-captioned matter be, and is hereby ordered, SEALED until further order of this Court. Law enforcement officers participating in the investigation may utilize copies of the sealed documents without further order of Court.  Additionally, the government may provide the sealed document to defense counsel to comply with its discovery obligations in a criminal proceeding without further order of Court.

Dated:   October 18, 2025

Hon. Sean C. Riordan
U.S. MAGISTRATE JUDGE

SEALING ORDER